**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| SHMUEL LEVY, Individually and on Behalf of Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> JASON LUO, JAMES TAYLOR, ALBERT LI, MARSHALL KIEV, DAVID BORIS, and BDO USA, LLP, <br><br> Defendants. | C.A. No. 23-cv-00653-GBW |

**DEFENDANT JAMES TAYLOR'S OPENING BRIEF IN SUPPORT OF
<u>HIS MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT</u>**

OF COUNSEL:

Lawrence Gerschwer
Joseph A. Matteo
Charlotte H. Underwood
390 Madison Avenue, 12th Floor
New York, NY 10017
Telephone: (646) 746-2000
Fax: (646) 746-2001
Lawrence.Gerschwer@btlaw.com
Joseph.Matteo@btlaw.com
Charlotte.Underwood@btlaw.com

**BARNES & THORNBURG LLP**
Michael J. Maimone (DE No. 3592)
Gabriella Mouriz (DE No. 6993)
220 Delaware Avenue, Suite 1200
Wilmington, DE 19801
Telephone: (302) 300-3471
Fax: (302) 300-3456
mmaimone@btlaw.com
gmouriz@btlaw.com

*Attorneys for Defendant James Taylor*

# TABLE OF CONTENTS

SUMMARY OF THE ARGUMENT ............................................................................................. 1

BACKGROUND ....................................................................................................................... 3

    A.     ELM Enters into a Non-Binding Letter of Intent to Merge with FIII........................... 3

    B.     Prior to the Merger, ELM Issues Shares to Taylor and Others.................................... 3

    C.     FIII Enters into a Definitive Merger Agreement with ELM and Separately Enters into
           Subscription Agreements with the PIPE Investors ......................................................... 4

    D.     FIII Issues a Proxy Statement in Connection with the Proposed Merger ..................... 6

    E.     Taylor Subsequently Resigns from ELMS but is Immediately Rehired as a Consultant
           at a Substantial Salary and Retains Most of His Benefits............................................ 7

    F.     Plaintiffs Commence this Action ................................................................................. 8

ARGUMENT............................................................................................................................ 8

    I.     THE COURT SHOULD DISMISS PLAINTIFFS' SECTION 10(b) CLAIM
          AGAINST TAYLOR.................................................................................................... 9

          A.     Plaintiffs Fail to Plead That Taylor Made a False Statement or Omission..... 10

          B.     Plaintiffs Have Not Pleaded Facts Creating a Strong Inference of Scienter... 14

    II.    THE COURT SHOULD DISMISS PLAINTIFFS' SECTION 20(a) CLAIM
          AGAINST TAYLOR................................................................................................. 18

CONCLUSION........................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Advance Auto Parts, Inc., Sec. Litig.*,
 No. CV 18-212-RGA, 2020 WL 599543 (D. Del. Feb. 7, 2020) ......................................18, 20

*AJZN, Inc. v. Yu*,
 No. CV 13-149 GMS, 2015 WL 331937 (D. Del. Jan. 26, 2015) ...........................................19

*ALA, Inc. v. CCAIR, Inc.*,
 29 F.3d 855 (3d Cir. 1994)........................................................................................................3

*In re Ascent Retail Grp., Inc. Sec. Litig.*,
 No. CV-1913529-KMJBC, 2022 WL 2314890 (D.N.J. June 28, 2022) ...............................12

*Bartesch v. Cook*,
 941 F. Supp. 2d 501 (D. Del. 2013)........................................................................................11

*Behrmann v. Brandt*,
 No. CV 19-772-RGA, 2020 WL 4432536 (D. Del. July 31, 2020)........................................16

*Brody v. Transitional Hosps. Corp.*,
 280 F.3d 997 (9th Cir. 2002) ..................................................................................................14

*California Pub. Employees' Ret. Sys. v. Chubb Corp.*,
 394 F.3d 126 (3d Cir. 2004)..................................................................................................8, 9

*In re Campbell Soup Co. Sec. Litig.*,
 No. 118-CV-14385-NLH-MJS, 2022 WL 6961796 (D.N.J. Oct. 11, 2022) ..........................17

*Ciresi v. Citicorp*,
 782 F. Supp. 819 (S.D.N.Y. 1991) .........................................................................................14

*City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*,
 908 F.3d 872 (3d Cir. 2018)......................................................................................................9

*City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*,
 713 F. Supp. 2d 378 (D. Del. 2010)..................................................................................13, 19

*In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546 (D. Del. 2002)................................18, 19, 20

*In re DVI Inc. Sec. Litig.*,
 No. CIV.A. 03-5336, 2013 WL 56073 (E.D. Pa. Jan. 4, 2013).............................................11

*Fain v. USA Techs., Inc.*,
 707 F. App'x 91 (3d Cir. 2017) ..............................................................................................17

*Genesis Bio Pharms., Inc. v. Chiron Corp.*,
  27 F. App'x 94 (3d Cir. 2002) ..................................................................................3

*GSC Partners CDO Fund v. Washington*,
  368 F.3d 228 (3d Cir. 2004)................................................................................14, 15

*In re Hertz Glob. Holdings, Inc. Sec. Litig.*,
  No. CV 13-7050, 2017 WL 1536223 (D.N.J. Apr. 27, 2017) .....................................12, 13, 18

*Institutional Invs. Grp. v. Avaya*, *Inc.*,
  564 F.3d 242 (3d Cir. 2009)..................................................................................15

*In re ITT Educ. Servs., Inc. Sec. & S'holder Derivatives Litig.*,
  859 F. Supp. 2d 572 (S.D.N.Y. 2012)......................................................................14

*Janus Capital Group, Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011).....................................................................................1, 10, 11, 19

*Kates on behalf of MetLife, Inc. of MetLife, Inc. v. Kandarian*,
  No. CV 19-1266-LPS-JLH, 2020 WL 4287374 (D. Del. July 27, 2020) ..............................18

*LLDVF, L.P. v. Dinicola*,
  No. CIV. A. 09-1280-JLL, 2010 WL 3210613 (D.N.J. Aug. 12, 2010)..................................19

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
  No. CV 14-68-RGA, 2015 WL 4036179 (D. Del. July 1, 2015)...........................................15

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  575 U.S. 175 (2015)..........................................................................................12

*Ortiz v. Canopy Growth Corp.*,
  537 F. Supp. 3d 621 (D.N.J. 2021) ...........................................................................12

*SEC v. Infinity Grp. Co.*,
  212 F.3d 180 (3d Cir. 2000)..................................................................................16

*Stanley Black & Decker, Inc. v. Gulian*,
  70 F. Supp. 3d 719 (D. Del. 2014)..........................................................................15

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007)..........................................................................................14

*Weathersby v. May*,
  No. CV 22-715-GBW, 2022 WL 16922036 (D. Del. Nov. 14, 2022)
  (Williams, J.)..................................................................................................8

*Winer Fam. Tr. v. Queen*,
  503 F.3d 319 (3d Cir. 2007)...............................................................................10, 16

iii

**Statutes**

Securities Exchange Act of 1934, Section 10(b), 15 U.S.C. § 78j(b).................................. *passim*

Securities Exchange Act of 1934, Section 20(a), 15 U.S.C. § 78t(a) .................................. *passim*

Securities Exchange Act of 1934, Section 21D, 15 U.S.C. § 78u-4 ................................................9

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)............................ *passim*

**Other Authorities**

Fed. R. Civ. P. 8(a) ......................................................................................................................1

Fed. R. Civ. P. 9(b) ..................................................................................................................8, 9

Fed. R. Civ. P. 12(b)(6)............................................................................................................8, 9

Securities Exchange Act of 1934, Rule 10b-5, 17 C.F.R. § 240.10b-5 ................................. *passim*

## NATURE AND STAGE OF THE PROCEEDINGS

Defendant James Taylor respectfully submits this opening brief in support of his motion to dismiss with prejudice all claims asserted against him in the Amended Class Action Complaint (the "Amended Complaint" or "AC") filed by plaintiffs Shmuel Levy, Isidore H. Mayrock, Izac Ben-Shmuel and Robert Green (collectively, "Plaintiffs") pursuant to Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and Section 101(b) of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)(2) (the "PSLRA").

## SUMMARY OF THE ARGUMENT

Taylor was the co-founder and chief executive officer of Electric Last Mile, Inc. ("ELM"), which merged with Forum Merger III Corp. ("FIII"), a special purpose acquisition company ("SPAC"), to form Electric Last Mile Solutions, Inc. ("ELMS"). After ELMS filed for bankruptcy protection, Plaintiffs commenced a putative class action purportedly on behalf of a class of investors who purchased ELMS common stock through a private investment in public equity ("PIPE") offering in connection with the merger. In the Amended Complaint, Plaintiffs assert that Taylor and others violated the federal securities laws by purportedly failing to report certain pre-merger equity transactions as a compensation expense of ELM. The Court should dismiss Plaintiffs' claims against Taylor, which are brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, with prejudice.

*First*, Plaintiffs have not adequately alleged that Taylor made a material misrepresentation or omission of fact, which is a critical element of a Section 10(b) claim. Instead, Plaintiffs largely rely on statements made by other parties, including FIII—an entity in which Taylor held no position or ownership interest. Because Plaintiffs do not allege that Taylor had ultimate authority over these statements, Taylor cannot be liable for these statements as a matter of law. Plaintiffs likewise fail to state a claim against Taylor based on the purported failure to report the equity

transactions as a compensation expense in ELM's financial statements because Plaintiffs have not alleged, as they must, that Taylor (who is not an accountant) (i) knew that the disclosure of these transactions did not comply with GAAP, (ii) did not genuinely believe that ELM's financial statements were accurate, or (iii) omitted any material facts for the basis of any disclosure. Indeed, the equity transactions were fully disclosed in ELM's financial statements, which ELM's outside auditor blessed with an unqualified audit. Finally, statements regarding the experience of ELM's management team, including one made by Taylor, were true when they were made and remain true today. *See infra*, Argument § I(A).

*Second*, even apart from Plaintiffs' failure to allege a material misrepresentation or omission by Taylor, the Court should dismiss Plaintiffs' Section 10(b) claim because Plaintiffs have not pleaded facts creating a strong inference of scienter as to Taylor, as required under the PSLRA. For example, Plaintiffs allege that Taylor had a financial interest to ensure that the merger closed, but the Third Circuit has held that this motive, which is common to all corporate officers, does not create a strong inference scienter. Plaintiffs similarly have not adequately alleged strong circumstantial evidence that Taylor consciously misbehaved or acted recklessly. *See infra*, Argument § I(B).

*Finally*, the Court should dismiss Plaintiffs' Section 20(a) claim because Plaintiffs have not adequately alleged that any individual defendant committed a primary violation of the federal securities laws, that Taylor controlled FIII or ELM with respect to any of the alleged misstatements, or that Taylor was a culpable participant in any alleged wrongdoing. *See infra*, Argument § II.

2

## BACKGROUND[1]

### A.     ELM Enters into a Non-Binding Letter of Intent to Merge with FIII

In August 2020, defendants James Taylor and Jason Luo co-founded ELM as a privately held company to manufacture electric vans and utility vehicles. (AC ¶¶ 20, 22-23, 32.) On September 18, 2020, ELM signed a non-binding letter of intent to merge with FIII, which was a SPAC, or blank-check company, that had conducted its initial public offering in August 2020. (*Id.* ¶¶ 30-33.) Taylor was not an officer, director or employee of, and held no ownership interest in, FIII. Defendant Marshall Kiev was the co-chief executive officer, President and director of FIII, while defendant David Boris was the co-chief executive officer, chief financial officer and director of FIII. (*Id.* ¶¶ 25-26.)

### B.     Prior to the Merger, ELM Issues Shares to Taylor and Others

On November 19, 2020, ELM issued 99,000 shares of common stock for $10 per share (the November 2020 Equity Transaction"). (*Id.* ¶ 48.) Taylor, through an entity that he controlled, purchased 6,461 of these shares as a co-founder, while co-founder Luo and four unidentified persons purchased the remainder. (*Id.* ¶ 49.) On December 8, 2020, Luo sold 1,000 shares of ELM common stock to ELM's chief operating officer and general counsel for $10 per share (the "December 2020 Equity Transaction"). (*Id.* ¶ 50.) Taylor did not participate in this transaction. (*Id.*)

---

[1] This Background is based on the allegations in the Amended Complaint as well as the documents incorporated by reference in that pleading. For purposes of this motion, Taylor assumes the truth of the allegations in the Amended Complaint except to the extent that those allegations are contradicted by the contents of the documents that Plaintiffs have incorporated by reference. *See, e.g.*, *Genesis Bio Pharms., Inc. v. Chiron Corp.*, 27 F. App'x 94, 99-100 (3d Cir. 2002); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n. 8 (3d Cir. 1994).

**C.** **FIII Enters into a Definitive Merger Agreement with ELM and Separately Enters into Subscription Agreements with the PIPE Investors**

On December 10, 2020, ELM and FIII entered into a definitive merger agreement under which ELM would merge with and into FIII (the "Merger"). (*Id.* ¶ 34.) On that same day, FIII entered into subscription agreements (each, a "Subscription Agreement") with various third-party investors (the "PIPE Investors"). (*Id.* ¶ 35; Ex. 1 (the "Subscription Agreement").)[2] All told, FIII agreed to issue and sell to the PIPE Investors 13 million shares of FIII common stock at $10 per share for an aggregate purchase price of $130 million in private placements that would close immediately prior to the closing of the Merger (the "Closing"). (AC ¶ 35.)

Plaintiffs do not allege that Taylor played any role in drafting the Subscription Agreement. Moreover, neither Taylor nor ELM was a party to the Subscription Agreements, and neither made any of the representations or warranties in that document, each of which were made by FIII alone. (Ex. 1 § 3.) For example, in Section 3(f) of the Subscription Agreement, FIII represented and warranted to the PIPE Investors that FIII's filings with the SEC were accurate when filed:

> As of their respective dates, all reports required to be filed by [FIII] with the Commission (the "SEC Reports") complied in all material respects with the requirements of the Securities Act and the Securities Exchange Act of 1934, as amended (the "Exchange Act"), and the rules and regulations of the Commission promulgated thereunder, and none of the SEC Reports, when filed, contained any untrue statement of a material factor omitted to state a material fact required to be stated therein or necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading.

(AC ¶ 53; Ex. 1 § 3(f).)

---

[2] All references in the form of "Ex. __" are to the Declaration of Gabriella Mouriz, which Taylor is filing contemporaneously herewith.

4

FIII further represented and warranted that FIII's financial statements in its public filings were accurate:

> The financial statements of [FIII] included in the SEC Reports comply in all material respects with applicable accounting requirements and the rules and regulations of the Commission with respect thereto as in effect at the time of filing and fairly present in all material respects the financial position of [FIII] as of and for the dates thereof and the results of operations and cash flows for the periods then ended, subject, in the case of unaudited statements, to normal, year-end audit adjustments.

(AC ¶ 53; Ex. 1 § 3(f).)

Each PIPE Investor represented and warranted that, in purchasing shares in the PIPE offering, it was "not relying on[] any representations, warranties, covenants or agreements made to Subscriber by [FIII] . . . or any other person or entity, expressly or by implication . . . other than those representations, warranties, covenants and agreements of [FIII] set forth in this Subscription Agreement." (*Id.* ¶ 38; Ex. 1 § 4(f).) Each PIPE Investor further "acknowledge[d] that it is not relying upon, and has not relied upon, any statement representation or warranty made by any person . . . other than the statements, representations and warranties of [FIII] expressly contained in Section 3 of [the] Subscription Agreement, in making its investment decision to invest in [FIII]." (AC ¶ 38; Ex. 1 § 9.)

Upon executing the Subscription Agreement, each PIPE Investor was obligated to close on its investment, subject only to certain enumerated conditions. (Ex. 1 § 2.) One of these conditions was that FIII's representations and warranties in the Subscription Agreement remained true and correct as of the Closing:

> The obligation of Subscriber to consummate the Closing shall be subject to the satisfaction or valid waiver by Subscriber of the additional conditions that, on the Closing Date:
>
> > (i) all representations and warranties of the Company contained in this Subscription Agreement shall be true and

5

> correct in all material respects (other than representations and warranties that are qualified as to materiality or Company Material Adverse Effect (as defined below), which representations and warranties shall be true in all respects) at and as of the Closing Date (except to the extent that any such representation and warranty expressly speaks as of an earlier date, in which case such representation and warranty shall be true and correct as of such earlier date)

(AC ¶ 39; Ex. 1 § 2(e)(i).)

**D.    FIII Issues a Proxy Statement in Connection with the Proposed Merger**

On June 9, 2021, FIII issued a proxy statement to solicit votes of FIII's shareholders to approve the Merger. (AC ¶ 43; Ex. 2 (the "Proxy Statement").) Taylor—who was not an officer, director or employee of FIII—did not sign the Proxy Statement, and Plaintiffs do not allege that he prepared that document. (Ex. 2 at Annex A-1-56.) FIII informed investors that they should direct all questions regarding the Proxy Statement to either FIII or its proxy solicitor. (*Id.* at 33.) In the Proxy Statement, FIII included ELM's historical financial statements, which disclosed the terms of the November 2020 Equity Transaction in the notes: "On November 19, 2020, ELM issued an additional 84,477 shares of common stock, in the aggregate, to two entities controlled by one of the founders of ELM (Jason Luo) and a third entity controlled by the other founder of ELM (James Taylor) for $10 per share." (AC ¶ 58; Ex. 2 at F-99.)

ELM's outside auditor, defendant BDO USA, LLP ("BDO"), audited these financial statements, including the related notes, and provided a "'clean' audit opinion" to ELM. (AC ¶ 64). More specifically, BDO stated in its "Report of Independent Registered Public Accounting Firm," which was included in the Proxy Statement, that:

> We have audited the accompanying balance sheet of Electric Last Mile, Inc. (the "Company") as of December 31, 2020, the related statements of operations and comprehensive loss, shareholders' deficit, and cash flows for the period from August 20, 2020 (inception) through December 31, 2020, and the related notes (collectively referred to as the "financial statements"). In our

> opinion, the financial statements present fairly, in all material respects, the financial position of the Company at December 31, 2020, and the results of its operations and its cash flows for the period from August 20, 2020 (inception) through December 31, 2020, in conformity with accounting principles generally accepted in the United States of America.

(*Id.* ¶ 58; Ex. 2 at F-89.)

On June 24, 2021, FIII's shareholders voted to approve the Merger. (AC ¶ 44.) On that same day, the PIPE Offering closed, subject to the closing of the Merger. (*Id.*) On June 25, 2021, the Merger closed, and FIII changed its name to ELMS and its ticker symbol from FIII to ELMS. (AC ¶ 45.) Taylor thereafter became the chief executive officer and a director of ELMS. (*Id.* ¶ 23.)

### E. Taylor Subsequently Resigns from ELMS but is Immediately Rehired as a Consultant at a Substantial Salary and Retains Most of His Benefits

On February 1, 2022, ELMS filed a Form 8-K in which it disclosed, among other things, that the equity transactions in November and December 2020 were consummated "at substantial discounts to market value." (AC ¶ 89; Ex. 3 at 3.) ELMS did not conclude that the equity transactions were incorrectly reported on ELM's financial statements, but rather disclosed that it was "further evaluating whether it properly disclosed the transactions . . . , whether it properly assessed the accounting treatment and compensation expense associated with such purchases, and whether it properly paid and withheld taxes associated with such purchases." (*Id.*) With respect to Taylor, ELMS disclosed that it was still in the process of assessing whether his equity transaction had been correctly reported, a determination that ELMS stated was dependent on whether Taylor had been "providing services" to ELM in November 2020. (Ex. 3 at 4.)

ELMS further disclosed that both Taylor and Luo had resigned their respective positions with the company, but that both had agreed to continue to serve as consultants to ELMS. (*Id.* at 2.) With respect to Taylor, ELMS disclosed that he would serve as a consultant to ELMS for two years at an annual salary of $300,000, and that he would retain his 2021 cash bonus, restricted

stock, health benefits, and existing indemnification and advancement rights, but had agreed to "surrender 1.8 million shares of the Company's common stock to the Company and, no later than April 11, an additional number of shares with a value of approximately $3.3 million based on a VWAP calculation." (*Id.*)

On June 13, 2022, ELMS announced that it planned to liquidate through a Chapter 7 bankruptcy proceeding. (AC ¶ 103.) ELMS never disclosed that it had reached any conclusions with respect to its ongoing assessment of the November or December 2020 equity transactions, and never restated ELM's financial statements.

### F.      Plaintiffs Commence this Action

On June 14, 2023, plaintiff Shmuel Levy commenced this action by filing a putative shareholder class action complaint against Luo, Taylor, Kiev, Boris, Albert Li and BDO (collectively, the "Defendants"). (D.I. 1.) On August 31, 2023, this Court appointed the Plaintiffs as Lead Plaintiff. (D.I. 16.) On November 14, 2023, Plaintiffs filed the Amended Complaint, asserting a claim against Defendants under Section 10(b) and Rule 10b-5 as well as a claim against Luo, Taylor, Kiev, Boris and Li under Section 20(a). (AC ¶¶ 154-61.)

### ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Weathersby v. May*, No. CV 22-715-GBW, 2022 WL 16922036, at *2 (D. Del. Nov. 14, 2022) (Williams, J.). A complaint alleging securities fraud must satisfy the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure, which requires that "'[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.'" *California Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004) (quoting

Fed. R. Civ. P. 9(b)). This particularity requirement is "rigorously applied in securities fraud cases." *Id.*

In addition, Section 21D of the Securities Exchange Act of 1934 (the "Exchange Act") requires that the plaintiff "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Thus, "'unless plaintiffs in securities fraud actions allege facts supporting their contentions of fraud with the requisite particularity mandated by Rule 9(b) and the [PSLRA], they may not benefit from the inferences flowing from vague or unspecific allegations—inferences that may arguably have been justified under a traditional Rule 12(b)(6) analysis.'" *California Pub. Employees' Ret. Sys.*, 394 F.3d at 145 (citing *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002)). "In other words, pursuant to this 'modified' Rule 12(b)(6) analysis, 'catch-all' or 'blanket' assertions that do not comply with the particularity requirements are disregarded." *Id.*

## I.  THE COURT SHOULD DISMISS PLAINTIFFS' SECTION 10(b) CLAIM AGAINST TAYLOR

To state a claim for relief under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b–5(b), a plaintiff must allege: "(1) a material misrepresentation (or omission); (2) scienter, i.e., a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 879 (3d Cir. 2018) (internal quotation marks, citations, and emphasis omitted)). As discussed below, the Court should dismiss Plaintiffs' Section 10(b) claim against Taylor because Plaintiffs have not

9

adequately alleged that Taylor made an actionable misstatement or omission, or that he acted with scienter.[3]

### A.    Plaintiffs Fail to Plead That Taylor Made a False Statement or Omission

Plaintiffs allege that the "Defendants" made a series of misstatements and omissions in the Proxy Statement and FIII's other SEC filings that purportedly (i) concealed that the November 2020 Equity Transactions were compensation to Luo and Taylor, (ii) misrepresented that ELM's financial statements complied with GAAP and that BDO's audit complied with the applicable auditing standards, and (iii) omitted material facts from various representations concerning the importance and experience of ELM's management team. (AC ¶¶ 51-73.) As discussed below, none of these allegations is sufficient to state a cognizable claim against Taylor under Section 10(b) and Rule 10b-5.[4]

### 1.    Plaintiffs Fail to Plead that Taylor Was the "Maker" of the Purported Misrepresentations

Under Rule 10b-5, it is unlawful for "any person, directly or indirectly, . . . [t]o make any untrue statement of a material fact" in connection with the purchase or sale of securities. 17 C.F.R. § 240.10b-5(b). As such, liability under Section 10(b) and Rule 10b-5 rests only with the "maker" of the alleged misstatement. *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). The "maker" of a statement is "the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Id.*  Where an alleged misstatement is contained in an offering document filed with SEC, the "maker" of the statement

---

[3] Taylor also joins defendants David Boris and Marshall Kiev's argument that Plaintiffs lack standing to assert claims under Section 10(b). To avoid duplicative briefing, Taylor incorporates that argument as if fully set forth in this brief.

[4] Plaintiffs largely fail to identify which defendant purportedly made each alleged misrepresentation. Such undifferentiated "group pleading' is incompatible with the PSLRA's heightened pleading standard. *Winer Fam. Tr. v. Queen*, 503 F.3d 319, 337 (3d Cir. 2007).

is the entity with the statutory obligation to file the document, absent attribution otherwise. *See, e.g.*, *id.* at 146-47 & n.11 ("attribution is necessary"); *see also In re DVI Inc. Sec. Litig.*, No. CIV.A. 03-5336, 2013 WL 56073, at *7 (E.D. Pa. Jan. 4, 2013).

Here, the majority of the alleged misstatements identified in the Amended Complaint were contained in the Proxy Statement, which FIII alone filed. (*See, e.g.*, AC ¶¶ 55-56, 63.) Plaintiffs do not, and cannot, allege Taylor—who was not an officer, director or employee of FIII—had "ultimate authority" over that document, or that FIII attributed any of the challenged statements to him. *Janus*, 564 U.S. at 142-43. As such, Taylor was not the "maker" of any of these statements. *Id.*; *see also Bartesch v. Cook*, 941 F. Supp. 2d 501, 511 (D. Del. 2013) ("no fraud liability can exist against any defendant who was not a director or officer of Raser at the time of the challenged statement because they would not have had the required 'ultimate authority over the statement, including its content and whether and how to communicate it'") (quoting *Janus*, 564 U.S. at 142-43).

The same is true with respect to the remainder of the alleged misrepresentations and omissions that Plaintiffs identify in the Amended Complaint. For example, Plaintiffs allege that there were misstatements in the Subscription Agreements between FIII and the PIPE Investors. (AC ¶¶ 52-53.) But Taylor was not a party to those agreements, and Plaintiffs do not, and cannot, allege that the alleged misstatements in those documents were attributed to him. *See supra* at 4-5. Plaintiffs' reliance on statements purportedly made in a joint press release that ELM and FIII issued in December 2020 and during various investor calls is similarly misplaced. (AC ¶ 72.) With one exception, which is addressed in Section I(A)(3) below, Plaintiffs do not allege that Taylor made any of these statements or that any of these statements was attributed to Taylor. Finally,

Taylor also did not make the challenged statements in BDO's "Report of Independent Registered Public Accounting Firm," which Plaintiffs concede were made by BDO alone. (AC ¶¶ 64, 66.)

> **2.    Plaintiffs Have Not Adequately Alleged that ELM's Accounting Treatment of the November 2020 Equity Transaction Was False**

Plaintiffs' reliance on certain portions of ELM's historical financial statements that were included in the Proxy Statement is equally infirm. (AC ¶¶ 58-62.) The gravamen of Plaintiffs' allegations is that ELM should have accounted for the November 2020 equity sales to Taylor and Luo as a compensation expense under ASC 718 and ASC 850. Because that determination depends on "management's application of judgment and subjective evaluation," it is a paradigmatic example of a statement of opinion. *Ortiz v. Canopy Growth Corp.*, 537 F. Supp. 3d 621, 667 (D.N.J. 2021) (holding that the "valuation of inventory and revenue in its financial statements constitutes a statement of opinion" because it relies on underlying accounting judgments); *see also In re Ascent Retail Grp., Inc. Sec. Litig.*, No. CV-1913529-KMJBC, 2022 WL 2314890, at *7 (D.N.J. June 28, 2022) ("'It is well-settled that GAAP provisions are subject to interpretation and tolerate a range of reasonable treatments, leaving the choice among alternatives to management.'") (citation omitted). To allege falsity in this context, Plaintiffs must offer well-pleaded facts showing either that the challenged statement (i) was both incorrect and not genuinely believed, or (ii) omitted material facts underlying the opinion that would conflict with what a "reasonable investor would take from the statement itself." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 189 (2015); *see also In re Hertz Glob. Holdings, Inc. Sec. Litig.,* No. CV 13-7050, 2017 WL 1536223, at *11-12 (D.N.J. Apr. 27, 2017), *aff'd sub nom. In re Hertz Glob. Holdings Inc.*, 905 F.3d 106 (3d Cir. 2018).

Here, Plaintiffs have not alleged any facts showing that the accounting treatment of the November 2020 Equity Transaction was "objectively false," that Taylor did not genuinely believe

that ELM had correctly accounted for those shares in accordance with GAAP, or that Taylor either was aware of or consciously omitted any "material facts underlying the basis for the opinion" regarding the accounting treatment of the November 2020 Equity Transaction. *Id.* at \*12. To the contrary, as Plaintiffs concede, BDO gave ELM a "'clean' audit opinion" in May 2021. (AC ¶ 64; *see also* AC ¶ 58; Ex. 2 at F-89.) Critically, BDO did so with full knowledge of the November 2020 Equity Transaction, which ELM disclosed in the notes to the financial statements that BDO audited. (AC ¶ 58; Ex. 2 at F-99.) Plaintiffs do not allege that Taylor was aware of any facts that would have called BDO's audit opinion into question.

### 3.    Statements Regarding the Importance and Experience of ELM's Management Team Were True

Finally, the challenged statements regarding the importance and experience of ELM's management team do not suffice to state a cognizable claim against Taylor. (AC ¶¶ 70-73.) Taylor made only one of these statements, where he stated during an investor call that ELM's management "team collectively has decades of experience launching vehicles for global OEMs" and discussed his and Luo's experience at other automotive companies. (*Id.* ¶ 72(c).) Plaintiffs allege that this statement and the other statements regarding the importance and experience of ELM's management team are false because they omitted "the material facts concerning the 2020 Equity Transactions and the involvement of ELM's senior executives in those transactions." (AC ¶ 73.) But the omission of these "facts" did not render these statements false or misleading because the equity transactions were "totally unrelated" to the importance and experience of ELM's management. *City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*, 713 F. Supp. 2d 378, 390 (D. Del. 2010), *aff'd*, 442 F. App'x 672 (3d Cir. 2011) ("Gill's statements about Horizon's investment in information technology and Glova's statements regarding decreased volume and Horizon's investment in Puerto Rico are totally unrelated to the price-fixing conspiracy.

13

Accordingly, the failure of those defendants to disclose the conspiracy does not render such statements misleading."); *see also Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (a statement is not misleading if it neither "state[s] nor implie[s] anything regarding" the subject matter of the purported omission).

Moreover, to the extent that Plaintiffs allege that Taylor failed to disclose that he had engaged in conduct that could merit his removal, (AC ¶ 71), it is well-settled that there is no duty to "disclose uncharged, unadjudicated wrongdoing or mismanagement." *Ciresi v. Citicorp*, 782 F. Supp. 819, 823 (S.D.N.Y. 1991). This is particularly true where, as here, the challenged statements "do not suggest that the undisclosed [allegedly] improper activity . . . was not occurring," which would be necessary to demonstrate falsity. *In re ITT Educ. Servs., Inc. Sec. & S'holder Derivatives Litig.*, 859 F. Supp. 2d 572, 579 (S.D.N.Y. 2012).

### B.      Plaintiffs Have Not Pleaded Facts Creating a Strong Inference of Scienter

Plaintiffs' Section 10(b) claim against Taylor independently fails because they have not alleged particularized facts giving rise to a "strong inference" of scienter, which is defined as a "mental state embracing intent to deceive, manipulate, or defraud." 15 U.S.C. § 78u–4(b)(2). To create a strong inference of scienter, a plaintiff must allege facts showing either that the defendant had a "motive and opportunity to commit fraud" or a "strong circumstantial evidence of either conscious misbehavior or recklessness." *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 237 (3d Cir. 2004) (citation and quotation marks omitted). In either case, the inference of scienter must be "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007). Moreover, generalized allegations against defendants as a group do not suffice. The plaintiff must "allege, with particularity, facts giving rise to a 'strong inference' that each defendant acted with scienter." *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, No. CV

14

14-68-RGA, 2015 WL 4036179, at *2 (D. Del. July 1, 2015), *aff'd sub nom. OFI Asset Mgt. v. Cooper Tire & Rubber*, 834 F.3d 481 (3d Cir 2016).

### 1.    Plaintiffs Have Not Adequately Alleged Motive or Opportunity

Plaintiffs allege that Taylor had "financial motives" to "conceal the[] transaction[]" because "[the] revelation" of his share purchase "would have prevented the Merger from closing." (AC ¶ 107.) But as Plaintiffs concede, the November 2020 Equity Transaction *was* disclosed prior to the Merger. (AC ¶ 58; Ex. 2 at F-99.) Furthermore, to the extent that Plaintiffs allege that Taylor "stood to profit significantly from the Merger," (AC ¶ 107), "[s]uch allegations alone cannot give rise to a 'strong inference' of fraudulent intent" because "[i]n every corporate transaction, the corporation and its officers have a desire to complete the transaction, and officers will usually reap financial benefits from a successful transaction." *GSC Partners CDO Fund*, 368 F.3d at 237 (citation omitted); *see also Institutional Invs. Grp. v. Avaya*, *Inc.*, 564 F.3d 242, 279 (3d Cir. 2009) (declining to infer fraudulent intent based merely on officers' stock transactions); *Stanley Black & Decker, Inc. v. Gulian*, 70 F. Supp. 3d 719, 731 (D. Del. 2014) (allegations that defendant had "personal financial motive" to effectuate acquisition did not amount to an adequate pleading of scienter). Plaintiffs therefore have not adequately alleged that Taylor had a cognizable motive to commit fraud.

### 2.    Plaintiffs Have Not Adequately Alleged Conscious Misbehavior

Having failed to adequately allege that Taylor had a motive to commit fraud, "the strength of [Plaintiffs'] circumstantial allegations [of scienter] must be correspondingly greater." *GSC Partners CDO Fund*, 368 F.3d at 238 (citation omitted). To satisfy this standard, Plaintiffs must identify facts showing that Taylor engaged in "highly unreasonable" conduct "involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care . . . which presents a danger of misleading buyers or sellers that is either known to

the defendant or is so obvious that the actor must have been aware of it." *SEC v. Infinity Grp. Co.*, 212 F.3d 180, 192 (3d Cir. 2000) (citation omitted). Plaintiffs do not meet this standard.

As an initial matter, Plaintiffs' allegation that Taylor was aware of the difference between the price at which he purchased shares in the November 2020 Equity Transaction and the possible price at which those shares potentially could be exchanged for ELMS shares if the Merger closed is a red herring. (AC ¶ 106.) Regardless of the difference between those two prices, the basis of Plaintiffs' allegations in the Amended Complaint is that ELM did not properly disclose the November 2020 purchases as a compensation expense. But Plaintiffs point to no facts showing that Taylor was aware of any information suggesting that these transactions should have been treated as compensation under the applicable accounting rules, especially in light of BDO's "clean" audit. *See, e.g.*, *Winer Fam. Tr.*, 503 F.3d at 332 ("Winer failed to adequately plead scienter by failing to link the declarant of the challenged statement with facts that might contradict his statement."); *Behrmann v. Brandt*, No. CV 19-772-RGA, 2020 WL 4432536, at *15 (D. Del. July 31, 2020), *report and recommendation adopted*, No. CV 19-772-RGA, 2020 WL 5752389 (D. Del. Sept. 25, 2020) (holding that plaintiffs did not adequately allege scienter because they did not "specifically identify the reports or statements contradicting the defendants' alleged misrepresentations").

Plaintiffs next allege that there is a compelling inference of scienter because ELMS's board of directors purportedly "ousted" Taylor from his position in February 2022. (AC ¶ 111.) But the document on which Plaintiffs rely demonstrates that Taylor was not fired; he resigned. (Ex. 3 at 2.) In any case, a resignation or termination gives rise to a strong inference of scienter only if it is "accompanied by extreme corporate punishment such as the denial of previously accrued benefits." *Fain v. USA Techs., Inc.*, 707 F. App'x 91, 97 (3d Cir. 2017). Here, upon Taylor's resignation,

16

ELMS simultaneously retained him as a consultant at a salary of $300,000 per year, for a minimum term of two years, and permitted him to keep his 2021 cash bonus, restricted stock, health benefits and existing indemnification and advancement rights. *See supra* at 7-8. These facts rebut any inference of scienter. *See Fain*, 707 F. App'x at 97 (affirming dismissal and finding allegations that corporate officer was fired were "far from suspicious" where the officer "received a significant severance package," was "retained [] for some time after his departure as a consultant," and "still [received his] health insurance for a period of time"); *In re Campbell Soup Co. Sec. Litig*., No. 118-CV-14385-NLH-MJS, 2022 WL 6961796, at *9 (D.N.J. Oct. 11, 2022) (the fact that executive "retained" his role at the Company "undercut[]" plaintiffs' scienter theory).

Plaintiffs' allegation that Taylor supposedly "lied" to the Special Committee during its investigation fares no better. (AC ¶ 113.) In fact, ELMS disclosed merely that Taylor "provided responses" to unspecified questions "that the Special Committee believed were inconsistent with documents reviewed by the Special Committee and its counsel." (*Id.*; Ex. 3 at 4.) ELMS did not provide any facts to support the Special Committee's purported belief, such as what questions Taylor was asked, what responses he gave, what documents the Special Committee "believed" were inconsistent with those responses, and whether Taylor had ever seen the documents in question. In the absence of any such details, Plaintiffs' bare-bones allegations do not give rise to a strong inference of scienter.

Plaintiffs' remaining allegations likewise do not establish a strong inference of Taylor's scienter. For example, Plaintiffs allege that "BDO's finding that an illegal act has or may have been committed at the Company supports a finding of scienter," against Taylor (AC ¶ 114), but BDO did not identify the purported illegal act that it believed may have occurred or suggest that Taylor was involved in that unspecified act. Plaintiffs also point to ELMS's May 2022 disclosure

17

that Taylor purportedly violated his settlement agreement with ELMS by not returning certain shares to the company, (AC ¶¶ 102, 113), but this allegation has no bearing on Taylor's knowledge, or lack thereof, regarding whether the shares that he and Luo purchased more than 18 months earlier should have been reported as a compensation expense. Finally, Plaintiffs make a passing reference to an SEC investigation into the equity transactions without alleging the status or conclusion of that investigation, but "[a]n SEC investigation that has not resulted in charges or any finding of wrongdoing does not support an inference of scienter." *In re Hertz Global Holdings, Inc. Sec. Litig.*, 2017 WL 1536223, at *17 n.6 (holding that existence of an SEC investigation did not create a compelling inference of scienter because "[t]he [p]laintiffs do not allege the state of the investigation or its conclusions"); *accord Kates on behalf of MetLife, Inc. v. Kandarian,* No. CV 19-1266-LPS-JLH, 2020 WL 4287374, at *10 (D. Del. July 27, 2020), *report and recommendation adopted,* No. CV 19-1266-LPS-JLH, 2020 WL 12432745 (D. Del. Sept. 8, 2020) ("a government investigation does not itself give rise to a cogent inference of scienter").

## II.     THE COURT SHOULD DISMISS PLAINTIFFS' SECTION 20(a) CLAIM AGAINST TAYLOR

To state a claim under Section 20(a), a plaintiff must plead: "'(i) a primary violation of the federal securities laws by a controlled person'; (ii) 'control of the primary violator by the defendant'; and (iii) 'that the controlling person was in some meaningful way a culpable participant in the primary violation.'" *In re Advance Auto Parts, Inc., Sec. Litig.*, No. CV 18-212-RGA, 2020 WL 599543, at *9 (D. Del. Feb. 7, 2020) (citation omitted). Furthermore, a plaintiff must plead control and culpable participation with particularity under the PSLRA. *See In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 561 (D. Del. 2002), *aff'd*, 357 F.3d 322 (3d Cir. 2004). Plaintiffs have not adequately alleged any of these elements with respect to Taylor.

18

*First*, Plaintiffs have not adequately alleged a primary violation because they have not stated a cognizable claim under Section 10(b) and Rule 10b-5 against any of the individual defendants, as explained in the opening briefs submitted by the other individual defendants. *See, e.g.*, *City of Roseville Employees' Ret. Sys.*, 713 F. Supp. 2d at 390 (D. Del. 2010) ("[A] corporate defendant will not be held liable absent a showing that at least one individual officer who made, or participated in the making of, a false or misleading statement did so with scienter.").

*Second*, Plaintiffs have not adequately alleged that Taylor controlled either FIII or ELM. To plead control, a plaintiff must allege that the defendant not only had the "'power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise,'" *AJZN, Inc. v. Yu*, No. CV 13-149 GMS, 2015 WL 331937, at *4 (D. Del. Jan. 26, 2015) (citation omitted), but also exercised "actual control over the transactions in question," *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d at 561 (citation omitted). Here, Plaintiffs allege merely that "the Individual Defendants had the power and ability to control the actions of ELM and/or ELMS and their employees" because of "their stock holdings, their positions, and their power to control public statements about ELM and ELMS." (AC ¶ 161.) Even setting aside Plaintiffs' impermissible group pleading, Plaintiffs do not (and cannot) allege that Taylor owned stock in, or served as an officer or director of, FIII.[5] Furthermore, Plaintiffs' allegations that Taylor served as an officer and director of ELM and also held a minority interest in its stock are not sufficient to show he controlled that entity either. *See, e.g.*, *LLDVF, L.P. v. Dinicola*, No. CIV. A. 09-1280-JLL, 2010 WL 3210613, at *13 (D.N.J. Aug. 12, 2010) ("allegations of control have been found to be insufficient where the plaintiff merely alleged that

_____

[5] Taylor presumes that Plaintiffs intended to refer to FIII, rather than ELMS, which did not come into existence until after the Merger was consummated. (AC ¶ 45.)

the defendant owned thirty percent of the voting stock and selected three of nine board members"); *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d at 561 (dismissing Section 20(a) claim against chief executive officer and director because plaintiffs did not plead particularized facts showing that he controlled the corporate defendant with respect to the disclosures in question).

*Third*, Plaintiffs have not adequately alleged that Taylor culpably participated in any alleged misstatements by a controlled person. "Culpable participation for purposes of Section 20(a) 'refers to either knowing and substantial participation in the wrongdoing or inaction with the intent to further the fraud or prevent its discovery.'" *In re Advance Auto Parts, Inc., Sec. Litig.*, 2020 WL 599543, at *10 (citation omitted). "The culpable participation element of a § 20(a) claim mirrors the scienter element of a § 10(b) claim." *Stichting Pensioenfonds ABP,* 2012 WL 3235783, at *11 (D.N.J. Aug. 1, 2012). Here, as explained in greater detail in Section I(B) above, Plaintiffs allege no particularized facts that Taylor participated in any of the purportedly wrongful conduct alleged in the Amended Complaint, let alone that he did so with the required intent.  *See, e.g.*, *In re Advance Auto Parts, Inc., Sec. Litig.*, 2020 WL 599543, at *10 (finding that plaintiff did not plead culpable participation because "[t]he complaint does not allege that the [defendants] controlled the drafting or publishing of the press releases at issue, or that the [defendants] reviewed or signed them before publication"); *Stichting Pensioenfonds ABP*, 2012 WL 3235783, at *11 (allegations that defendant was involved in the placement of risk information on drug label did not satisfy the "culpable participation" requirement because it did not suggest that he participated to conceal risks).

## CONCLUSION

Taylor requests that the Court dismiss Plaintiffs' claims against him with prejudice.

20

Dated: January 12, 2024

                                                                **BARNES & THORNBURG LLP**

OF COUNSEL:                                       By: */s/ Michael J. Maimone*

Lawrence Gerschwer                         Michael J. Maimone (DE No. 3592)
Joseph A. Matteo                             Gabriella Mouriz (DE No. 6993)
Charlotte H. Underwood                   220 Delaware Avenue, Suite 1200
390 Madison Avenue, 12th Floor            Wilmington, DE 19801
New York, NY 10017                     Telephone: (302) 300-3471
Telephone: (646) 746-2000              Fax: (302) 300-3456
Fax: (646) 746-2001                    mmaimone@btlaw.com
Lawrence.Gerschwer@btlaw.com      gmouriz@btlaw.com
Joseph.Matteo@btlaw.com
Charlotte.Underwood@btlaw.com

                                                     *Attorneys for Defendant James Taylor*

21