**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| SHMUEL LEVY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>JASON LUO, JAMES TAYLOR, ALBERT LI, MARSHALL KIEV, DAVID BORIS, and BDO USA, LLP,<br><br>Defendants. | Civil Action No. 1:23-cv-00653 (GBW)<br><br>CLASS ACTION<br><br><br><br><br><br>DEMAND FOR JURY TRIAL |

**DEFENDANT JASON LUO'S OPENING BRIEF IN SUPPORT OF HIS**
**MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

OF COUNSEL:

Andrew J. Ehrlich
Gregory F. Laufer
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel.:  (212) 373-3000
aehrlich@paulweiss.com
glaufer@paulweiss.com

PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
    Matthew D. Stachel (No. 5419)
    1313 N. Market Street, Suite 806
    Post Office Box 32
    Wilmington, DE 19899-0032
    Tel.:  (302) 655-4410
    mstachel@paulweiss.com

*Attorneys for Defendant Jason Luo*

## TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDINGS ...............................................................................1

SUMMARY OF ARGUMENT ...................................................................................................1

STATEMENT OF FACTS .........................................................................................................3

ARGUMENT .............................................................................................................................6

I.     Plaintiffs Fail to Plausibly Plead a Section 10(b) Claim as to Luo.....................................6

       A.     Plaintiffs Fail to Plausibly Allege Luo Made Any Materially Misleading
              Misstatement or Omission. ........................................................................... 7

              1.     Plaintiffs Fail to Plead a Materially False or Misleading Statement
                     about the 2020 Equity Transactions...............................................................7

              2.     Plaintiffs Cannot Base a Claim on Accounting Judgments Because
                     Those Are Nonactionable Statements of Opinion. ....................................9

              3.     Statements Touting Luo's and Other ELM Executives' Experience
                     Were True and Not Misleading..................................................................11

              4.     Plaintiffs Fail to Allege that Luo Made Any Purportedly False or
                     Misleading Statement or Omission under Rule 10b-5(b). ........................12

       B.     Plaintiffs Fail to Plausibly Plead Scheme Liability as to Luo. ............................ 13

       C.     Plaintiffs Fail to Plausibly Plead a Strong Inference of Scienter as to Luo. .......... 14

              1.     Plaintiffs' Motive and Opportunity Allegations Fail to Plead
                     Scienter. ...................................................................................................14

              2.     Plaintiffs Fail to Allege Any Other "Cogent and Compelling" Facts
                     Sufficient to Amount to a "Strong Inference" of Scienter.........................16

II.    Plaintiffs Fail to Plausibly Plead a Section 20(a) Claim as to Luo...................................19

III.   The Complaint Should Be Dismissed with Prejudice as to Luo.......................................20

CONCLUSION.........................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Advance Auto Parts, Inc. Sec. Litig.*,
  2020 WL 599543 (D. Del. Feb. 7, 2020) ................................................................................20

*Amgen Inc.* v. *Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ............................................................................................................ 6-7

*In re AmTrust Fin. Servs., Inc. Sec. Litig.*,
  2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019) .........................................................................10

*Bartesch* v. *Cook*,
  941 F. Supp. 2d 501 (D. Del. 2013) ......................................................................................18

*Bell Atl. Corp.* v. *Twombly*,
  550 U.S. 544 (2007) ................................................................................................................6

*Belmont* v. *MB Inv. Partners, Inc.*,
  708 F.3d 470 (3d Cir. 2013) ..................................................................................................20

*Brashears* v. *1717 Capital Mgmt., Nationwide Mut. Ins. Co.*,
  2004 WL 1196896 (D. Del. May 21, 2004) .............................................................................7

*Cal. Pub. Emps.' Ret. Sys.* v. *Chubb Corp.*,
  394 F.3d 126 (3d Cir. 2004) ....................................................................................................7

*City of Edinburgh Council* v. *Pfizer, Inc.*,
  754 F.3d 159 (3d Cir. 2014) ......................................................................................... 10, 19-20

*City of Roseville Emps' Ret. Sys.* v. *Horizon Lines, Inc.*,
  713 F. Supp. 2d 378 (D. Del. 2010) ......................................................................................12

*De Vito* v. *Liquid Holdings Grp., Inc.*,
  2018 WL 6891832 (D.N.J. Dec. 31, 2018) ............................................................................14

*Dock* v. *Rush*,
  432 F. App'x 130 (3d Cir. 2011) ...........................................................................................20

*In re Exxon Mobil Corp. Sec. Litig.*,
  387 F. Supp. 2d 407 (D.N.J. 2005) .......................................................................................15

*Fain* v. *USA Tech., Inc.*,
  707 F. App'x 91 (3d Cir. 2017) .............................................................................................17

*Garcia* v. *J2 Glob., Inc.*,
    2021 WL 1558331 (C.D. Cal. Mar. 5, 2021).................................................................11

*GSC Partners CDO Fund* v. *Washington*,
    368 F.3d 228 (3d Cir. 2004)................................................................................... 15-16

*In re Hertz Glob. Holdings, Inc. Sec. Litig.*,
    2017 WL 1536223 (D.N.J. Apr. 27, 2017), *aff'd sub nom. In re Hertz Glob.*
    *Holdings Inc.*, 905 F.3d 106 (3d Cir. 2018)................................................... 10-11, 19

*In re Hertz Glob. Holdings Inc.*, 905 F.3d 106 (3d Cir. 2018) ......................... 14, 16-17

*In re Ikon Office Sols, Inc.*,
    277 F.3d 658 (3d Cir. 2002).....................................................................................10

*Institutional Invs. Grp.* v. *Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009)................................................................................14, 15

*Janus Cap. Grp., Inc.* v. *First Deriv. Traders*,
    564 U.S. 135 (2011)...................................................................................................12

*Kates* v. *Kandarian*,
    2020 WL 4287374 (D. Del. July 27, 2020) ...............................................................19

*In re NAHC, Inc. Sec. Litig.*,
    306 F.3d 1314 (3d Cir. 2002).......................................................................................3

*Omnicare, Inc.* v. *Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015)..................................................................................................9, 11

*Skeway* v. *China Nat'l Gas, Inc.*,
    2012 WL 2877645 (D. Del. July 6, 2012) ..................................................................20

*Takata* v. *Riot Blockchain, Inc.*,
    2020 WL 2079375 (D.N.J. Apr. 30, 2020) ................................................................13

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...................................................................................................14

*The Great Atl. & Pac. Tea Co., Inc. Sec. Litig.*,
    103 F. App'x 465 (3d Cir. 2004) ....................................................................16, 17, 19

*Tracinda Corp.* v. *DaimlerChrysler AG*,
    197 F. Supp. 2d 42 (D. Del. 2002)..........................................................................18, 19

*Universal Am. Corp.* v. *Partners Healthcare Sols. Holdings, L.P.*,
    176 F. Supp. 3d 387 (D. Del. 2016)............................................................................13

*In re Upstart Holdings, Inc. Sec. Litig.*,
  2023 WL 6379810 (S.D. Ohio Sept. 29, 2023) ................................................................. 13-14

*Veal* v. *Lendingclub Corp.*,
  2020 WL 3128909 (N.D. Cal. June 12, 2020) ........................................................................12

*In re Westinghouse Sec. Litig.*,
  90 F.3d 696 (3d Cir. 1996) ........................................................................................... 8-9

**Statutes**

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, et seq. ...................... *passim*

**Other Authorities**

17 C.F.R. § 240.10b-5(b) ...............................................................................................2, 12

Fed. R. Civ. P. 9(b) ........................................................................................................1, 6

Fed. R. Civ. P. 12(b)(6) ........................................................................................................6

iv

## NATURE AND STAGE OF PROCEEDINGS

Defendant Jason Luo respectfully submits this opening brief in support of his motion to dismiss the Amended Class Action Complaint (D.I. 23, the "Complaint" or "¶") and the claims under Section 10(b) of the Securities Exchange Act of 1934 (the "Act") and Rule 10b-5 (Count I, ¶¶ 154–159) and Section 20(a) of the Act (Count II, ¶¶ 160–161) asserted against him in their entirety and with prejudice, pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, et seq. (the "PSLRA").

## SUMMARY OF ARGUMENT

In this putative class action, Plaintiffs purport to represent certain purchasers of the common stock of Electric Last Mile Solutions, Inc. ("ELMS"), a now-bankrupt company formed from the June 25, 2021 merger of a company cofounded by Luo called Electric Last Mile, Inc. ("ELM" or the "Company") with a special purpose acquisition company ("SPAC") called Forum Merger III Corp. ("FIII"). Those purchasers, according to the Complaint, participated in a private investment in public equity ("PIPE") before the ELM-FIII merger closed, and continued to hold equity of the newly public company post-merger. The Complaint generally alleges that the Defendants—FIII and ELM officers and directors as well as ELM's outside auditor—violated the federal securities laws by supposedly misrepresenting certain aspects of the Company's financial condition.

As to Luo in particular, the Complaint claims he should be held liable for statements made not by him but by other parties about certain transactions he made months prior in shares of ELM (the formerly private, pre-merger company)—transactions that were fully disclosed to FIII, ELM, and their respective professional advisors, and referred to in public regulatory filings. More specifically, Plaintiffs allege that those transactions should have been accounted for in ELM's financial statements as executive compensation, and thus as an expense, which would in

1

turn have decreased the Company's stated earnings.  These allegations fail to plausibly plead Section 10(b) and 20(a) claims as to Luo and should be dismissed with prejudice.  In particular:

As to the Section 10(b) claims, Plaintiffs do not adequately plead claims as to Luo for at least five independent reasons:

First, the Complaint fails to plead that Luo himself made any materially false or misleading statement or omission as required under Rule 10b-5(b).  Luo (who is neither a lawyer nor an accountant) is not alleged to have played any part in the challenged disclosures, much less in how the equity transactions were treated under applicable accounting standards, and the November 2020 equity transaction was fully disclosed to investors, as was the material information concerning the December 2020 equity transaction.

Second, Plaintiffs' attempts to "Monday morning quarterback" the accounting treatment of the 2020 equity transactions fails as a matter of law under the *Omnicare* standard because the Complaint does not allege that ELMS's accounting treatment was "objectively false" or "not genuinely believed" or that Luo himself omitted material, conflicting facts known at the time.

Third, Plaintiff cannot convert accurate statements about ELM's executives' experience into omissions about the two equity transactions referred to above because those statements were accurate when made—and remain accurate today—and in any event had nothing to do with the 2020 equity transactions.

Fourth, Plaintiffs' conclusory allegations of scheme liability under Rule 10b-5(a) & (c) also fail to state a claim both because the transactions are not alleged to be wrongful and there are no particularized allegations of Luo's involvement in any scheme.

Finally, the Section 10(b) claim should be dismissed as to Luo because the Complaint fails to plead the "strong inference" of scienter required to plausibly state a claim.  Plaintiffs

2

allege no facts showing that Luo had motive and opportunity to commit securities fraud, and their reliance on Luo's general motive to ensure the closing of the merger is insufficient to plead scienter under Third Circuit case law.  The Complaint further fails to plead cogent and compelling facts that constitute strong circumstantial evidence of scienter.  Whether viewed individually or together, Luo's resignation in 2022, the disclosure of potentially inconsistent responses by Luo to the Special Committee, BDO's statements concerning an illegal act, and the existence of a related SEC investigation do not satisfy the exacting standard to plead scienter.

As to the Section 20(a) claim, and as shown below and in the other Defendants' briefs, Plaintiffs have failed to plead an underlying Section 10(b) violation by ELM or ELMS (which was FIII prior to the merger).  Plaintiffs also fail to plead that Luo controlled FIII's pre-merger statements based solely on his post-merger positions as ELMS' Executive Chairman and Chairman of the Board, and the Complaint fails to plead Luo had any role in FIII's pre-merger statements.  Finally, for the same reasons Plaintiffs cannot state a Section 10(b) claim against Luo, they fail to plead Luo's culpable participation in any alleged Section 10(b) violation.

**STATEMENT OF FACTS[1]**

***ELMS and the Defendants.***  ELMS was formed on June 25, 2021, with the merger of ELM and FIII (the "Merger").  ¶ 1.  The day before the Merger closed, FIII completed a PIPE offering (the "PIPE Offering") for a total of $130 million in gross offering proceeds.  ¶ 44.

Luo co-founded ELM with James Taylor in August 2020.  ¶¶ 22–23, 32.  He then served as ELM's President and Executive Chairman, and then ELMS's Executive Chairman and

---

[1]    All well-pleaded factual allegations are treated as true for this motion only.  The Court may also consider documents incorporated by reference or integral to the claims and items subject to judicial notice, including SEC filings.  *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002) (concluding judicial notice of SEC filings was proper).

Chairman of the Board until his resignation on February 1, 2022. ¶ 22; Ex. 6 at 2.[2] Taylor served as ELM's Chief Executive Officer ("CEO"), and then ELMS's President, CEO, and as a member of the Board until his resignation on February 1, 2022. ¶ 23; Ex. 6 at 2. Albert Li served as Chief Financial Officer ("CFO") and Treasurer of ELM and then as ELMS's CFO and Treasurer until November 2021. ¶ 24. ELMS filed for bankruptcy on June 14, 2022, and is not named as a defendant in this action. ¶ 20.

Marshall Kiev and David Boris together served as Co-CEOs at FIII, with Kiev also serving as President and as a Director at FIII and Boris also serving as CFO and as a Director at FIII. ¶¶ 25–26. BDO USA, LLP ("BDO") served as ELM's and then ELMS's auditor, auditing ELM's financial statements for the period from August 20, 2020 (ELM's inception) to December 31, 2020 and ELMS's financial statements until BDO resigned on February 8, 2022. ¶ 28.

*The 2020 Equity Transactions.* Prior to the 2020 Equity Transactions, Luo owned 100% of ELM through an entity he controlled called AJ Capital, Inc. ¶ 33. On November 19, 2020, ELM issued 78,016 shares of ELM common stock to entities owned by Luo, 6,461 shares to an entity owned by Taylor, and 14,523 shares to four other purchasers, all for $10 per share (the "November 2020 Equity Transaction"). ¶¶ 48–49. The November 2020 Equity Transaction was disclosed in five separate, disclosures filed with the SEC. *See* Exs. 1–5.

On December 8, 2020, Luo sold 1,000 shares of ELM common stock held through AJ Capital, Inc., to an entity jointly owned and controlled by ELM's Chief Operating Officer Hailiang (Jerry) Hu and ELM's General Counsel Benjamin Wu, also at $10 per share (the "December 2020 Equity Transaction" and, together with the November 2020 Equity Transaction, the "2020 Equity Transactions"). ¶ 50. Details relating to the December 2020 Equity

---

[2]    Citations to "Ex." are to the exhibits to the Declaration of Matthew D. Stachel filed herewith.

Transaction, including Luo's initial acquisition of those shares on September 11, 2020, were also disclosed in the five public disclosures noted above.  *E.g.*, Ex. 4 at F-99.

BDO and other professionals were aware of, and indeed structured and advised on, the 2020 Equity Transactions.  ¶ 12.  In a letter from ELMS to BDO dated February 9, 2022, and publicly filed with the SEC on February 14, 2022, ELMS's Audit Committee stated:  "BDO Tax was involved in structuring such transactions [i.e., the 2020 Equity Transactions] and . . . as [BDO has] confirmed to us, BDO USA was aware of those transactions well in advance of and in connection with completion of the audit.  The transactions were contemporaneously discussed with multiple professional advisors, including representatives of BDO."  ¶ 120; Ex. 10.

***The PIPE Offering and Merger Agreement.***  On December 10, 2020, ELM and FIII entered into a definitive merger agreement (the "Merger Agreement").  ¶¶ 34, 47.  The same day, FIII and the PIPE Offering investors executed the PIPE offering memorandum for a private placement of $130 million in unregistered common stock.  ¶ 35.  The Merger was announced the following day.  ¶ 42.

***The Proxy Statement and Merger.***  On June 9, 2021, FIII issued its Proxy Statement disclosing information related to the proposed merger in advance of the June 24, 2021 special meeting to vote to approve the Merger.  ¶ 43.  The notes to the ELM financial statements that were part of the Proxy Statement disclosed the November 2020 Equity Transaction, ¶ 58, and the Proxy Statement contained BDO's independent audit opinion that ELM's historical financial results as included in the Proxy fairly presented ELM's financial position in conformity with U.S. generally accepted accounting principles ("GAAP").  ¶ 64.  FIII shareholders approved the Merger at a special meeting held on June 24, 2021.  ¶ 44.  Also on June 24, 2021, the PIPE Offering closed, subject to the Merger closing, which it did the following day.  ¶ 45.

***The Special Committee Investigation and SEC Investigation.*** On February 1, 2022, ELMS issued a Form 8-K, disclosing that ELMS had conducted an independent investigation and that it was "further evaluating whether it properly disclosed the equity [transactions]" and the accounting treatment, compensation expense, and taxes associated with the transactions. Ex. 6 at 3. That same day, Luo resigned from his positions as Executive Chairman and Chairman of the Board, and Taylor resigned from his positions as President, CEO, and director. ¶¶ 22–23; Ex. 6 at 2. At the same time, both Luo and Taylor agreed to continue to serve as consultants to ELMS for two years. Ex. 6 at 2. On February 14, 2022, ELMS disclosed that BDO had resigned. ¶ 94. On March 11, 2022, ELMS disclosed the existence of an SEC investigation concerning the 2020 Equity Transaction, among other things. ¶ 115. Plaintiffs do not allege that the investigation has resulted in a finding of scienter or the filing of any charges.

## ARGUMENT

To survive a Rule 12(b)(6) motion, each of Plaintiffs' claims against Luo must be pleaded with sufficient detail to be "plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). Dismissal is warranted "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Id.* at 558 (citations omitted). Claims under Sections 10(b) and 20(a) of the Act are also subject to the strict pleading requirements of Rule 9(b) and the PSLRA, which require that fraud be pleaded with particularity. Fed. R. Civ. P. 9(b); 15 U.S.C. § 78u-4(b)(1). Plaintiffs have not satisfied those pleading burdens here.

**I.      Plaintiffs Fail to Plausibly Plead a Section 10(b) Claim as to Luo.**

To state a claim based on Section 10(b) and Rule 10b–5(b), a plaintiff must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Amgen Inc.* v. *Conn.*

6

*Ret. Plans & Tr. Funds*, 568 U.S. 455, 460-61 (2013) (quoting *Matrixx Initiatives, Inc.* v. *Siracusano*, 563 U.S. 27, 37-38 (2011)).  The Complaint fails to state a Section 10(b) claim as to Luo because Plaintiffs do not, as a threshold matter, plead that Luo either (i) made a materially misleading statement or omission or (ii) acted with scienter.  In particular:

**A.    Plaintiffs Fail to Plausibly Allege Luo Made Any Materially Misleading Misstatement or Omission.**

Plaintiffs allege that Defendants as a group made three categories of purported misstatements or omissions in the Proxy and other public statements:  (1) statements allegedly omitting material information that "concealed and disguised massive compensation to insiders" and overstated ELM's financial performance by failing to adequately disclose the 2020 Equity Transactions, ¶¶ 4, 6; (2) allegedly false statements that ELM's financials complied with GAAP and SEC regulations and that BDO's audit complied with auditing standards, ¶ 7; and (3) allegedly false and misleading statements touting the experience of ELM's senior executives and their value to ELM's business, ¶ 7.  None of these categories of statements satisfies the standards for pleading a materially false or misleading statement or omission as to Luo.

**1.    Plaintiffs Fail to Plead a Materially False or Misleading Statement about the 2020 Equity Transactions.**

Plaintiffs cannot state a Section 10(b) claim because the allegedly omitted information was in fact disclosed.  *Brashears* v. *1717 Capital Mgmt., Nationwide Mut. Ins. Co.*, 2004 WL 1196896 (D. Del. May 21, 2004) (granting motion to dismiss because disclosures contained the information that plaintiff claimed was omitted); *see Cal. Pub. Emps.' Ret. Sys.* v. *Chubb Corp.*, 394 F.3d 126, 156 (3d Cir. 2004) (affirming dismissal of complaint alleging that issuer falsely claimed that initiative was successful because "[d]efendants fully disclosed before and throughout the Class Period that the initiative was expected to and was indeed causing the loss of profitable business").

7

In particular, Plaintiffs claim that FIII's and Defendants' statements failed to disclose the November 2020 Equity Transaction and, specifically, the date of that transaction. ¶ 82 ("The Proxy also represented that ELM had sold 100,000 shares for $10 per share at some point between August 20, 2020 through December 31, 2020, without disclosing . . . the date of these transactions (which would have indicated that they occurred after the September 18, 2020 letter of intent and shortly before the Merger agreement was executed and announced)"). That allegation is demonstrably false: FIII publicly disclosed the November 2020 Equity Transaction, including the number of shares sold, the price, and Luo's and Taylor's roles in those transactions, in multiple SEC filings. ¶ 58; Ex. 1 at F-53; Ex. 2 at F-99; Ex. 3 at F-99; Ex. 4 at F-99; Ex. 5 at F-99. The date of the transaction was likewise, and specifically, disclosed. Ex. 3 at F-99 ("On November 19, 2020, ELM issued an additional 84,477 shares of common stock, in the aggregate, to two entities controlled by one of the founders of ELM (Jason Luo) and a third entity controlled by the other founder of ELM (James Taylor) for $10 per share.").

Plaintiffs also claim the Proxy and FIII's other SEC filings did not disclose the full details of the December 2020 Equity Transaction. This allegation is again contradicted by matters of public record. Although the specific fact that Luo had sold shares to Wu and Hu was not itself specifically called out, the key facts concerning that transaction—Luo's acquisition of the original 1,000 shares of ELM common stock held through his entity, AJ Capital—*was* disclosed. Ex. 4 at F-99 ("On September 11, 2020, an entity controlled by one of the founders of ELM purchased 1,000 shares of ELM's common stock for an aggregate purchase price of $10,000."). Because Luo wholly owned ELM before the 2020 Equity Transactions, ¶ 33, and the total amount of shares involved in the 2020 Equity Transactions was disclosed, Luo's subsequent sale of 1,000 shares to Wu and Hu would have been immaterial to a reasonable PIPE investor. *In*

*re Westinghouse Sec. Litig.*, 90 F.3d 696, 714 (3d Cir. 1996) ("[A]n omitted fact is material if there is a 'substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder.'").

Finally, Plaintiffs claim the Proxy and other statements were false and misleading because they allegedly did not disclose that each of the ELM shares involved in the 2020 Equity Transactions could be exchanged for over 800 shares of ELMS common stock worth $10 per share. ¶ 4. That allegation is again incompatible with the actual disclosures. The total amount of shares involved in the 2020 Equity Transactions, the total merger consideration, and the method by which ELM shares would be converted into ELMS shares in the Merger had already been disclosed to investors in the above statements and Sections 2.1(a) and 2.5 of the Merger Agreement. Ex. 11. Investors thus knew or had access to information reflecting the number of ELMS shares for which the ELM shares involved in the transactions could be exchanged.

### 2. Plaintiffs Cannot Base a Claim on Accounting Judgments Because Those Are Nonactionable Statements of Opinion.

Plaintiffs allege that, under GAAP, the 2020 Equity Transactions should have been treated as compensation. As a result, Plaintiffs argue statements concerning the transactions, related-party transactions generally, executive compensation, and ELM's expenses were all false and misleading. ¶ 6. But because these allegations involve a subjective evaluation of GAAP and related securities regulations, they fail to plead an actionable misstatement or omission.

The Supreme Court has made clear that a "sincere statement of pure opinion is not an 'untrue statement of material fact,' regardless [of] whether an investor can ultimately prove the belief wrong." *Omnicare, Inc.* v. *Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015). Under *Omnicare*, "an opinion may be actionable (1) as an untrue statement of material fact if the opinion is both incorrect (i.e., objectively false) and not genuinely believed

9

(i.e., subjectively false), or (2) as misleading if the speaker omits material facts underlying the basis for the opinion 'if those facts conflict with what a reasonable investor would take from the statement itself.'" *In re Hertz Glob. Holdings, Inc. Sec. Litig.*, 2017 WL 1536223, at *12 (D.N.J. Apr. 27, 2017), *aff'd sub nom. In re Hertz Glob. Holdings Inc*., 905 F.3d 106 (3d Cir. 2018). Alleged misstatements or omissions in "opinion" statements are "only actionable under the securities laws if they are not honestly believed and lack a reasonable basis." *City of Edinburgh Council* v. *Pfizer, Inc.,* 754 F.3d 159, 170 (3d Cir. 2014).

Courts have routinely held that accounting judgments are statements of opinion under *Omnicare* because accounting principles are "often subjective" and "involve a range of possible treatments instead of a single objective set of calculations." *In re Hertz Glob.*, 2017 WL 1536223, at *11–12 (concluding that an "estimation of an amount" is "inherently subjective" and so is "only actionable under the securities laws if [it is] not honestly believed and lack[s] a reasonable basis"); *In re AmTrust Fin. Servs., Inc. Sec. Litig.*, 2019 WL 4257110, at *13 (S.D.N.Y. Sept. 9, 2019) (holding that if financials "reflect a result achieved by applying judgments to objective historical facts . . . [it] reflects an opinion."). GAAP standards are considered one of those subjective accounting evaluations because "[t]hey involve a range of possible treatments instead of a single objective set of calculations." *In re Hertz*, 2017 WL 1536223, at *11; *In re Ikon Office Sols, Inc.*, 277 F.3d 658, 675 n.22 (3d Cir. 2002) ("GAAP is a term of art that encompasses a wide range of acceptable procedures.").

The accounting standards on which Plaintiffs rely, ASC 718 and ASC 850, require considerable subjective judgment and, needless to say, accounting expertise. Ex. 8, FASB ASC 718-10-15 (outlining the standard's scope and exceptions); Ex. 9, FASB ASC 850-10 (outlining the method for identifying, recognizing, and disclosing related-party transactions, including

10

identification of related parties and recognition and measurement of related-party transactions).[3] In fact, as the Complaint expressly acknowledges, the SEC regulations on which Plaintiffs rely depend on accounting evaluations concerning compensation and related-party transactions, as well as additional subjective judgments, including the application of GAAP.  ¶¶ 83–88.  This is also evidenced by the fact that ELMS did not conclude that the equity transactions were incorrectly reported, but instead merely stated that it was "further evaluating" its accounting for such transactions—a process that would require analysis by accounting professionals.  Ex. 6 at 3.

Plaintiffs' "Monday morning quarterback[ing]," an attempt to "second-guess [the] inherently subjective and uncertain assessments" by ELM and BDO under these accounting standards and SEC regulations, does not adequately plead falsity.  *Omnicare, Inc*., 575 U.S. at 186.  The Complaint does not allege that ELM's accounting treatment was "objectively false" or "not genuinely believed" by Luo or the other Defendants at the time, or that Luo or the other Defendants omitted material, conflicting facts known at the time.  *In re Hertz Glob.*, 2017 WL 1536223, at *12.  To be clear, the Complaint does not allege that Luo had any role whatsoever in the accounting assessments at issue here.

### 3. Statements Touting Luo's and Other ELM Executives' Experience Were True and Not Misleading.

Plaintiffs claim that certain statements "touting the experience of ELM's management team" and "the value to the business of ELM's senior executives" were false and misleading because they purportedly omitted "the material facts concerning the 2020 Equity Transactions and the involvement on ELM's senior executives in those transactions."  ¶¶ 7, 72; *see* ¶¶ 70–71, 73.  However, these statements were not only themselves true (as the Complaint does not

---

[3]   The Court can consider the FASB accounting standards because Plaintiffs relied on them in the Amended Complaint, and because "[j]udicial notice is appropriate for . . . accounting rules."  *Garcia* v. *J2 Glob., Inc.*, 2021 WL 1558331, at *10 (C.D. Cal. Mar. 5, 2021).

dispute), but are in any event completely **unrelated** to the 2020 Equity Transactions, which have no bearing whatsoever on the credentials and industry experience of ELM's executives.

For example, Taylor's statement that "Jason [Luo] has an extensive history of leadership in the automotive industry, including as CEO of Key Safety Systems, Ford China, and Accuride," ¶ 72(c), was true and in no way misleading at the time it was made and remains true today. Alleging that a true statement is misleading based on the purported failure to disclose unrelated matters cannot plead falsity of the actual alleged misstatement at issue. *City of Roseville Emps.' Ret. Sys.* v. *Horizon Lines, Inc.*, 713 F. Supp. 2d 378, 390 (D. Del. 2010) (holdings complaint failed to plead falsity where executives' "statements about [company's] investment in information technology" and "decreased volume and [company's] investment in Puerto Rico" were "totally unrelated to the price-fixing conspiracy," reasoning "the failure of those defendants to disclose the conspiracy does not render such statements misleading"); *Veal* v. *Lendingclub Corp.*, 2020 WL 3128909, at *13 (N.D. Cal. June 12, 2020) (dismissing alleged misstatements with prejudice where they were unrelated to plaintiffs' alleged theory of liability).

### 4. Plaintiffs Fail to Allege that Luo Made Any Purportedly False or Misleading Statement or Omission under Rule 10b-5(b).

Under Supreme Court precedent, only "the maker of a statement" who has "ultimate authority over the statement, including its content and whether and how to communicate it" can be liable for a Section 10(b) claim asserted under Rule 10b-5(b). *Janus Cap. Grp., Inc.* v. *First Deriv. Traders*, 564 U.S. 135, 142 (2011); 17 C.F.R. § 240.10b-5(b). Here, the Complaint asserts that FIII's Proxy and other SEC filings, joint ELM and FIII press releases, and certain investor call statements were false and misleading, and summarily concludes that all Defendants were responsible for all of those alleged misstatements. ¶¶ 51–88, 155. Critically, there are no "individualized allegations" that Luo **himself** made any statement. Plaintiffs instead allege only,

12

in a conclusory fashion, that the Defendants *as a group* "made, disseminated, issued, and/or approved" all statements. ¶ 155. That is not remotely enough to state a claim as to Luo. *Universal Am. Corp.* v. *Partners Healthcare Sols. Holdings, L.P.*, 176 F. Supp. 3d 387, 394 (D. Del. 2016) (dismissing claim against executive under *Janus* where complaint "lump[ed] [him] together with [other defendants], making only vague allegations about his participation").

### B.    Plaintiffs Fail to Plausibly Plead Scheme Liability as to Luo.

Plaintiffs also half-heartedly attempt to plead scheme liability under Rules 10b-5(a) & (c), which would require allegations that Luo "'committed a deceptive or manipulative act,' in addition to the other standard elements of a Section 10(b) violation." *Takata* v. *Riot Blockchain, Inc.*, 2020 WL 2079375, at *14 (D.N.J. Apr. 30, 2020). More specifically, "Plaintiff must set forth 'what manipulative [or deceptive] acts were performed, which defendants performed them, when the manipulative [or deceptive] acts were performed and what effect the scheme had on the securities at issue.'" *Id.* Other than rotely asserting the elements of scheme liability, ¶ 157(a) & (c), Plaintiffs allege no facts whatsoever showing that Luo engaged in any specific act of deception or manipulation. And Plaintiffs cannot rely on the alleged misstatements to plead scheme liability because they were not false or misleading and because Luo is not in any event alleged to have made or disseminated them. *SEC* v. *Rio Tinto plc*, 41 F.4th 47, 49 (2d Cir. 2022) ("[M]isstatements and omissions can form *part* of a scheme liability claim, but an actionable scheme liability claim also requires something *beyond* misstatements and omissions, such as dissemination.") (emphasis in original).

The Complaint does not challenge the 2020 Equity Transactions themselves as sham agreements as is necessary to plead a manipulative or deceptive act. *In re Upstart Holdings, Inc. Sec. Litig.*, 2023 WL 6379810, at *25 (S.D. Ohio Sept. 29, 2023) (dismissing scheme liability claim founded on alleged misstatements, loan purchases, and capital markets advice where

13

"[t]here is no allegation that the loan purchases were fake, for example, that the advice was a sham, or that the [defendants] made false or misleading misrepresentations in connection with their actions"); *De Vito* v. *Liquid Holdings Grp., Inc.*, 2018 WL 6891832, at *42 (D.N.J. Dec. 31, 2018) (dismissing scheme liability claim premised on legitimate pre-IPO stock transfer agreement where "[w]hat made this transaction deceptive, however, was not so much the agreement itself as its concealment" in public statements).  What Plaintiffs really challenge here is not the transactions themselves but rather statements about the transactions, but again, Luo is not alleged to have had any role in the making or dissemination of those statements.

          **C.**       **Plaintiffs Fail to Plausibly Plead a Strong Inference of Scienter as to Luo.**

To plausibly plead scienter under the PSLRA, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A).  This means pleading "a 'mental state embracing intent to deceive, manipulate, or defraud,' and requires a knowing or reckless state of mind." *Institutional Invs. Grp.* v. *Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009).  The "strong inference" must be supported by "cogent and compelling" facts not generic and conclusory allegations. *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).  This is an "'[e]xacting' pleading standard," *Avaya*, 564 F.3d at 253, and plaintiffs are required to meet this standard "with respect to each act or omission" alleged in the complaint.  15 U.S.C. § 78u-4(b)(2)(A).  The Third Circuit has approved of scienter analyses "that assess individual categories of scienter allegations" so long as the court "ultimately considered the allegations as a whole." *Hertz*, 905 F.3d at 115.

          **1.**       **Plaintiffs' Motive and Opportunity Allegations Fail to Plead Scienter.**

Plaintiffs allege that Luo had a material financial motive to commit fraud as he "stood to profit significantly from the Merger" because he allegedly "paid only approximately $780,000 to receive 78,016 ELM shares worth over $640 million" and had "every incentive to conceal [the

2020 Equity Transactions] because their revelation would have prevented the Merger from closing." ¶ 107.  Plaintiffs' allegation misses the mark both because it is conclusory and because it relies only on a generic motive that anyone involved in a corporate merger would have.  What is missing are any particularized factual allegations of a concrete and personal benefit to Luo resulting from the alleged fraud.  "Motives that are generally possessed by most corporate directors and officers do not suffice; instead plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from this fraud."  *Avaya*, 564 F.3d at 278.

Even Plaintiffs' generic and conclusory motive allegations do not withstand closer scrutiny.  To begin with, Plaintiffs acknowledge that Luo owned 100% of ELM's stock before the 2020 Equity Transactions and continued to own most of ELM's stock thereafter.  ¶ 33.  Thus, Luo already had an incentive to ensure the Merger was successful independent of Plaintiffs' alleged fraud.  His supposed motive to complete the Merger and recognize benefits flowing from the Merger thus cannot suffice to plead scienter.  *In re Exxon Mobil Corp. Sec. Litig.*, 387 F. Supp. 2d 407, 428 (D.N.J. 2005) ("The motive to complete a corporate transaction is generic and can be imputed to any for-profit company and its officers.  Such allegations alone do not give rise to a strong inference of fraudulent intent.").

Further, Plaintiffs' allegation that the Merger would not have closed if the alleged fraud were revealed is conclusory because there are no particularized allegations suggesting the Merger was in any danger of not closing.  *Id.* (rejecting scienter allegations where "Plaintiffs set forth no facts indicating that there was any real danger that the merger would not be consummated" and thus "[w]ithout the risk of the merger not being approved, there would have been no reason to defraud the [company's] shareholders"); *see GSC Partners CDO Fund* v. *Washington*, 368 F.3d 228, 237 (3d Cir. 2004) (finding insufficient to plead scienter allegations

that a merger would not have been able to close without the issuance of certain notes and that those notes could not have been sold at or near the price sought "had the true financial condition of the [company] been revealed"). Indeed, the Complaint expressly pleads that the Merger faced no real danger of not closing. ¶ 48 n.4 (pleading that Merger faced no real risk of failure because "only a small percentage of mergers and acquisitions fail to close").

Moreover, Plaintiffs fail to allege with particularity any statements that Luo made or disseminated or his participation in any aspect of the alleged fraudulent scheme, further undercutting their motive allegations.

### 2.    Plaintiffs Fail to Allege Any Other "Cogent and Compelling" Facts Sufficient to Amount to a "Strong Inference" of Scienter.

Plaintiffs next point to four ambiguous events as purported evidence of Luo's scienter. None of these events, whether alone or together, satisfies Plaintiffs' exacting burden to plead scienter with particularity.

***Luo's Resignation Does Not Support a Strong Inference of Scienter.*** Plaintiffs allege that Luo's 2022 resignation shows "that [his] actions were based on intentional misconduct." ¶ 111. Their allegations, however, do not plead a strong inference of Luo's scienter because even as alleged they do not link the resignations directly to the alleged fraud.

The Third Circuit has held that the resignations of key officers are insufficient to plead those officers acted with the requisite scienter. *E.g.*, *The Great Atl. & Pac. Tea Co., Inc. Sec. Litig.*, 103 F. App'x 465, 467, 470 (3d Cir. 2004) (explaining that "personnel changes do not support a strong inference of scienter" where nine employees were fired immediately after the announcement of accounting irregularities, and where one employee resigned three months later); *Hertz*, 905 F.3d at 118-19 (holding that resignations days before and two months after public release of accounting restatement blaming irregularities on "inappropriate tone at the top"

16

did not give rise to a strong inference of scienter).  The Third Circuit requires that other factors be considered, including whether the company directly linked the firings to the alleged fraud. *Great Atl.*, 103 F. App'x at 470.  Absent "particularized allegations connecting the departures to the alleged fraud," a complaint does not plausibly plead scienter.  *Hertz*, 905 F.3d at 118.

Here, Plaintiffs conclusorily attempt to link Luo's resignation to the alleged fraud concerning the disclosure of the 2020 Equity Transactions, ¶ 103, but the Form 8-K Plaintiffs rely on does not make the connection Plaintiffs urge on the Court.  The Form 8-K makes clear the ELMS Special Committee investigated the transactions and their corporate law, disclosure, and tax consequences, but did not tie Luo to having made or disseminated any of the alleged misstatements or omissions that Plaintiffs rely on for their claims here.  Ex. 6.  And the Form 8-K did not even conclude that the equity transactions were incorrectly reported, it merely stated that ELMS was "further evaluating" its accounting for such transactions.  *Id.* at 3.  Moreover, the fact that Luo and Taylor stayed on as consultants for two years following their resignations, as announced in the Form 8-K and obviously by agreement with ELMS itself, undermines Plaintiffs' allegation that Luo was involved in any nefarious activity.  *Id.*; *see Fain* v. *USA Tech., Inc.*, 707 F. App'x 91, 97 (3d Cir. 2017) (affirming dismissal of complaint, reasoning scienter not plausibly pleaded where defendant CFO resigned after an accounting restatement, received a significant severance package, and was retained as a consultant).

*Allegedly Inconsistent Responses by Luo and Taylor to the Special Committee Do Not Support a Strong Inference of Scienter.*  Plaintiffs allege that Luo and Taylor lied during the Special Committee's investigation and the only credible inference is that they did so "because they knew they had engaged in intentional wrongdoing." ¶ 113.  But, Plaintiffs have not shown

17

that their inference is credible, much less that it is at least as credible as any competing inference of non-fraudulent intent as is required to plead a strong inference of scienter.

The sole basis for Plaintiffs' allegation is one statement from the February 1, 2022 Form 8-K, which states that "in connection with the Special Committee investigation, Messrs. Luo and Taylor provided responses to the Special Committee that are believed to be inconsistent with documents reviewed by the Special Committee and its counsel." ¶¶ 90, 113. Plaintiffs did not (and cannot) identify language in the Form 8-K or otherwise indicating the content of the "inconsistent" responses. *Cf. Bartesch* v. *Cook*, 941 F. Supp. 2d 501, 507 (D. Del. 2013) (holding that an article the complaint relied upon "does not suggest that defendants knew and were misrepresenting" that a business strategy was going to fail in the company's SEC filings). But Plaintiffs have not alleged any relevant nexus between any "inconsistent" responses and the purported misstatements or omissions that underpin their Complaint. Plaintiffs' failure to do so contradicts any inference of scienter. *Cf. Tracinda Corp.* v. *DaimlerChrysler AG*, 197 F. Supp. 2d 42, 79 (D. Del. 2002) (dismissing complaint where "Plaintiffs have not adequately and consistently linked their sources of information to their allegations").

***BDO's Statement About a Potential Illegal Act Does Not Support a Strong Inference of Scienter as to Luo.*** Based on a letter attached to a February 14, 2022 Form 8-K, Plaintiffs allege that BDO's resignation as ELMS's auditor and purported "finding that an illegal act has or may have been committed at the Company supports a finding of scienter." ¶ 114; *see* ¶¶ 12, 123; Ex. 10. However, Plaintiffs have failed to allege facts showing that BDO resigned because of Luo's purported misconduct alleged in the Complaint.

While BDO tied its resignation to events relating to those disclosed in ELMS's February 1, 2022 Form 8-K, BDO did not reference Luo, suggest that the "illegal act" had to do with any

18

alleged actions taken by him, or tie itself to the alleged misstatements and omissions Plaintiffs plead in their Complaint. *Cf. Tracinda*, 197 F. Supp. 2d at 79. Again, absent allegations of a nexus between the resignation and alleged misconduct set forth in the Complaint, BDO's resignation does not plead a strong inference of scienter. *Great Atl.*, 103 F. App'x at 467, 470.

> ***The Existence of a Related SEC Investigation Does Not Support a Strong Inference of Scienter.*** Plaintiffs allege that the fact that the "SEC had launched an investigation into the 2020 Equity Transactions and the associated accounting violations" demonstrates scienter because "[i]t is unlikely that the SEC would have chosen to open his this investigation and devote resources to it if the conduct at issue involved only innocent mistakes." ¶ 115. But the existence of that investigation does not suffice to plead Luo's scienter. *Kates* v. *Kandarian*, 2020 WL 4287374, at *10 (D. Del. July 27, 2020) (concluding complaint failed to plead scienter, reasoning "a government investigation does not itself give rise to a cogent inference of scienter"). Indeed, "an SEC investigation that has not resulted in charges or any finding of wrongdoing does not support an inference of scienter"—much less a strong inference of scienter. *Hertz*, 2017 WL 1536223, at *17 n.6 (noting plaintiffs did not allege the investigations' status or conclusions).

Here, Plaintiffs have not alleged that the SEC has made any determinations regarding Luo's conduct regarding the 2020 Equity Transactions. Ex. 7 ("At this point, the Company cannot predict the eventual scope, duration or outcome of this [investigation].") In fact, ELMS's disclosure of the investigation does not mention Luo at all. *Id.*

## II.    Plaintiffs Fail to Plausibly Plead a Section 20(a) Claim as to Luo.

Plaintiffs' Section 20(a) claim against Luo as a purported control person of ELM or ELMS fails for three independent reasons. ¶¶ 160–161. *First*, as shown above and in the briefs of the other Defendants, Plaintiffs have not plausibly alleged any primary Section 10(b) claim, which negates control-person liability as a matter of law. *City of Edinburgh Council*, 754 F.3d at

19

177 (affirming dismissal of Section 20(a) claim where complaint failed to plead underlying violation). *Second*, Plaintiffs do not plausibly allege that Luo controlled FIII (which was merged with ELM to form ELMS) before the Merger. Luo became ELMS's Executive Chairman and Chairman of the Board after the Merger between FIII and ELM, but he had no pre-Merger role at FIII. Because the Complaint only alleges ELMS is liable for *FIII's* alleged Section 10(b) violations in the Proxy and other SEC filings, ¶¶ 6, 51–73, Luo cannot have been a control person of those pre-Merger statements. *Skeway* v. *China Nat'l Gas, Inc.*, 2012 WL 2877645, at *1 (D. Del. July 6, 2012) (dismissing Section 20(a) claim for failure to plead control based solely on defendants membership on audit committee "without any additional factual allegations"). *Third*, because Plaintiffs have failed to allege a Section 10(b) claim against Luo for the reasons shown above, the Complaint also fails to plead that he was a culpable participant in any alleged Section 10(b) violation. *Belmont* v. *MB Inv. Partners, Inc.*, 708 F.3d 470, 485 (3d Cir. 2013) (culpable participation requires knowledge and acts in furtherance of the scheme); *In re Advance Auto Parts, Inc. Sec. Litig.*, 2020 WL 599543, at *10 (D. Del. Feb. 7, 2020) (dismissing Section 20(a) claim where plaintiff failed to allege the defendants "controlled the drafting or publishing of the [statements] at issue, or that [they] reviewed or signed them before publication").

## III.    The Complaint Should Be Dismissed with Prejudice as to Luo.

Dismissal should be with prejudice because granting Plaintiffs yet another opportunity to amend would be futile. *Dock* v. *Rush*, 432 F. App'x 130, 134 (3d Cir. 2011) (affirming dismissal of complaint with prejudice and denial of leave to amend where amendment would be futile). Plaintiffs had over five months since filing the initial complaint to correct that complaint's substantial defects but did not.

## CONCLUSION

Plaintiffs' Section 10(b) and 20(a) claims should be dismissed as to Luo with prejudice.

<table>
<tr>
<td>

OF COUNSEL:

Andrew J. Ehrlich
Gregory F. Laufer
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel.:  (212) 373-3000
aehrlich@paulweiss.com
glaufer@paulweiss.com

Dated:  January 12, 2024

</td>
<td>

PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP

By:  */s/ Matthew D. Stachel*
    Matthew D. Stachel (No. 5419)
    1313 N. Market Street, Suite 806
    Post Office Box 32
    Wilmington, DE 19899-0032
    Tel.:  (302) 655-4410
    mstachel@paulweiss.com

*Attorneys for Defendant Jason Luo*

</td>
</tr>
</table>

21