**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| SHMUEL LEVY, Individually and on Behalf of Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>JASON LUO, JAMES TAYLOR, ALBERT LI, MARSHALL KIEV, DAVID BORIS, and BDO USA, LLP,<br><br>    Defendants. | C.A. No. 23-cv-00653-GBW |

**DEFENDANT JAMES TAYLOR'S REPLY BRIEF IN FURTHER SUPPORT OF**
**<u>HIS MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT</u>**

OF COUNSEL:

Lawrence Gerschwer
Joseph A. Matteo
Charlotte H. Underwood
390 Madison Avenue, 12th Floor
New York, NY 10017
Telephone: (646) 746-2000
Fax: (646) 746-2001
Lawrence.Gerschwer@btlaw.com
Joseph.Matteo@btlaw.com
Charlotte.Underwood@btlaw.com

**BARNES & THORNBURG LLP**
Michael J. Maimone (DE No. 3592)
Gabriella Mouriz (DE No. 6993)
220 Delaware Avenue, Suite 1200
Wilmington, DE 19801
Telephone: (302) 300-3471
Fax: (302) 300-3456
MMaimone@btlaw.com
GMouriz@btlaw.com

*Attorneys for Defendant James Taylor*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT ..................................................................................................................... 1

I.    THE COURT SHOULD DISMISS PLAINTIFFS' SECTION 10(b) CLAIM .................. 1

    A.    Plaintiffs Have Not Identified a False Statement or Omission by Taylor .............. 1

        1.    Taylor Did Not Make Any Alleged Misstatement ...................................... 1

        2.    The Only Statement Attributed to Taylor Was True ................................. 4

        3.    ELM's Accounting Treatment of the November 2020 Equity Transaction Was a Non-Actionable Statement of Opinion ......................... 5

    B.    Plaintiffs Have Not Established a Strong Inference of Scienter ............................ 6

        1.    The Only Motive that Plaintiffs Ascribe to Taylor Would Be Shared by Corporate Officers in any Transaction .................................................. 6

        2.    Taylor Did Not Consciously Misbehave or Act Recklessly ....................... 7

II.    THE COURT SHOULD DISMISS PLAINTIFFS' CONTROL PERSON CLAIM ......... 9

CONCLUSION ................................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bristol Myers Squibb Co. Sec. Litig.*,
   586 F. Supp. 2d 148 (S.D.N.Y. 2008)......................................................................................4

*In re Cannavest Corp. Sec. Litig.*,
   307 F. Supp. 3d 222 (S.D.N.Y. 2018)....................................................................................6

*Ciresi v. Citicorp*,
   782 F. Supp. 819 (S.D.N.Y. 1991) ........................................................................................4

*In re CitiGroup Inc. Bond Litig.*,
   723 F. Supp. 2d 568 (S.D.N.Y. 2010)....................................................................................6

*City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*,
   70 F.4th 668 (3d Cir. 2023) ...................................................................................................3

*Delaware Cnty. Emps. Ret. Sys. v. AdaptHealth Corp.*,
   606 F. Supp. 3d 124 (E.D. Pa. 2022) ....................................................................................5

*Fain v. USA Techs., Inc.*,
   707 F. App'x 91 (3d Cir. 2017) .............................................................................................9

*Fresno Cnty. Employees' Ret. Ass'n v. comScore, Inc.*,
   268 F. Supp. 3d 526 (S.D.N.Y. 2017)....................................................................................6

*Hacker v. Elec. Last Mile Sols., Inc.*,
   No. CV 22-00545-MEF-LDW, 2023 WL 5266357 (D.N.J. Aug. 15, 2023)...........................6

*In re Hertz Glob. Holdings, Inc. Sec. Litig.*,
   No. CV 13-7050, 2017 WL 1536223 (D.N.J. Apr. 27, 2017),
   *aff'd* 905 F.3d 106 (3d Cir. 2018) ........................................................................................9

*In re Hertz Glob. Holdings Inc.*,
   905 F.3d 106 (3d Cir. 2018).................................................................................................9

*In re Honeywell Int'l Inc. Consol. S'holder Litig.*,
   No. 19-898-CFC, 2024 WL 492392 (D. Del. Feb. 8, 2024).....................................................2

*Janus Capital Group, Inc. v. First Derivative Traders*,
   564 U.S. 135 (2011)...............................................................................................................4

*JPMorgan Chase Bank, N.A. v. Javice*,
   No. 1:22-CV-01621-JDW, 2023 WL 4546409 (D. Del. July 13, 2023)...................................3

*Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Swanson*,
    No. CIV.A. 09-799, 2011 WL 2444675 (D. Del. June 14, 2011)..............................................7

*In re Lottery.com, Inc. Sec. Litig.*,
    No. 1:22-CV-07111 (JLR), 2024 WL 454298 (S.D.N.Y. Feb. 6, 2024) ...................................6

*In re Merck & Co., Inc. Sec., Derivative, & ERISA Litig.*,
    No. CIV.A. 05-1151 SRC, 2011 WL 3444199 (D.N.J. Aug. 8, 2011).....................................3

*Omanoff v. Patrizio & Zhao LLC*,
    No. CIV.A. 14-723, 2015 WL 1472566 (D.N.J. Mar. 31, 2015)..............................................6

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    575 U.S. 175 (2015)...............................................................................................................5, 6

*Ortiz v. Canopy Growth Corp.*,
    537 F. Supp. 3d 621 (D.N.J. 2021) .......................................................................................6, 8

*Rahman v. Kid Brands, Inc.*,
    736 F.3d 237 (3d Cir. 2013)......................................................................................................7

*Roofer's Pension Fund v. Papa*,
    No. CV 16-2805, 2018 WL 3601229 (D.N.J. July 27, 2018)....................................................8

*S.E.C. v. Brown*,
    878 F. Supp. 2d. 109 (D.D.C. 2012) .........................................................................................4

*Starr Invs. Cayman II, Inc. v. China MediaExpress Holdings, Inc.*,
    No. CV 11-233-RGA, 2014 WL 4180331 (D. Del. Aug. 21, 2014)..........................................4

*Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*,
    176 F. Supp. 3d 387 (D. Del. 2016).......................................................................................2, 3

*Washtenaw Cnty. Employees' Ret. Sys. v. Walgreen Co.*,
    No. 15-CV-3187, 2019 WL 4597518 (N.D. Ill. Sept. 23, 2019) ..............................................2

*Winer Family Tr. v. Queen*,
    503 F.3d 319 (3d Cir. 2007)......................................................................................................3

**Statutes**

Securities Exchange Act of 1934, Section 10(b), 15 U.S.C. § 78j(b)................................. *passim*

Securities Exchange Act of 1934, Section 20(a), 15 U.S.C. § 78t(a) ....................................1, 4, 9

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)................................3, 10

**Other Authorities**

Securities Exchange Act of 1934, Rule 10b-5, 17 C.F.R. § 240.10b-5 ....................................9, 10

Defendant James Taylor respectfully submits this reply brief in further support of his motion to dismiss the Complaint with prejudice.[1]

## PRELIMINARY STATEMENT

Taylor demonstrates in his Opening Brief that Plaintiffs have not pleaded a viable claim against him under either Section 10(b) or Section 20(a) of the Exchange Act. Plaintiffs largely ignore Taylor's arguments, and instead repeat the same conclusory allegations that Taylor already has debunked. Where Plaintiffs do respond to the points that Taylor raises in his Opening Brief, those arguments confirm the inadequacy of Plaintiffs' allegations against Taylor. Because nothing in Plaintiffs' Opposition suggests that Plaintiffs can remedy these fatal flaws, the Court should dismiss Plaintiffs' claims against Taylor with prejudice.

## ARGUMENT

**I.   THE COURT SHOULD DISMISS PLAINTIFFS' SECTION 10(b) CLAIM**

**A.   Plaintiffs Have Not Identified a False Statement or Omission by Taylor**

**1.   Taylor Did Not Make Any Alleged Misstatement**

The question before this Court is whether Plaintiffs have adequately alleged that Taylor is responsible for alleged misstatements contained in documents that FIII provided to its own investors when Taylor was not an officer or director of FIII and had no control over FIII's actions. In his Opening Brief, Taylor explains that Section 10(b) liability can attach only to the "maker" of an alleged misstatement, which is the person who has "ultimate authority" over the alleged misstatement, or the person to whom the alleged misstatement is attributed. Taylor Br. 10-12. Taylor further explains that Plaintiffs do not adequately allege that Taylor was the "maker" of any

---

[1] Capitalized terms not otherwise defined in this reply brief have the meanings ascribed to them in Taylor's Memorandum of Law in Support of His Motion to Dismiss the Amended Class Action Complaint (the "Opening Brief, or "Taylor Br.") (D.I. 34). Taylor refers to Lead Plaintiffs' Opposition to Motions to Dismiss (D.I. 51) as the "Opposition" or "Opp."

of the alleged misstatements identified in the Complaint, nearly all of which were in either the Proxy or the Subscription Agreements, which were documents that FIII issued. *See id.* Plaintiffs do not argue that Taylor was the "maker" of any of the alleged misstatements in the Subscription Agreements or in the BDO audit opinion included in the Proxy. The Court therefore should dismiss Plaintiffs' Section 10(b) claim against Taylor to the extent that Plaintiffs base their claim on any of these alleged misstatements. *See In re Honeywell Int'l Inc. Consol. S'holder Litig.*, No. 19-898-CFC, 2024 WL 492392, at *3 n. 1 (D. Del. Feb. 8, 2024).

The Opposition confirms that Plaintiffs' reliance on the remaining alleged misstatements in the Proxy is equally flawed. As Plaintiffs concede, *FIII*'s co-chief executive officers signed the Proxy. Opp. at 20. Notwithstanding this admission, Plaintiffs argue that statements in the Proxy concerning ELM were attributable to Taylor because the Proxy contained a note that "information contained in this proxy statement . . . relating to ELM has been supplied by ELM" and BDO stated in its audit opinion that ELM's "financial statements are the responsibility of [ELM] management." *Id.* at 22 (citations omitted). However, neither FIII nor BDO identified *Taylor* as the person who made or had ultimate authority over these statements. As Plaintiffs' own decisions demonstrate, these general references to ELM as a whole do not suffice to state a claim against Taylor specifically. *See Washtenaw Cnty. Employees' Ret. Sys. v. Walgreen Co.*, No. 15-CV-3187, 2019 WL 4597518, at *5 (N.D. Ill. Sept. 23, 2019) (statement in analyst's report that "'Walgreens' did not back away from the FY16 EBIT target" was "too broad to create any inference that [the] statement should be attributed" to a Walgreens officer who was not specifically named in the report); *Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*, 176 F. Supp. 3d 387, 394-95 (D. Del. 2016) ("vague allegations" that chief operating officer was the "maker" of corporate presentations insufficient where plaintiffs did not allege "specific facts" upon which the

presentations could be attributed to him as a person with "ultimate authority" over them).[2]

This conclusion is bolstered by the fact that the group pleading doctrine "did not survive the enactment of the PSLRA." *Universal Am. Corp.*, 176 F. Supp. 3d at 396. That doctrine "is a judicial presumption that statements in group-published documents . . . are attributable to officers and directors who have day-to-day control or involvement in regular company operations." *Winer Family Tr. v. Queen*, 503 F.3d 319, 335 (3d Cir. 2007). Because Plaintiffs cannot rely on that presumption here, general statements that ELM provided certain information in the Proxy do not create a plausible inference that those statements are attributable to Taylor. *See, e.g.*, *In re Merck & Co*, 2011 WL 3444199 at *28 ("The group pleading doctrine is not available to Plaintiffs, and thus statements in public reports and filings made by Merck cannot be attributed to [the company's general counsel] simply because he is a corporate insider with involvement in regular company operations.") (cited in Opp. at 22).

Finally, contrary to Plaintiffs' contention, there is no "question of fact" regarding whether Taylor made any of the alleged misstatements in the Complaint. Opp. at 22. Numerous courts within the Third Circuit have dismissed claims at the pleading stage where, as here, the plaintiff

---

[2] The other decisions on which Plaintiffs rely confirm that Plaintiffs' allegations do not create a plausible inference that Taylor made any of the alleged misstatements in the Proxy. *See* Opp. at 21-22. In each of these decisions, the court found that the plaintiff had adequately alleged that a specific corporate officer made the alleged misstatements in question because that officer either signed the SEC filing containing the alleged misstatement or was specifically identified as the speaker. *See City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 688 (3d Cir. 2023) (attributing challenged statement to officer where analysts identified officer by name as the speaker); *JPMorgan Chase Bank, N.A. v. Javice*, No. 1:22-CV-01621-JDW, 2023 WL 4546409, at *4 (D. Del. July 13, 2023) (attributing statements in merger agreement to executive who was specifically named in the merger agreement as someone whose knowledge was equivalent to the target company's knowledge); *In re Merck & Co., Inc. Sec., Derivative, & ERISA Litig.*, No. CIV.A. 05-1151 SRC, 2011 WL 3444199, at *25 (D.N.J. Aug. 8, 2011) (attributing statements to officer because he "signed SEC forms and was quoted in articles and reports in his capacity" as an officer). Here, by contrast, Taylor did not sign the Proxy, which does not identify him as the maker of any of the challenged statements.

failed to allege facts creating a plausible inference that an individual defendant was the maker of the alleged misstatement under *Janus*. *See* Taylor Br. at 11; *accord, e.g.*, *Starr Invs. Cayman II, Inc. v. China MediaExpress Holdings, Inc.*, No. CV 11-233-RGA, 2014 WL 4180331, at *7 (D. Del. Aug. 21, 2014). By contrast, the out-of-circuit decisions on which Plaintiffs rely are distinguishable. *See S.E.C. v. Brown*, 878 F. Supp. 2d. 109, 116 (D.D.C. 2012) (denying summary judgment to defendant because factual record included "adequate 'surrounding circumstances' for the trier of fact to find that the omission at issue was 'made' by" defendant); *In re Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148, 171-72 (S.D.N.Y. 2008) (sustaining a Section 20(a) claim against two defendants based on each defendant's argument that the other "culpably participated" in the challenged conduct).

### 2.    The Only Statement Attributed to Taylor Was True

As Taylor explains in his Opening Brief, the sole statement attributed to him in the Complaint—*i.e.*, that he and other members of ELM's management had decades of relevant experience—was true when he made it, and remains true today. *See* Taylor Br. at 13-14. This statement did not trigger any duty to disclose information about the 2020 Equity Transactions because it was entirely unrelated to those transactions. *See id.* Plaintiffs do not even attempt to address this fact, focusing instead on the Proxy's risk disclosure that "losing 'key personnel' 'could negatively impact . . . our post-combination business.'" Opp. at 18 (quoting AC ¶ 70). Taylor, however, did not make that statement, which could not be attributed to Taylor even under Plaintiffs' incorrect theory of attribution. In any event, Taylor had no duty to "'disclose uncharged, unadjudicated wrongdoing or mismanagement.'" Taylor Br. at 14 (quoting *Ciresi v. Citicorp*, 782 F. Supp. 819, 823 (S.D.N.Y. 1991)).[3]

---

[3] *Delaware Cnty. Emps. Ret. Sys. v. AdaptHealth Corp.*, 606 F. Supp. 3d 124 (E.D. Pa. 2022), on which Plaintiffs rely, does not change this conclusion. In that case, the court found that a

### 3.   ELM's Accounting Treatment of the November 2020 Equity Transaction Was a Non-Actionable Statement of Opinion

While Taylor did not make any of the alleged misstatements in the Proxy, the accounting treatment of the November 2020 Equity Transaction was a statement of opinion, and therefore subject to the heightened pleading standard that the Supreme Court established in *Omnicare*. *See* Taylor Br. at 12-13. Plaintiffs have not met this standard. *See id.*

Plaintiffs do not (and cannot) argue that their allegations satisfy *Omnicare*. Instead, they contend that *Omnicare* does not apply here because the value of the stock issued in connection with the November 2020 Equity Transaction was a matter of fact, not opinion. *See* Opp. at 23-24. But ELM was required to treat the value of that stock as a compensation expense only if the stock constituted compensation under the applicable accounting rules in the first place. *See* ASC 718-10-15-4 ("share-based payment transactions" are not "accounted for under this Topic" if "the transfer is clearly for a purpose other than compensation for goods or services to the reporting entity"); *see also id.* at 718-10-15-5 ("The guidance in this Topic does not apply to transactions involving share-based payment awards granted to a lender or an investor that provides financing to the issuer."). Because that threshold determination depended on "management's application of judgment and subjective evaluation" of the purposes of the transaction, the accounting treatment of that transaction is a paradigmatic example of a statement of opinion that is subject to *Omnicare*'s heightened pleading standard. *Ortiz v. Canopy Growth Corp.*, 537 F. Supp. 3d 621, 667 (D.N.J.

---

company's statements that an executive was "integral" to the company's success were misleading because the company did not disclose that the executive already had been sued and was being criminally investigated *at the time* of the disclosure. *Id*. at 135. Here, by contrast, when Taylor touted his own management experience and that of his colleagues, there were no pending lawsuits or investigations. Plaintiffs likewise do not, and cannot, point to any facts in the Complaint from which this Court could infer that Taylor knew or should have known that his future position in the post-Transaction company was in jeopardy based on the November 2020 Equity Transaction, which was disclosed in the ELM financial statements included in the Proxy. (*See* AC ¶ 58.)

2021). And because Plaintiffs tacitly concede that they cannot meet that pleading standard, the Court should dismiss Plaintiffs' Section 10(b) claim against Taylor.[4]

### B.     Plaintiffs Have Not Established a Strong Inference of Scienter

As Taylor explains in his Opening Brief, the Court also should dismiss Plaintiffs' Section 10(b) claim against Taylor because Plaintiffs have not alleged that Taylor had a cognizable motive to commit fraud, and also have not alleged facts creating a strong inference that Taylor consciously misbehaved or acted recklessly. *See* Taylor Br. at 14-18. Nothing in Plaintiffs' Opposition changes this conclusion.

### 1.     The Only Motive that Plaintiffs Ascribe to Taylor Would Be Shared by Corporate Officers in any Transaction

Plaintiffs concede, as they must, that "broadly applicable allegations that could apply to any defendant" are insufficient to demonstrate scienter, but argue that they have alleged that each of the "Individual Defendants" had "specific and concrete personal financial motives" that create a strong inference of fraudulent intent. Opp. at 34-35. With respect to Taylor, however, Plaintiffs point only to their allegations that Taylor purportedly was motivated to "conceal" the November 2020 Equity Transaction to ensure that "the Merger closed." Opp. at 33 (citing AC ¶ 107.) Setting aside the fact that the November 2020 Equity Transaction *was* disclosed in ELM's financial

---

[4] The decisions on which Plaintiffs rely, by contrast, do not involve the inherently subjective determination of whether stock issued to a company officer constitutes compensation under ASC 718. *See In re Lottery.com, Inc. Sec. Litig.*, No. 1:22-CV-07111 (JLR), 2024 WL 454298, *24 (S.D.N.Y. Feb. 6, 2024); *In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 240 (S.D.N.Y. 2018); *Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 546 (S.D.N.Y. 2017); *Omanoff v. Patrizio & Zhao LLC*, No. CIV.A. 14-723, 2015 WL 1472566, at *5 (D.N.J. Mar. 31, 2015); *In re CitiGroup Inc. Bond Litig.*, 723 F. Supp. 2d 568, 594 (S.D.N.Y. 2010). Plaintiffs' reliance on *Hacker v. Elec. Last Mile Sols., Inc.*, No. CV 22-00545-MEF-LDW, 2023 WL 5266357 (D.N.J. Aug. 15, 2023) is equally misplaced. The *Hacker* court did not rule on whether BDO had misrepresented "facts" under *Omnicare* and directed the parties to submit additional briefing on that issue, which remains pending. *Hacker*, 2023 WL 5266357, at *18-19.

statements (*see* AC ¶ 58), this same motive can be ascribed to corporate officers in nearly every transaction, and therefore does not create a strong interference of scienter. *See* Taylor Br. at 15.

The decisions on which Plaintiffs rely confirm this point. For example, in both *Rahman v. Kid Brands, Inc.*, 736 F.3d 237 (3d Cir. 2013) and *Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Swanson*, No. CIV.A. 09-799, 2011 WL 2444675 (D. Del. June 14, 2011) ("*Local 731*"), the courts recognized that motives possessed by most corporate officers, including a desire to ensure the consummation of a proposed merger from which the officers would benefit, are insufficient to create a strong inference of scienter. *Rahman*, 746 F.3d at 245-46; *Local 731*, 2011 WL 2444675 at *12. The *Rahman* court concluded that the plaintiff "failed to plead facts to support an assertion that the individual defendants had a motive to engage in wrongful conduct." *Rahman*, 746 F.3d at 246 (cleaned up). The *Local 731* court, meanwhile, held that the plaintiff had adequately alleged scienter because it had "alleged a detailed set of facts" that the individual defendants were aware of and withheld adverse material financial information, and further held that the defendants' pattern of stock sales "bolster[ed]" that inference. *See Local 731*, 2011 WL 2444675 at *12. Here, by contrast, Plaintiffs have not identified any such facts with respect to Taylor, and therefore the bare allegation that he stood to benefit from the Merger does not create a compelling inference of scienter. *See* Taylor Br. at 14-18; *infra* at 6-9.

### 2.     Taylor Did Not Consciously Misbehave or Act Recklessly

Plaintiffs next argue that they have adequately alleged that Taylor acted with scienter because he was aware of the difference in the price at which he purchased ELM's shares and the price at which he potentially could exchange those shares if the Merger closed. *See* Opp. at 28-29. But the relevant question here is not whether Taylor knew that his ELM stock would be worth more after the Merger; it is whether Taylor knew or was reckless in not knowing that the difference between those two values constituted compensation under the applicable accounting rules, and

7

therefore should have been treated as compensation on the financial statements. None of the allegations that Plaintiffs point to even suggests that Taylor—who was not an accountant—had any inkling that ELM should have treated his shares as a compensation expense. To the contrary, BDO gave ELM a clean audit opinion with full knowledge of the November 2020 Equity Transaction. This fact, "in itself, weighs heavily against scienter." *Ortiz*, 537 F. Supp. 3d at 678.[5]

In the absence of any allegations that Taylor knew or should have known that ELM had improperly accounted for the November 2020 Equity Transaction, Plaintiffs resort to after-the-fact events that they claim provide circumstantial evidence of Taylor's knowledge. *See* Opp. at 30-32. Taylor already explained in his Opening Brief why these allegations do not create a compelling inference of scienter. *See* Taylor Br. at 16-18. Plaintiffs' attempt to resuscitate these allegations confirms their inadequacy. For example, Plaintiffs concede that ELMS retained Taylor as a consultant at a substantial annual salary following his resignation, but argue that it is more plausible to infer that ELMS did so only because ELMS was dependent on his expertise and knowledge. *See* Opp. at 31-32. Had ELMS's board concluded that Taylor engaged in intentional wrongdoing, however, it would not have wanted Taylor anywhere near ELMS's operations going forward. The far more cogent and compelling inference therefore is that ELMS's board concluded that Taylor had not consciously misbehaved. This inference is further supported by the fact that Taylor not only retained his "health insurance for a period of time," *Fain v. USA Techs., Inc.*, 707

---

[5] Plaintiffs' decisions are in full accord. For example, in *Roofer's Pension Fund v. Papa*, No. CV 16-2805, 2018 WL 3601229 (D.N.J. July 27, 2018) (Opp. at 35), the court observed that "the approval of an independent auditor[] is strongly probative of a lack of scienter." *Roofer's Pension Fund*, 2018 WL 3601229, at *20. The court found that the plaintiff had not adequately alleged scienter notwithstanding publicly available analyst reports containing contradictory information because (as here) the plaintiff identified "no internal reports, documents, or communications that point to Defendants' knowledge of" information that called into question the company's accounting practices or valuations. *Id.* at *19. Thus, "[t]he mere fact that these reports existed is not as compelling as the competing inference raised by[the auditor]'s unqualified opinions." *Id.*

F. App'x 91, 97 (3d Cir. 2017), but also kept his 2021 cash bonus, restricted stock, and indemnification and advancement rights, *see* Taylor Br. at 7-8.

Plaintiffs' remaining arguments are equally inadequate. For example, the Court cannot infer Taylor's scienter from BDO's resignation (Opp. at 32), because BDO never said that it resigned because of Taylor or because ELM's financial statements were inaccurate. Indeed, Plaintiffs do not allege that Taylor directly participated in drafting ELM's financial statements, and, in any event, BDO confirms in its reply brief that it *disagreed* that ELM had accounted for the 2020 Equity Transactions incorrectly. The mere "announcement of an SEC investigation into the 2020 Equity Transactions" (*id.*) likewise does not satisfy Plaintiffs' pleading burden because "[a]n SEC investigation that has not resulted in any charges or any finding of wrongdoing does not support an inference of scienter," *In re Hertz Glob. Holdings, Inc. Sec. Litig.*, No. CV 13-7050, 2017 WL 1536223, at *17 n.6 (D.N.J. Apr. 27, 2017), *aff'd* 905 F.3d 106 (3d Cir. 2018). Finally, the Court cannot infer scienter based on the purported size of the potential restatement, which ELMS never even made, (Opp. at 32), because even "significant accounting errors [are] 'insufficient by [themselves] to give rise to a strong inference of scienter.'" *In re Hertz Glob. Holdings Inc.*, 905 F.3d at 116. This conclusion is particularly true here, where, as discussed above, BDO's clean audit opinion rebuts any inference that Taylor knew or should have known that ELM's financial statements were misleading.

## II.    THE COURT SHOULD DISMISS PLAINTIFFS' CONTROL PERSON CLAIM

Plaintiffs have not stated a cognizable claim against Taylor under Section 20(a) because they have not adequately alleged (1) a primary violation under Section 10(b) and Rule 10b-5, (2) that Taylor controlled any alleged primary violator, and (3) that Taylor knowingly participated in an alleged misstatement by a controlled person with an intent to defraud investors. *See* Taylor Br.

at 18-20. Plaintiffs' Opposition confirms that they have not satisfied their pleading burden with respect to any of these three elements. *See* Opp. at 48-49.

*First*, as discussed above and in the reply briefs of the other individual defendants, Plaintiffs have not adequately alleged a primary violation under Section 10(b) and Rule 10b-5.

*Second*, Plaintiffs tacitly concede that Taylor did not control FIII or the other individual defendants, and point to no particularized factual allegations that Taylor controlled ELM. *See* Opp. at 49. For example, Taylor's participation in negotiations regarding the Merger would not demonstrate that Taylor exercised actual control over the alleged misstatements attributable to ELM in the Proxy. *See* Taylor Br. at 19-20. The fact that Taylor was the chief executive officer of ELM does not change this conclusion because allegations that a party served as an officer or director are not sufficient to plead control. *See* Taylor Br. at 19. The statement in the Proxy that "information related to ELM has been supplied by ELM" is equally insufficient because it lacks the required particularized allegations that Taylor exercised control over providing that information. Finally, Taylor's alleged participation in an investor conference call and his pre-Merger purchase of ELM shares do not satisfy Plaintiffs' pleading obligations because Plaintiffs do not allege that Taylor controlled the statements that any other participant made during the call, and do not explain how Taylor's purchase of ELM shares caused him to control any alleged primary violator's challenged disclosure.

*Third*, Plaintiffs do not point to any allegations in the Complaint—let alone the particularized allegations required under the PSLRA—demonstrating that Taylor acted with the required culpable intent. To the contrary, as discussed in Taylor's Opening Brief and above, Plaintiffs' allegations of Taylor's scienter are entirely lacking. Taylor Br. at 14-18; *supra* at 6-9.

## CONCLUSION

The Court should dismiss Plaintiffs' claims against Taylor with prejudice.

Dated: April 11, 2024


OF COUNSEL:

Lawrence Gerschwer
Joseph A. Matteo
Charlotte H. Underwood
390 Madison Avenue, 12th Floor
New York, NY 10017
Telephone: (646) 746-2000
Fax: (646) 746-2001
Lawrence.Gerschwer@btlaw.com
Joseph.Matteo@btlaw.com
Charlotte.Underwood@btlaw.com

**BARNES & THORNBURG LLP**

By: */s/* Gabriella Mouriz
Michael J. Maimone (DE No. 3592)
Gabriella Mouriz (DE No. 6993)
220 Delaware Avenue, Suite 1200
Wilmington, DE 19801
Telephone: (302) 300-3471
Fax: (302) 300-3456
MMaimone@btlaw.com
GMouriz@btlaw.com


*Attorneys for Defendant James Taylor*

11

## <u>CERTIFICATE OF SERVICE</u>

I, Gabriella Mouriz, hereby certify that on April 11, 2024, a true and correct copy of **Defendant James Taylor's Reply Brief in Further Support of His Motion to Dismiss the Amended Class Action Complaint** was filed electronically with the Court and served on all counsel of record via the Court's Electronic Filing System.

Dated: April 11, 2024

*/s/* Gabriella Mouriz
Gabriella Mouriz

12