# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SHMUEL LEVY, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 23-cv-653 (GBW) |
| v. | ) ) | |
| JASON LUO, JAMES TAYLOR, ALBERT LI, MARSHALL KIEV, DAVID BORIS, and BDO USA, LLP, | ) ) ) ) ) | CLASS ACTION |
| Defendants. | ) ) | |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF BDO USA, LLP's\* MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT

**MCDERMOTT WILL & EMERY LLP**

Ethan H. Townsend (#5813)
Daniel T. Menken (#6309)
The Brandywine Building
1000 N. West Street, Suite 1400
Wilmington, DE 19801
Tel: (302) 485-3900
ehtownsend@mwe.com
dmenken@mwe.com

**OF COUNSEL:**

Gregory G. Ballard
Joel C. Haims
MCDERMOTT WILL & EMERY LLP
One Vanderbilt Avenue
New York, NY 10017-3852

*Attorneys for Defendant
BDO USA, LLP*

Dated: April 11, 2024

---

\* In July 2023, BDO USA, LLP changed its name to BDO USA, P.C. in connection with its conversion to an employee stock ownership plan.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT .......................................................................................... 1

ARGUMENT....................................................................................................................... 2

    I.    BDO MADE NO ACTIONABLE MISSTATEMENT OR OMISSION. ............. 2

        A.    BDO's ELM Audit Opinion is a Statement of Opinion............................ 2

        B.    BDO's Opinions Are Not Actionable Under *Omnicare*. ........................... 3

            1.    Plaintiffs Do Not Seriously Contest BDO's Sincere Belief........... 3

            2.    The Opinion Does Not Contain an Embedded Statement of Fact......................................................................................................... 4

            3.    BDO Did Not Omit Implied Untrue Facts. ................................... 4

    II.    PLAINTIFFS FAIL TO ALLEGE SCIENTER. .................................................... 5

    III.    PLAINTIFFS DO NOT PLEAD RELIANCE........................................................ 8

CONCLUSION.................................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AES Corp. v. Dow Chem. Co.*,
   325 F.3d 174 (3d Cir. 2003)...............................................................................................9

*In re AmTrust Fin. Servs., Inc. Sec. Litig.*,
   2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019)......................................................................2

*Central Bank of Denver NA v. First Interstate Bank of Denver, N.A.*,
   511 U.S. 164 (1994).............................................................................................................9

*City of Warren Police & Fire Ret'mt Sys. v. Prudential Fin., Inc.*,
   70 F.4th 668 (3d Cir. 2023) ...............................................................................................3

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
   2016 WL 6652731 (S.D.N.Y. Nov. 10, 2016).....................................................................3

*Hacker v. Electric Last Mile Solutions Inc.*,
   2023 WL 5266357 (D.N.J. Aug. 15, 2023) ..............................................................1, 5, 8

*In re Ikon Office Sols., Inc.*,
   277 F.3d 658 (3d Cir. 2002)............................................................................................5, 6

*Johnson v. CBD Energy Ltd.*,
   2016 WL 3654657 (S.D. Tex. July 6, 2016)................................................................2, 3, 4

*Johnston v. HBO Film Mgmt., Inc.*,
   265 F.3d 178 (3d Cir. 2001)...............................................................................................10

*Lord Abbett Affiliated Fund, Inc. v. Navient Corp.*,
   2020 WL 5026553 (D. Del. Aug. 25, 2020) ......................................................................10

*Lord Abbett Inv. Tr.-Lord Abbett Short Duration Income Fund v. Valeant Pharms.*
   *Int'l, Inc.*, 2018 WL 3637514 (D.N.J. July 31, 2018).......................................................7

*Malack v. BDO Seidman, LLP*,
   2009 WL 2393933 (E.D. Pa. Aug. 3, 2009) ......................................................................10

*Martin v. GNC Holdings, Inc.*,
   757 Fed. Appx. 151 (3d Cir. 2018)......................................................................................5

*Mehedi v. View, Inc.*,
   2023 WL 3592098 (N.D. Cal. May 22, 2023).....................................................................4

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   575 U.S. 175 (2015)............................................................................................ *passim*

*Pennsylvania Transp. Auth. v. Orrstown Fin. Servs., Inc.*,
   2015 WL 3833849 (M.D. Pa. June 22, 2015).................................................................6

*In re Petrobras Sec. Litig.*,
   2016 WL 1533553 (S.D.N.Y. Feb. 19, 2016)................................................................4

*Platsis v. E.F. Hutton & Co.*,
   642 F. Supp. 1277 (W.D. Mich. 1986) ......................................................................10

*Querub v. Moore Stephens Hong Kong*,
   649 F. App'x 55 (2d Cir. 2016) ................................................................................2

*SLF Holdings, LLC v. Uniti Fiber Holdings, Inc.*,
   499 F. Supp. 3d 49 (D. Del. 2020)............................................................................9

*Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*,
   243 F. Supp. 3d 1109 (E.D. Cal. 2017)......................................................................4

*Sun v. Han*,
   2015 WL 9304542 (D.N.J. Dec. 21, 2015)..................................................................2

*In re Suprema Specialties, Inc. Sec. Litig.*,
   438 F.3d 256 (3d Cir. 2006).....................................................................................8

*In re Valeant Pharm. Int'l, Inc. Sec. Litig.*,
   2023 WL 3993740 (D.N.J. June 14, 2023) ..................................................................8

*In re Westinghouse Sec. Litig.*,
   90 F.3d 696 (3d Cir. 1996).......................................................................................6

*Yang v. Tibet Pharmaceuticals, Inc.*
   2015 WL 730036 (D.N.J. Feb. 20, 2015) ....................................................................2

**PRELIMINARY STATEMENT**

This is a securities fraud case against the managers of ELM[1] based on allegations that they made material misrepresentations under GAAP in the financial statements they prepared for ELM, and against the managers of FIII for subsequently filing those financial statements with the SEC. Plaintiffs have also sued BDO based on its audit of ELM's financial statements. The financial statements at issue and BDO's audit opinion of those statements were issued nearly six months *after* Plaintiffs agreed to buy shares in the PIPE Offering. In February 2022, months after the close of the merger between FIII and ELM, ELMS announced, without consulting BDO, that ELM's pre-merger financial statements "should be restated" and that it was "evaluating the accounting and treatment of certain equity issuances to executive officers." BDO did not agree that ELM's financial statements incorrectly accounted for those equity issuances and vigorously disputes that its audit failed to comply with PCAOB standards.

Plaintiffs fail to state a claim against BDO for three reasons. *First,* under *Omnicare* and its progeny, the ELM Audit Opinion is a statement of opinion (not fact) that is not actionable under Section 10(b) and Rule 10b-5. *Second*, Plaintiffs have not alleged facts giving rise to a "strong" inference that BDO intended to defraud the PIPE Investors, as required under the PSLRA. Plaintiffs' reliance on a New Jersey District Court opinion (*Hacker v. Electric Last Mile Solutions Inc.*), which upheld scienter allegations against BDO based on alleged red flags, is misplaced— this Court should exercise its own judicial authority to decide the question presented here. *Third*, the allegations in the Amended Complaint, and the matters the Court may consider on a motion to dismiss, make clear that Plaintiffs did not rely on statements by BDO. They disclaimed reliance on any statements other than those made by FIII in the Subscription Agreement.

---

[1] Capitalized terms undefined herein shall have the meanings set forth in Memorandum of Law in Support of BDO USA, LLP's Motion to Dismiss Amended Class Action Complaint (Corrected), dated February 15, 2024 (D.I. 49) and Exhibit A thereto (D.I. 39).

## ARGUMENT

### I.    BDO MADE NO ACTIONABLE MISSTATEMENT OR OMISSION.

#### A.    BDO's ELM Audit Opinion is a Statement of Opinion.

As the PCAOB standards and case law make clear, the ELM Audit Opinion, which is titled "Opinion on the Financial Statements," is a statement of opinion.

Citing *Omanoff v. Patrizio & Zhao LLC*, 2015 WL 1472566, at *5 (D.N.J. Mar. 31, 2015), *Sun v. Han*, 2015 WL 9304542, at *9-10 (D.N.J. Dec. 21, 2015), and *Yang v. Tibet Pharmaceuticals, Inc*. 2015 WL 730036, at *3 n.7 (D.N.J. Feb. 20, 2015), Plaintiffs assert that BDO's statement that it conducted the ELM audit "in accordance with the standards of the PCAOB" (AB 24) is a statement of fact. But, subsequent decisions have persuasively refuted those holdings. *See, e.g.*, *Querub v. Moore Stephens Hong Kong*, 649 F. App'x 55, 58 (2d Cir. 2016) ("Audit reports, labeled 'opinions' and involving considerable subjective judgment, are statements of opinion subject to the *Omnicare* standard …."). Indeed, courts have found that audit opinions are expressions of opinion, including PCAOB-compliance statements contained therein, which are "couched in inherently subjective terms" and thus are "statement[s] of opinion." *In re AmTrust Fin. Servs., Inc. Sec. Litig.*, 2019 WL 4257110, at *31 (S.D.N.Y. Sept. 9, 2019), *rev'd in part on other grounds by New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 80 F.4th 158, 182 (2d Cir. 2023); *see also Johnson v. CBD Energy Ltd.*, 2016 WL 3654657, at *10 (S.D. Tex. July 6, 2016) (finding that, under "the logic employed in *Omnicare*," a routine audit opinion containing a "statement regarding … PCAOB standards" is an "opinion").

These holdings are consistent with the PCAOB standards which make clear that "the auditor's responsibility for the financial statements … is confined to the expression of his or her opinion on them." AS § 1001.03. And, "[b]ecause of the nature of audit evidence," an auditor is only required "to obtain reasonable, but not absolute, assurance that material misstatements are

detected." AS § 1001.02; *see also* AC ¶ 126 (citing AS § 1101.03 for the proposition that an auditor is to plan and perform an audit to obtain "reasonable assurances"). That is the case here. ELM's management prepared the financial statements and BDO expressed its opinion, based on its audit conducted in accordance with PCAOB standards, that ELM's financial statements, taken as a whole, appeared to be in accordance with GAAP. It was not BDO's role to, nor did it, provide *absolute* assurance that ELM's financial statements (prepared by ELM's management) complied in all respects with GAAP. Rather, the ELM Audit Opinion reflects BDO's opinion and, therefore, is an opinion statement under the framework established in *Omnicare*.

### B.    BDO's Opinions Are Not Actionable Under *Omnicare*.

Under *Omnicare*, "an opinion statement is misleading if it: (i) was not sincerely believed when made; (ii) contains an expressly embedded, untrue factual assertion; or (iii) reasonably implies untrue facts and omits appropriate qualifying language." *City of Warren Police & Fire Ret'mt Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 686 (3d Cir. 2023).

### 1.    Plaintiffs Do Not Seriously Contest BDO's Sincere Belief.

BDO sincerely believed the ELM Audit Opinion at the time of issuance, and Plaintiffs do not seriously dispute that fact. Instead, they argue that "BDO could not have reasonably believed it was true because BDO failed to conduct the PCAOB-compliant audit necessary to hold such an opinion in the first place." AB 26. Plaintiffs' arguments as to what BDO should have reasonably believed, rather than what it knew, falls far short of *Omnicare*'s requirement that a speaker's opinion "falsely describe [its] state of mind." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 184 (2015)

Because there are no allegations that BDO "did not hold the belief it professed," Plaintiffs cannot establish liability under first prong of *Omnicare*. *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 2016 WL 6652731, at *8 (S.D.N.Y. Nov. 10, 2016); *Johnson*, 2016 WL 3654657,

3

at *12 ("Plaintiffs do not allege that [the auditor] did not subjectively believe any of the opinions it provided in its report. … Accordingly, in light of *Omnicare*, Plaintiffs have failed to state a [] claim against [the auditor].").

### 2.    The Opinion Does Not Contain an Embedded Statement of Fact.

Next, BDO's statement in the ELM Audit Opinion that it "conducted a PCAOB-compliant audit" (AB 25) is not an embedded statement of fact. *Johnson*, 2016 WL 3654657, at *12 (holding that the statement "'[w]e conducted our audit of these statements in accordance with the standards of the [PCAOB]' … does not contain embedded statements of fact that are untrue"). Nor is BDO's statement that ELM's financial statements were "GAAP-compliant" (AB 26). *See Mehedi v. View, Inc.*, 2023 WL 3592098, at *10 (N.D. Cal. May 22, 2023) ("[T]he Court agrees with other courts that have held that similar statements about PCAOB, GAAS, and GAAP do not include any embedded statements of fact.").

Plaintiffs' cases are readily distinguishable. For example, *In re Petrobras Sec. Litig.* relies on a theory rejected by other courts—*i.e.*, that "[t]he facts of the [company's] financial statements were embedded in [the auditor's] opinions." 2016 WL 1533553, at *3 (S.D.N.Y. Feb. 19, 2016). The notion that an auditor could be liable for misstated financial statements prepared by the company, without more, has been roundly rejected by other courts. Even the other case cited by Plaintiffs in the same paragraph, *Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*, "disagree[d] that financial statements are embedded in audit opinions under *Omnicare*." 243 F. Supp. 3d 1109, 1119 (E.D. Cal. 2017).

### 3.    BDO Did Not Omit Implied Untrue Facts.

Finally, Plaintiffs do not identify any implied untrue facts, or the absence of qualifying language, in the ELM Audit Opinion. Plaintiffs' allegation that the ELM Audit Opinion "'omit[s]

4

context,' including that BDO failed to perform numerous required independence and audit risk assessments" (AB 26-27), is insufficient under the third prong of *Omnicare*.

Plaintiffs' argument misconstrues the nature of BDO's role as an auditor. In fact, "in issuing an opinion, the auditor certifies only that it exercised appropriate, not flawless, levels of professional care and judgment." *In re Ikon Office Sols., Inc.*, 277 F.3d 658, 673 (3d Cir. 2002). Plaintiffs' argument—that BDO omitted that it "failed to perform [] independence and risk assessments" required under PCAOB standards (AB 26-27)—is merely a rehash of its argument that BDO failed to comply with PCAOB standards. To be sure, PCAOB standards contain requirements regarding independence and risk assessments (which BDO followed), but Plaintiffs cannot repackage an otherwise inactionable opinion statement into an actionable omission. Allowing Plaintiffs to circumvent *Omnicare* in this manner would render it meaningless.

## II.    PLAINTIFFS FAIL TO ALLEGE SCIENTER.

With regard to the state of mind required for securities fraud, Plaintiffs "must establish a more exacting threshold of scienter—'a mental state embracing intent to deceive, manipulate, or defraud.'" *In re Ikon,* 277 F.3d at 667; *Martin v. GNC Holdings, Inc.*, 757 Fed. Appx. 151, 153 (3d Cir. 2018) ("Scienter is a mental state embracing intent to deceive, manipulate, or defraud."). Plaintiffs primarily rely on the opinion in *Hacker v. Electric Last Mile Solutions Inc.*, 2023 WL 5266357 (D.N.J. Aug. 15, 2023)[2] for the proposition that alleged "red flags" demonstrate that BDO acted with the required state of mind. AB 37-39. The *Hacker* court did not address the scienter standard head on and its analysis of the purported red flags, BDO respectfully submits, was incorrect.[3]

---

[2] BDO's motion to dismiss in *Hacker* has not been fully resolved and is pending the court's determination on whether the ELM Audit Opinion involved an actionable misstatement.

[3] Among other fundamental errors, the *Hacker* court treated "GAAP" and "GAAS" as "synonyms." *See Hacker*, 2023 WL 5266357, at *4 n.11; AB 37 n.19. Compliance with "GAAP" is the responsibility of the company (ELM) in preparing its financial statements, while compliance

Allegations that there were GAAP violations in the financial statements prepared by the audit client (ELM) or PCAOB violations in the audit conducted by the independent audit firm (BDO) are not sufficient to meet the exacting standard for scienter. *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 712 (3d Cir. 1996) (explaining that a plaintiff must allege "how [the auditor] knowingly or recklessly violated" GAAS standards and how the auditor "knew or was reckless in not knowing that [the company's] financial statements failed to comply with GAAP"). The existence of "red flags" are relevant only where the purported red flags indicate a lack of "good faith belief or reasonable basis" for the audit opinion and where the red flags were known to the auditor. *See In re Ikon*, 277 F.3d at 667-68 (finding that allegations that an auditor "failed to investigate sufficiently evidence of fraud by [the company] or take into account other conspicuous risk factors or 'red flags'" did not "supply a basis from which to draw a reasonable inference that [the auditor] recklessly or knowingly issued a materially false and misleading audit opinion"); ! *Pennsylvania Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 2015 WL 3833849, at *49 (M.D. Pa. June 22, 2015) (dismissing claim where it was alleged the auditor "intentionally or recklessly disregarded 'glaring irregularities, [held] out to the public and the SEC that it had conducted the audits in accordance with PCAOB, and certif[ied] the Company's financial statements as prepared in accordance with GAAP without material weaknesses'").

The alleged red flags here are inadequate to show that BDO acted with the required state of mind. Plaintiffs point to the "share price" and the discrepancy between the $10 per share price in the Equity Transactions and the higher share price implied by the potential de-SPAC transaction that closed months later. AB 37-38. But that misses the point. ELM's management determined how to account for and treat the pre-merger Equity Transactions according to GAAP, and GAAP

---

with "GAAS" is the responsibility of the auditor (BDO) in expressing its opinion on whether the financial statements, taken as a whole, and subject to audit standards that examine the financial statements on a test- and risk-basis, appear to be in compliance with GAAP.

acknowledges there are significant contemporaneous and subjective judgments in determining how to value equity issuances such as the Equity Transactions. BDO expressed its opinion on whether the financial statements, taken as a whole, and subject to audit standards that examine the financial statements on a test- and risk-basis, appear to be in compliance with GAAP. The mere fact that there was a price discrepancy between the price of the shares issued in the Equity Transactions and their value at the close of the Merger months later is not a red flag. Nor is Plaintiffs' allegation that BDO was aware of the discrepancy because it "structured" the Equity Transactions. AB 38. Plaintiffs' Complaint contains no particularized facts that BDO actually "structured" the Equity Transactions—nor could it because BDO did not structure the Equity Transactions. It was ELM's management who determined how to account for and treat the Equity Transactions, not BDO. Moreover, *none* of FIII's board, its own independent auditor, or any of its other financial advisors involved in the Merger contemporaneously identified any issues with these same financial statements.

The fact that the Equity Transactions allegedly occurred without a fair market valuation opinion is likewise not a red flag. AB 38-39. It was ELM's responsibility to determine how to account for and treat the Equity Transactions. There is no rational basis for the contention that the supposed decision by ELM's management not to obtain an external fair value opinion was, in and of itself, a red flag to BDO that ELM's management did not prepare the financial statements in accordance with GAAP.

In any event, hindsight allegations as to what BDO should have done, based solely on ELMS' decision (under new management) to reevaluate ELM's accounting treatment of the Equity Transactions a year later (a decision BDO did not agree with), are not enough to allege scienter. *Lord Abbett Inv. Tr.-Lord Abbett Short Duration Income Fund v. Valeant Pharms. Int'l, Inc.*, 2018 WL 3637514, at *3 (D.N.J. July 31, 2018) (dismissing claim against auditor where "Plaintiffs'

7

own argument relies on what a 'reasonable accountant' should have concluded, clearly suggesting a negligence standard—not 'conscious misbehavior or recklessness'"). As the Third Circuit has held:

> the mere second-guessing of calculations will not suffice; appellants must show that [the auditor]'s judgment at the moment exercised was sufficiently egregious such that a reasonable accountant reviewing the facts and figures should have concluded that [the company]'s financial statements were misstated and that as a result the public was likely to be misled.

*In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 279 (3d Cir. 2006) (quoting *In re Ikon,* 277 F.3d at 673). Plaintiffs' allegations here fall short of alleging that BDO "knowingly or recklessly violated [auditing] standards." *Id.* Nor are Plaintiffs' allegations as detailed as those supporting the auditor claims in the other cases on which they rely. *See id.* at 279-281 (identifying "thirty [] red flags"); *see also In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, 2023 WL 3993740, at *4 (D.N.J. June 14, 2023) (stating "there were numerous documents that [the auditor] reviewed during the audit that provided accurate information reflecting some of the red flags").

### III.    PLAINTIFFS DO NOT PLEAD RELIANCE.

Finally, Plaintiffs have not adequately alleged that the Plaintiffs relied on BDO's ELM Audit Opinion in deciding to purchase stock in the PIPE Offering because: (i) the ELM Audit Opinion was issued and filed with the SEC nearly six months *after Plaintiffs committed* to making their investments; and (ii) Plaintiffs *expressly disclaimed reliance* on statements by anyone other than FIII. Plaintiffs' allegations and the Subscription Agreement (which the Court may consider on a motion to dismiss), considered together, confirm that Plaintiffs did not actually rely on the ELM Audit Opinion in making their investment decision.

There can be no doubt that the Plaintiffs here, unlike the plaintiffs in *Hacker*, agreed to purchase their stock *prior* to the ELM Audit Opinion. And Plaintiffs concede there is nothing BDO could have done to void Plaintiffs' obligation to close—Plaintiffs only allege that "BDO's

misrepresentations *obscured*" FIII's failure to satisfy closing conditions.[4] AB 45 (emphasis added). But, at best, these are aiding-and-abetting allegations that cannot support a Rule 10b-5 claim. *See Central Bank of Denver NA v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994) (explaining that civil liability under Rule 10b-5 does not extend to aiding-and-abetting allegations). Plaintiffs also agreed in the Subscription Agreements they signed months before the issuance of the ELM Audit Opinion that they were "not relying on, any representations, warranties, covenants or agreements … other than those representations, warranties, covenants and agreements *of the Company* set forth in this Subscription Agreement." BDO OB, Ex. A § 4(f) (emphasis added); *see also id.* § 4(g) ("In making its decision to purchase the Subscribed Shares, Subscriber has relied solely upon independent investigation made by Subscriber."). The only reference to Plaintiffs' reliance on "financial statements" in the Subscription Agreement refers to the "financial statements *of the Company* included in the SEC Reports." *Id.* § 3(f) (emphasis added).

BDO did not make any representations in the Subscription Agreement and did not audit FIII's financial statements. Plaintiffs were sophisticated investors[5] that committed to the PIPE Offering months before the ELM Audit Opinion. Considering these facts, Plaintiffs "failed to plausibly allege that, had [they] known the omitted facts, [they] would not have agreed to accept and enter into the transaction." *See SLF Holdings, LLC v. Uniti Fiber Holdings, Inc.*, 499 F. Supp. 3d 49, 69-70 (D. Del. 2020) *aff'd*, 2022 WL 3442353 (3d Cir. Aug. 17, 2022); *see also AES Corp. v. Dow Chem. Co.*, 325 F.3d 174, 180 (3d Cir. 2003) (stating that a non-reliance provision, "alone or in conjunction with other evidence of non-reliance, may establish an absence of reliance").

---

[4] Plaintiffs could only avoid closing the PIPE Offering if *FIII* made a false representation, failed to satisfy its covenants, or amended the merger agreement. *See* BDO OB, Ex. A § 2(e).
[5] Each PIPE Investor was "a 'qualified institutional buyer' (as defined in Rule 144A under the Securities Act) or an 'accredited investor' (within the meaning of Rule 501(a) under the Securities Act)." BDO OB, Ex. A § 4(d).

Plaintiffs' argument that they need not plead actual reliance because they are entitled to presumed reliance under *Basic* (public market reliance) and *Affiliated Ute* (omission reliance) is without merit. Neither presumption applies. *First,* Plaintiffs acknowledged "that the Subscribed Shares [were] being offered in a transaction not involving any public offering … and that the Subscribed Shares have not been registered under the Securities Act [.]" BDO OB, Ex. A § 4(e). FIII, not the market, decided the $10 per share purchase price. Such private-placement transactions are "not the type of market encompassed by the fraud on the market theory." *Platsis v. E.F. Hutton & Co.,* 642 F. Supp. 1277, 1301 (W.D. Mich. 1986); *see also Malack v. BDO Seidman, LLP*, 2009 WL 2393933, at *6 (E.D. Pa. Aug. 3, 2009) ("The 'fraud on the market' theory cannot apply to an initial public offering or note that can be sold only by the promoters at the price the promoters set …."), *aff'd,* 617 F.3d 743 (3d Cir. 2010). *Second*, Plaintiffs allege that BDO made an affirmative statement—the audit opinion. At best, Plaintiffs' alleged omissions only explain why BDO's affirmative statement was purportedly false, but they themselves do not constitute independent omissions for purposes of invoking *Affiliated Ute*. *See Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 193 (3d Cir. 2001); *Lord Abbett Affiliated Fund, Inc. v. Navient Corp.*, 2020 WL 5026553, at *5 (D. Del. Aug. 25, 2020) ("[A] 'claim should not be transformed into an omission simply because the defendants failed to disclose that the allegedly misleading fact was untrue.'").

## CONCLUSION

BDO respectfully requests that the Court dismiss Plaintiffs' claim against BDO with prejudice.

**MCDERMOTT WILL & EMERY LLP**

/s/ *Ethan H. Townsend*
Ethan H. Townsend (#5813)
Daniel T. Menken (#6309)
The Brandywine Building
1000 N. West Street, Suite 1400
Wilmington, DE 19801
Tel: (302) 485-3900
ehtownsend@mwe.com
dmenken@mwe.com

*Attorneys for Defendant*
*BDO USA, LLP*

OF COUNSEL:

Gregory G. Ballard
Joel C. Haims
MCDERMOTT WILL & EMERY LLP
One Vanderbilt Avenue
New York, NY 10017-3852

Dated: April 11, 2024

11