# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SHMUEL LEVY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>JASON LUO, JAMES TAYLOR, ALBERT LI, MARSHALL KIEV, DAVID BORIS, and BDO USA, LLP,<br><br>Defendants. | Civil Action No. 1:23-cv-00653-GBW<br><br><u>CLASS ACTION</u> |

**DEFENDANTS DAVID BORIS AND MARSHALL KIEV'S REPLY
BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS
<u>THE AMENDED CLASS ACTION COMPLAINT</u>**

SCHINDLER COHEN & HOCHMAN LLP
Jonathan L. Hochman
Karen M. Steel
Jenny C. Gu
100 Wall Street, 15th Floor
New York, NY 10005
(212) 277-6300
jhochman@schlaw.com
ksteel@schlaw.com
jgu@schlaw.com

YOUNG CONAWAY STARGATT
 & TAYLOR, LLP
Tammy L. Mercer (No. 4957)
Lakshmi A. Muthu (No. 5786)
M. Paige Valeski (No. 6336)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
tmercer@ycst.com
lmuthu@ycst.com
pvaleski@ycst.com

*Attorneys for Defendants David Boris and Marshall Kiev*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................................... 1

ARGUMENT ......................................................................................................................................... 2

    I.   The Court Should Dismiss the Section 10(b) Claims Against Boris and Kiev .................... 2

        A.   Plaintiffs Lack Standing to Bring Claims Under Section 10(b) ...................................... 2

        B.   Plaintiffs Fail to Allege Scienter ................................................................................. 4

            1.   Plaintiffs Distort the Record to Suggest That Boris and Kiev Had Knowledge of Relevant Facts ................................................................................ 4

            2.   Plaintiffs' Motive Allegations Do Not Establish Scienter ........................................... 7

            3.   The Alleged Facts Do Not Raise a Strong Inference of Scienter ................................ 8

        C.   Plaintiffs Do Not Allege That Boris or Kiev Were the "Makers" of the Alleged Misstatements ......................................................................................................... 9

    II.  Plaintiffs' Section 20(a) Claim Against Boris and Kiev Should Be Dismissed ............... 10

CONCLUSION ................................................................................................................................... 10

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Advance Auto Parts, Inc., Sec. Litig.*,
  2020 WL 599543 (D. Del. Feb. 7, 2020) ..................................................................................8

*Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*,
  532 F. Supp. 3d 189 (E.D. Pa. 2021) .....................................................................................10

*Belmont v. MB Inv. Partners, Inc.*,
  708 F.3d 470 (3d Cir. 2013) ...................................................................................................10

*Blue Chip Stamps v. Manor Drug Stores*,
  421 U.S. 723 (1975) ............................................................................................................2, 3

*In re CarLotz, Inc. Securities Litigation*,
  667 F. Supp. 3d 71 (S.D.N.Y. 2023) ........................................................................................4

*In re CarLotz, Inc. Securities Litigation*,
  2024 WL 1348749 (S.D.N.Y. Mar. 29, 2024) ..........................................................................4

*In re CCIV/Lucid Motors Sec. Litig.*,
  2023 WL 325251 (N. D. Cal. Jan. 11, 2023) ............................................................................3

*City of Roseville Emps. Ret. Sys. v. Horizon Lines, Inc.*,
  686 F. Supp. 2d 404 (D. Del. 2009) ..................................................................................5, 10

*In re Danimer Sci., Inc. Sec. Litig.*,
  2023 WL 6385642 (E.D.N.Y. Sept. 30, 2023) .........................................................................7

*Deutschman v. Beneficial Corp.*
  841 F.2d 502 (3d Cir. 1988) .....................................................................................................3

*Hacker v. Electric Last Mile Solutions*,
  2024 WL 1231257 (D.N.J. Mar. 21, 2024) ..........................................................................2, 7

*Hoey v. Insmed Inc.*,
  2018 WL 902266 (D.N.J. Feb. 15, 2018) .................................................................................9

*Instit. Investors Group v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009) .....................................................................................................9

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011) ............................................................................................................5, 10

*Kusnier v. Virgin Galactic Holdings, Inc.*,
   2023 WL 8750398 (E.D.N.Y. Dec. 19, 2023) ...................................................................4

*Menora Mivtachim Insurance Ltd. v. Frutarom Industries Ltd.*,
   54 F.4th 82, 89 (2d Cir. 2022) ..............................................................................3, 5, 10

*In re MF Glob. Holdings Ltd. Sec. Litig.*,
   982 F. Supp. 2d 277 (S.D.N.Y. 2013) ...............................................................................8–9

*In re New Oriental Educ. & Tech. Grp. Sec. Litig.*,
   988 F. Supp. 2d 406 (S.D.N.Y. 2013) ...............................................................................8

*Ontario Pub. Serv. Emp. Union Pension Trust Fund v. Nortel Networks Corp.*,
   369 F.3d 27 (2d Cir. 2004)..................................................................................................3

*Palladin Partners v. Gaon*,
   2006 WL 2460650 (D.N.J. Aug. 22, 2006) .......................................................................8

*Percoco v. Deckers Outdoor Corp.*,
   2013 WL 3584370 (D. Del. July 8, 2013) .........................................................................9

*Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prods. N.V.*,
   2005 WL 1365465 (D.N.J. June 7, 2005) .........................................................................9

*Roofer's Pension Fund v. Papa*,
   2018 WL 3601229 (D.N.J. July 27, 2018).................................................................2, 4, 8

*Semerenko v. Cendant Corp.*,
   223 F.3d 165 (3d Cir. 2000)..........................................................................................2, 3

*Starr Invests. Cayman II, Inc. v. China MediaExpress Holdings, Inc.*
   2014 WL 4180331 (D. Del. Aug. 21, 2014) ..............................................................5–6, 7

*Sun v. Han*,
   2015 WL 9304542 (D.N.J. Dec. 21, 2015).......................................................................6

*Vanderhoef v. China Auto Logistics Inc.*,
   2021 WL 3260849 (D.N.J. July 30, 2021).......................................................................6

*In re Winstar Commc'ns*,
   2006 WL 473885 (S.D.N.Y. Feb. 27, 2006).....................................................................8

**Other Authorities**

17 C.F.R. § 240.10b-5..........................................................................................................3

iii

## PRELIMINARY STATEMENT

In their 50-page opposition brief, Plaintiffs barely discuss Boris[1] and Kiev at all, making clear that their claims against these Defendants were mere afterthoughts. To the limited extent Plaintiffs do address Boris and Kiev, they fail to cure the fatal flaw in their FAC: that none of the alleged facts even suggest that Boris and Kiev, as members of *FIII's* management team, knew or had reason to know about the alleged faulty accounting for the Equity Transactions in *ELM's* audited financial statements. Perhaps recognizing this deficiency, Plaintiffs resort to distorting the record, asserting that Boris and Kiev were "specifically alerted to the same financial reporting issue [as the Equity Transactions] by the SEC's comment letter." (Pls.' Br. (D.I. 51) at 30.) However, the letter[2] on its face concerned a completely separate issue, unrelated to the Equity Transactions—the anticipated issuance of ELMS stock at the merger closing in connection with ELMS's purchase of a manufacturing plant. Plaintiffs' gambit, far from establishing scienter, merely underscores their failure to state a claim against Boris and Kiev.

Beyond citing the irrelevant Comment Letter, Plaintiffs regurgitate their generic scienter allegations that: (i) Boris and Kiev should have discovered through due diligence or due to their positions as executives of FIII the alleged improper accouting treatment by ELM for ELM's stock issuances, or (ii) that Boris and Kiev were otherwise motivated to conceal ELM's accounting error by a general desire to profit from the Merger. As explained in Defendants' opening brief, these conclusory allegations are insufficient to raise a strong inference of scienter as a matter of law. Moreover, Plaintiffs fail to effectively address the myriad factors here that *negate* an inference of scienter, including the purchase by FIII's management team of $5 million

---

[1] Undefined capitalized terms have the same definition as in Boris and Kiev's opening brief ("B&K Br.," D.I. 42).

[2] The SEC comment letter ("Comment Letter") is attached as Exhibit 1 to the April 11, 2024 Declaration of Jenny C. Gu ("Gu Reply Decl.").

worth of FIII shares on the open market and BDO's clean audit opinion. Indeed, Plaintiffs rely on authority that *supports* Boris and Kiev's argument that "**the approval of an independent auditor . . . is strongly probative of a lack of scienter**." *Roofer's Pension Fund v. Papa*, 2018 WL 3601229, at *20 (D.N.J. July 27, 2018) (emphasis added). Additionally, in a recent opinion, *Hacker v. Electric Last Mile Solutions,* 2024 WL 1231257 (D.N.J. Mar. 21, 2024), the District Court of New Jersey opined that BDO's clean audit of ELMS' financials, along with Boris and Kiev's lack of involvement in preparing those financials, would render scienter "a high and hard bar to clear" for investors claiming fraud. (Gu Reply Decl., Ex. 2 at 26.) Plaintiffs here have failed to clear that bar, even at the pleading stage.

Finally, Plaintiffs' claims against Boris and Kiev also fail because: (i) Plaintiffs lack standing to assert a claim; (ii) Boris and Kiev were not makers of the alleged misstatements; and (iii) Plaintiffs have not adequately pleaded control person liability under Section 20(a). For all of these reasons, all claims against Boris and Kiev should be dismissed.

## ARGUMENT

### I. The Court Should Dismiss the Section 10(b) Claims Against Boris and Kiev

#### A. Plaintiffs Lack Standing to Bring Claims Under Section 10(b)

The Court should reject Plaintiffs' arguments that they have standing to bring this lawsuit because Plaintiffs did not purchase "the stock in question"—*i.e.*, that of pre-merger ELM—as required under *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975). Plaintiffs wrongly argue that Boris and Kiev cite an "out-of-circuit standing rule that is directly contrary to Third Circuit and Supreme Court case law." (Pls.' Br. at 41.) But none of the Third Circuit cases cited by Plaintiffs actually support a finding of standing in this context. Plaintiffs lean heavily on *Semerenko v. Cendant Corp.*, 223 F.3d 165 (3d Cir. 2000) and the cases citing thereto (*see* Pls.' Br. at 40), but, as authority cited by Plaintiffs expressly states, *Semerenko* did not address

2

standing. *See In re CCIV/Lucid Motors Sec. Litig.*, 2023 WL 325251, at *8 n.13 (N. D. Cal. Jan. 11, 2023) (in *Semerenko* "the question of standing was not raised or addressed"); *Ontario Pub. Serv. Emp. Union Pension Trust Fund v. Nortel Networks Corp.*, 369 F.3d 27, 33 (2d Cir. 2004) (same).[3] Those cases further acknowledge that, "**the Second Circuit** [is] **the only circuit court to address the standing issue at bar**." *CCIV/Lucid*, 2023 WL 325251, at *7 (emphasis added). Further, while *Deutschman v. Beneficial Corp.* involved the issue of standing, the issue there was entirely different: whether "call options" were considered a security under Section 10(b). 841 F.2d 502, 504 (3d Cir. 1988).

The Court should also reject Plaintiffs' arguments that ELM's alleged accounting errors were also about FIII because they concerned a merger between FIII and ELM and were included in the Proxy statement. (Pls.' Br. at 43.) This exact reasoning was rejected by the only Circuit Court to address this issue. In *Menora Mivtachim Insurance Ltd. v. Frutarom Industries Ltd.*, the Second Circuit held, "[t]he fact that this case involve[s] a merger . . . does not change the analysis." 54 F.4th 82, 89 (2d Cir. 2022). Further, *Frutarom* rejected as "meritless" similar arguments made by the plaintiffs there regarding "joint press releases," "investor presentations," and "SEC filings" by the acquiring entity. *Id.* at 86–87. Additionally, the ELM financials were not ***about*** FIII merely because they were included in the Proxy statement filed by FIII. Instead, the financials were made by ELM and were clearly about ELM—whose shares Plaintiffs did not purchase. Plaintiffs turn a blind eye to this well-established precedent in favor of a smattering of cases from district courts in California—which are also not controlling here. Plaintiffs fail to

---

[3] Plaintiffs wrongly conflate two entirely separate prongs of a claim under Rule 10b-5: (i) the standing requirement that a plaintiff must be a purchaser or seller of the security in question (*i.e.*, the "purchaser-seller rule" set forth in *Blue Chip Stamps*); and (ii) the requirement that the alleged misrepresentation or omission was made "in connection with" the purchase or sale of the security (*i.e.*, the issue addressed in *Semerenko*). (Pls.' Br. at 40.)

3

even acknowledge the decision in *In re CarLotz, Inc. Securities Litigation*, 667 F. Supp. 3d 71 (S.D.N.Y. 2023), even though it is squarely on point and was reaffirmed in a recent decision. *See In re CarLotz, Inc. Sec. Litig.*, 2024 WL 1348749, at *4 (S.D.N.Y. Mar. 29, 2024).

Moreover, Plaintiffs' argument that "statements about the target were [] necessarily statements about FIII's securities," because FIII was "an empty merger vehicle" (Pls.' Br. at 43), was squarely rejected by yet another court applying the *Frutarom* standard in the de-SPAC context. In *Kusnier v. Virgin Galactic Holdings, Inc.*, plaintiffs argued that "because de-SPAC mergers function to take the acquisition target public, when SPAC acquisition target speaks publicly 'about itself,' . . . [it] should be understood to be speaking 'about' the securities of the SPAC and post-merger, public entity." 2023 WL 8750398, at *9 (E.D.N.Y. Dec. 19, 2023). The *Kusnier* court rejected these arguments because "they rely on the kind of functional analysis that *Frutarom* specifically rejected" to prevent "the 'endless case-by-case erosion' of the purchaser-seller limitation on standing." *Id.* As in *Frutarom*, *CarLotz*, and *Kusnier*, the FAC should be dismissed because Plaintiffs lack standing.

### B. Plaintiffs Fail to Allege Scienter

#### 1. Plaintiffs Distort the Record to Suggest That Boris and Kiev Had Knowledge of Relevant Facts

As Plaintiffs admit, they "***must sufficiently plead defendants' knowledge of facts or access to information*** contradicting their public statements." (Pls.' Br. at 27 (quoting *Papa*, 2018 WL 3601229, at *18) (emphasis added).) Plaintiffs' failure to do so is fatal to their claim against Boris and Kiev. Indeed, apparently aware that their scienter allegations against Boris and Kiev are woefully deficient, Plaintiffs attempt to distort the record to avoid dismissal. Plaintiffs rely entirely on an assertion that they did not even allege in the FAC against Boris and Kiev: that they were "specifically alerted to the same financial reporting issue [as the Equity Transactions]

4

by the SEC's comment letter." (*Id*. at 30.) But the Comment Letter had nothing to do with the Equity Transactions. It concerned ELMS's anticipated issuance of stock to a separate company, SERES, in connection with ELMS's purchase from SERES of the manufacturing plant. The full sentence from which Plaintiffs cherry-picked their quote makes clear that the letter was unrelated to ELM's accounting for the stock purchases *by Jason Luo and James Taylor*: "In light of this disclosure [of share issuance to SERES], please tell us how you determined that this item should be included in the purchase consideration for the EVAP Operations, rather than accounted for as compensation expense for **services rendered by SERES**." (Ex. 1 at 2 (emphasis added).) That Plaintiffs have no better support for scienter than this plainly irrelevant document establishes that they simply have no claim against Boris and Kiev.

Plaintiffs' remaining arguments in support of scienter only further underscore the deficiencies of their allegations. First, that Boris and Kiev "conducted due diligence concerning ELM" (Pls.' Br. at 29) is insufficient to establish scienter where Plaintiffs fail to adequately allege that defendants "had access to information [in due diligence] which would have allowed them to discover" ELM's alleged accounting issue. *City of Roseville Emps. Ret. Sys. v. Horizon Lines, Inc.,* 686 F. Supp. 2d 404, 423 (D. Del. 2009); (*see also* B&K Br. at 13).[4] Here, the *only* information that Plaintiffs contend should have alerted Boris and Kiev to the alleged fraud was the Comment Letter, which, as discussed above, had nothing to do with the Equity Transactions.[5]

Notably, Plaintiffs do not even acknowledge that, in comparable circumstances of a reverse merger, the Delaware District Court has dismissed similar allegations of fraud. In *Starr*

---

[4] Plaintiffs make no effort to address these cases cited in Boris and Kiev's opening brief.
[5] Further, even if the Comment Letter were at all relevant to the Equity Transactions (it is not), Plaintiffs fail to allege how a letter addressed to Boris would have alerted Kiev to the alleged fraud.

5

*Invests. Cayman II, Inc. v. China MediaExpress Holdings, Inc.*, the court held that allegations that an acquiring company's directors "would have uncovered the deception" if they "had performed proper due diligence [into the merger target]" are insufficient to establish scienter. 2014 WL 4180331, at *3 (D. Del. Aug. 21, 2014). Plaintiffs' allegations here are near-identical to the failed allegation in *Starr* and in numerous other SPAC-related cases that have held the same (which Plaintiffs have ignored). (*See* B&K Br. at 13–14.)

Second, Plaintiffs fail to establish scienter against Boris and Kiev by citing to purported "circumstantial evidence of conscious misbehavior" (Pls.' Br. at 30), because the alleged evidence—including BDO's resignation letter, Luo and Taylor's alleged conduct regarding the Special Committee investigation and eventual resignation, and an SEC investigation into the Equity Transactions—pertain to events that occurred long *after* the merger and relate primarily to other defendants in this case.[6] Whether or not such events could constitute circumstantial evidence against Luo, Taylor, and BDO, they in no way establish scienter against Boris and Kiev.[7] Boris and Kiev were not part of pre-Merger ELM, not involved in preparing or auditing ELM's financials, and were apparently not the targets of any related SEC investigation. Indeed,

---

[6] Similarly unavailing is Plaintiffs' argument that the following alleged facts somehow demonstrate scienter: the enterprise value of $1.3 billion set forth in the letter of intent, the issuance of 99,000 shares of ELM stock just prior to the Merger, the Merger Agreement's announcement that valued ELMS stock at $10/share and implied a pro forma equity value of approximately $1.4 billion, and that, after the Merger, each share of ELM stock would be exchanged for 820 ELMS shares worth over $8,000. (Pls.' Br. at 28–29.) None of these alleged facts demonstrate that Boris or Kiev knew how ELM accounted for the Equity Transactions.

[7] The cases cited by Plaintiffs do not suggest otherwise, as they do not involve the scienter of an acquiring company's executives concerning the target company's alleged GAAP violations. *See, e.g., Vanderhoef v. China Auto Logistics Inc.*, 2021 WL 3260849, at *1 (D.N.J. July 30, 2021) (Plaintiffs alleged scienter against **company executives that controlled related parties engaged in problematic transactions** and the executives subsequently obstructed an internal investigation into those transactions); *see also Sun v. Han*, 2015 WL 9304542, at *6 (D.N.J. Dec. 21, 2015) (Plaintiffs alleged scienter against **auditing firm** based on alleged GAAP violations and auditor resignation).

the District Court of New Jersey recently opined in *Hacker* that "scienter would be a high and hard bar to clear" for investors claiming fraud against Boris and Kiev.[8] (Ex. 2 at 26.)

Plaintiffs are thus left with their conclusory assertion that Boris and Kiev "were necessarily aware of" ELM's alleged accounting improprieties because they were part of FIII's management team (Pls.' Br. at 28)—which fails to support an inference of scienter because it constitutes impermissible group pleading. (*See* B&K Br. at 10–12.)

### 2. Plaintiffs' Motive Allegations Do Not Establish Scienter

Plaintiffs also fail to plead "personal financial motives" against Boris and Kiev sufficient to raise an inference of scienter. (Pls.' Br. at 33.) As Plaintiffs admit, motive is merely considered as "a factor" in analyzing scienter, "as part of the holistic information available to the Court." (*Id*. at 34). *See also Starr*, 2014 WL 4180331, at *3 (acquiring company's directors incentive to "cash[] out their stock" from a successful merger insufficient to establish scienter).

Moreover, courts have uniformly held that a SPAC executive's potential "to reap significant personal financial gain" (*id*. at 33) from completing a merger (Pls.' Br. at 33) does not constitute sufficient motive under Section 10(b), because this incentive is "faced by SPACs generally." *In re Danimer Sci., Inc. Sec. Litig.*, 2023 WL 6385642, at *11 (E.D.N.Y. Sept. 30, 2023). (*See also* B&K Br. at 15.) Plaintiffs again make no attempt to address the many cases cited by Defendants rejecting the same motive argument Plaintiffs make here.[9]

---

[8] In its opinion concerning the approval of a proposed class settlement, the District Court of New Jersey noted that plaintiffs would have a difficult time establishing scienter against Boris and Kiev (and the other individual Defendants here), because, *inter alia*, they: "are not accountants," "were not involved in preparing the erroneous 2020 Financial Statements," and "relied on the 'clean' opinion issued [by BDO.]" (Ex. 2 at 26.)

[9] Plaintiffs tepidly attempt to distinguish *Starr* on the grounds that "in *Starr* there were only allegations of motive, whereas in this case the motive allegations support the extensive pleading of facts showing conscious misbehavior or recklessness." (Pls.' Br. at 34, n.16.) But as set forth above, Plaintiffs also fail to allege conscious misbehavior or recklessness.

7

### 3. The Alleged Facts Do Not Raise a Strong Inference of Scienter

To the extent Plaintiffs even address the numerous additional facts that weigh in favor of Boris and Kiev and against a finding of scienter, Plaintiffs' arguments should be rejected. In particular, Plaintiffs fail to refute Boris and Kiev's well-supported argument that BDO's clean audit negates an inference of scienter, and the authority Plaintiffs cite on this point *actually supports Boris and Kiev*. (Pls. Br. at 35–36.) In *Papa*, the court *granted dismissal* precisely because the alleged accounting defects had "the approval of an independent auditor, [which] is strongly probative of a lack of scienter." 2018 WL 3601229, at *20. Plaintiffs' remaining case citations merely support the uncontroversial position that, on its own, a clean audit opinion cannot negate overwhelming allegations of scienter, particularly against executives of the company that *issued* the financials. (Pls.' Br. at 35–36.)[10] Likewise, in response to Boris and Kiev's argument that FIII's management team purchased 500,000 FIII shares for approximately $5 million in the open market at then-prevailing market prices, Plaintiffs cite to cases holding that share purchases do not "categorically" negate scienter, especially when purchased automatically as part of the executive's compensation package. (*Id.*)[11] Further, those cases are

---

[10] *E.g.*, *Palladin Partners v. Gaon*, 2006 WL 2460650, at *10 (D.N.J. Aug. 22, 2006) (clean audit insufficient to negate scienter where "[t]he Complaint is replete with allegations detailing Executive Defendants' actual knowledge of the fraud."). Reliance on a clean audit opinion also is not categorically a question of fact, as Plaintiffs suggest. Rather, it is only a question of fact where defendants were executives of the company engaged in alleged wrongdoing and there are other compelling facts in support of scienter. *E.g., In re Winstar Commc'ns*, 2006 WL 473885, at *8 (S.D.N.Y. Feb. 27, 2006) (defendants "were in control of the day-to-day operations of the company . . . and conferred with [accountant] regarding the accounting methods" that resulted in "greater unjustified revenues"); *In re New Oriental Educ. & Tech. Grp. Sec. Litig.*, 988 F. Supp. 2d 406, 426 (S.D.N.Y. 2013) (defendants were executives of company that entered agreements so "obviously deficient" that defendants "must have been aware" of the deficiencies).

[11] *See., e.g., In re Advance Auto Parts, Inc., Sec. Litig.*, 2020 WL 599543, at *9 (D. Del. Feb. 7, 2020) (defendants acquired stocks automatically as part of compensation package and "had access to internal forecasts and the company's financial data"); *see also In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 320 (S.D.N.Y. 2013) (share purchases "might suggest a lack

8

inapposite because they involve detailed allegations of defendants' knowledge of fraud, with very few facts weighing against a finding of scienter. Where, as here, such allegations are absent, the defendants' purchase of shares "raises a compelling inference *against* scienter." *Percoco v. Deckers Outdoor Corp.*, 2013 WL 3584370, at *6 (D. Del. July 8, 2013).[12] In short, the facts alleged here negate, and no allegations support, an inference of scienter.

Viewed *collectively*, the most compelling inference from Plaintiffs' allegations is that Boris and Kiev had no knowledge of or access to information suggesting fraud and therefore no reason to second guess ELM's accounting, which was blessed by BDO's clean audit opinion. As Plaintiffs admit, scienter rests on whether, "***accepting the whole factual picture*** painted by the Complaint, it is at least as likely as not that defendants acted with scienter." (Pls.' Br. at 28 (citing *Instit. Investors Group v. Avaya, Inc.*, 564 F.3d 242, 269 (3d Cir. 2009)) (emphasis added).)[13] Accordingly, Plaintiffs' Section 10(b) claim against Boris and Kiev fail.

### C. Plaintiffs Do Not Allege That Boris or Kiev Were the "Makers" of the Alleged Misstatements

Plaintiffs' arguments that Boris and Kiev were the makers of allegedly fraudulent statements should be rejected. While a statement may have multiple makers, that does not mean Boris and Kiev were the makers of the allegedly false ELM financials included in the Proxy. In fact, as the authority cited by Plaintiffs recognizes, simply signing an SEC filing is insufficient to

---

of fraudulent intent," but not where plaintiffs adequately alleged that defendants had reports contradicting their public statements); *Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prods. N.V.*, 2005 WL 1365465, at *12 (D.N.J. June 7, 2005) (defendant received communications from KPMG warning him about the fraud).

[12] *See also Hoey v. Insmed Inc.*, 2018 WL 902266, at *21 (D.N.J. Feb. 15, 2018) (that defendants "increased their holdings in the company" suggests that they "honestly believed in the strength [of the company]."). (*See also* B&K Br. at 16–17.)

[13] Plaintiffs fail to even address the additional factors weighing against scienter: that FIII had ample time to find another deal if the ELMS deal fell through, and that the Proxy disclosed the risks underpinning the alleged fraud, including the overwhelming majority of the Equity Transactions. (B&K Br. at 17.)

confer maker status. *See Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 532 F. Supp. 3d 189, 231 (E.D. Pa. 2021) (dismissing claim against company's president and CFO, who was alleged only to have signed the 10k). Similarly, here, as Plaintiffs acknowledge, "the Proxy explicitly states that 'all information contained in this proxy statement . . . relating to ELM has been supplied by ELM'" and that "BDO's audit report in the Proxy specified that ELM's 'financial statements are the responsibility of [ELM] management.'" (Pls.' Br. at 22 (citing F-89).) Because, as the Supreme Court held in *Janus*, "attribution within a statement . . . is strong evidence that a statement was made by—and only by—the party to whom it is attributed," Boris and Kiev cannot be considered the "makers" of the statements made in the ELM financials. *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142–143 (2011).

## II.     Plaintiffs' Section 20(a) Claim Against Boris and Kiev Should Be Dismissed

In support of their Section 20(a) claims, Plaintiffs assert that Boris and Kiev controlled FIII. In the FAC, however, Plaintiffs allege their 20(a) claim based on Boris and Kiev's control of ELM or ELMS, *not* FIII. Plaintiffs cannot summarily equate post-merger ELMS to pre-merger FIII, not least because neither Boris nor Kiev controlled ELMS. (B&K Br. at 19–20.)

Regardless, Plaintiffs also fail to allege culpable participation by Boris and Kiev, which requires allegations of "actual knowledge of the fraudulent activity." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 485–86 (3d Cir. 2013). Plaintiffs' assertions concerning culpable participation, which echo their deficient arguments concerning scienter, utterly fail to establish that Boris and Kiev had actual knowledge of ELM's alleged accounting errors. Accordingly, Plaintiffs' Section 20(a) claims against Boris and Kiev must be dismissed.

## CONCLUSION

For the reasons stated above and in their opening brief, Defendants Boris and Kiev respectfully request that the Court dismiss all claims against them with prejudice.

Dated: April 11, 2024

OF COUNSEL:

SCHINDLER COHEN & HOCHMAN LLP
Jonathan L. Hochman
Karen M. Steel
Jenny C. Gu
100 Wall Street, 15th Floor
New York, NY 10005
(212) 277-6300
jhochman@schlaw.com
ksteel@schlaw.com
jgu@schlaw.com

YOUNG CONAWAY STARGATT
 & TAYLOR, LLP

*/s/ Lakshmi A. Muthu*
Tammy L. Mercer (No. 4957)
Lakshmi A. Muthu (No. 5786)
M. Paige Valeski (No. 6336)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
tmercer@ycst.com
lmuthu@ycst.com
pvaleski@ycst.com

*Attorneys for Defendants David Boris and Marshall Kiev*

11

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 11, 2024, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

FRIEDLANDER & GORRIS, P.A.
Jeffrey M. Gorris (Bar No. 5012)
David Hahn (Bar No. 6417)
1201 N. Market Street, Suite 2200
Wilmington, DE 19801
(302) 573-3508
*jgorris@friedlandergorris.com*
*dhahn@friedlandergorris.com*

ROBBINS GELLER RUDMAN
& DOWD LLP
Brian E. Cochran
655 West Broadway, Suite 1900
San Diego, CA 92101
*bcochran@rgrdlaw.com*

ROBBINS GELLER RUDMAN
& DOWD LLP
Samuel H. Rudman
Mary K. Blasy
58 South Service Road, Suite 200
Melville, NY 11747
*srudman@rgrdlaw.com*
*mblasy@rgrdlaw.com*

ROBBINS GELLER RUDMAN
& DOWD LLP
Desiree Cummings
C. Chad Johnson
Noam Mandel
Jonathan Zweig
420 Lexington Avenue, Suite 1832
New York, NY
*dcummings@rgrdlaw.com*
*chadj@rgrdlaw.com*
*noam@rgrdlaw.com*
*jzweig@rgrdlaw.com*

*Attorneys for Lead Plaintiffs*

  /s/Lakshmi A. Muthu
YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Tammy L. Mercer (No. 4957 )
Lakshmi A. Muthu (No. 5786)

M. Paige Valeski (No. 6336)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
tmercer@ycst.com
lmuthu@ycst.com
pvaleski@ycst.com

*Attorneys for Defendants Marshall Kiev and David Boris*

31176182.1