# UNITED STATES DISTRICT COURT

## DISTRICT OF DELAWARE

| | |
|---|---|
| SHMUEL LEVY, Individually and on Behalf of All Others Similarly Situated, ) ) ) | Civil Action No. 1:23-cv-00653-GBW-LDH |
| Plaintiff, ) ) | <u>CLASS ACTION</u> |
| vs. ) ) | |
| JASON LUO, JAMES TAYLOR, ALBERT LI, MARSHALL KIEV, DAVID BORIS, and BDO USA, LLP, ) ) ) ) | |
| Defendants. ) ) ) | <u>ORAL ARGUMENT REQUESTED</u> |

## <u>LEAD PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATION</u>

**FRIEDLANDER & GORRIS, P.A.**

Jeffrey M. Gorris (Bar No. 5012)
David Hahn (Bar No. 6417)
1201 N. Market Street, Suite 2200
Wilmington, DE  19801
(302) 573-3508
jgorris@friedlandergorris.com
dhahn@friedlandergorris.com

*Liaison Counsel for the Class*

**ROBBINS GELLER RUDMAN
 & DOWD LLP**

Chad Johnson (admitted *pro hac vice*)
Noam Mandel (admitted *pro hac vice*)
Desiree Cummings (admitted *pro hac vice*)
Jonathan Zweig (admitted *pro hac vice*)
420 Lexington Avenue, Suite 1832
New York, NY 10170
(212) 432-5100
chadj@rgrdlaw.com
noam@rgrdlaw.com
dcumming@rgrdlaw.com
jzweig@rgrdlaw.com

*Lead Counsel for the Class*

{FG-W0519840.}

## TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND....................................................................................2

ARGUMENT.........................................................................................................3

      A.    BDO Made False Factual Statements and Actionable Misrepresentations ...........................................................................3

      B.    Luo, Taylor, and Li Made False and Misleading Statements.................................9

      C.    Boris and Kiev Acted with Scienter.....................................10

      D.    Defendants' Control Person Liability .................................10

CONCLUSION....................................................................................................10

{FG-W0519840.}

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Arthur v. Maersk, Inc.*,
434 F.3d 196 (3d Cir. 2006) ....................................................................................10

*City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*,
70 F.4th 668 (3d Cir. 2023) ....................................................................................1, 9

*Hacker v. Elec. Last Mile Sols. Inc.*,
687 F. Supp. 3d 582 (D.N.J. 2023) ............................................................... 4, 6, 7, 8

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
529 F. Supp. 3d 111 (S.D.N.Y. 2021) ........................................................................5

*In re CitiGroup Inc. Bond Litig.*,
723 F. Supp. 2d 568 (S.D.N.Y. 2010) ........................................................................4

*In re Interpool, Inc. Sec. Litig.*,
2005 WL 2000237
(D.N.J. Aug. 17, 2005) ..............................................................................................8

*In re Lehman Brothers Sec. & Erisa Litig.*,
131 F. Supp. 3d 241 (S.D.N.Y. 2015) .....................................................................5, 9

*In re MicroStrategy, Inc. Sec. Litig.*,
115 F. Supp. 2d 620 (E.D. Va. 2000) ........................................................................8

*In re Petrobras Sec. Litig.*,
2016 WL 1533553
(S.D.N.Y. Feb. 19, 2016) ...........................................................................................8

*In re Suprema Specialties, Inc. Sec. Litig.*,
438 F.3d 256 (3d Cir. 2006) ..................................................................................7, 10

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
2023 WL 3993740
(D.N.J. June 14, 2023) ...............................................................................................7

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011) ............................................................................................ 1, 2, 9

*Johnson v. CBD Energy Ltd.*,
2016 WL 3654657
(S.D. Tex. July 6, 2016) ..............................................................................................9

{FG-W0519840.}

**Page**

*McCullough v. Advest, Inc.*,
  754 F. App'x 109 (3d Cir. 2018) ....................................................................10

*Miller Inv. Tr. v. Morgan Stanley & Co., LLC*,
  308 F. Supp. 3d 411 (D. Mass. 2018) ...........................................................4, 5

*New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*,
  122 F.4th 28 (2d Cir. 2024) ..........................................................................5, 6

*Omanoff v. Patrizio & Zhao LLC*,
  2015 WL 1472566
  (D.N.J. Mar. 31, 2015) ...................................................................................4, 5

*Omnicare, Inc. v. Laborers Dist. Council Constr. Ind. Pension Fund*,
  575 U.S. 175 (2015) .....................................................................................*passim*

*P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*,
  142 F. Supp. 2d 589 (D.N.J. 2001) ....................................................................8

*Se. Penn. Transp. Auth. v. Orrstown Fin. Servs., Inc.*,
  2022 WL 3572474
  (M.D. Pa. Aug. 18, 2022) ...................................................................................9

*Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*,
  243 F. Supp. 3d 1109 (E.D. Cal. 2017) ..............................................................8

*Sun v. Han*,
  2015 WL 9304542
  (D.N.J. Dec. 21, 2015) ........................................................................................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ..........................................................................................10

*Yang v. Tibet Pharms., Inc.*,
  2015 WL 730036
  (D.N.J. Feb. 20, 2015) .........................................................................................5

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
  §78j(b) ......................................................................................................... 1, 10
  §78t(a) ...................................................................................................... 1, 2, 10

{FG-W0519840.}

**Page**

Federal Rules of Civil Procedure
    Rule 15..................................................................................................................10
    Rule 15(a)(2)........................................................................................................10

Local Rules of Civil Practice and Procedure
    Rule 15.1..............................................................................................................10

Public Company Accounting Oversight Board
    Rule 3520...............................................................................................................3
    Rule 3526...............................................................................................................3

- iv –

{FG-W0519840.}

Plaintiffs respectfully submit that Magistrate Judge Hatcher erred in recommending dismissal of their claims under §§10(b) and 20(a) of the 1934 Act on behalf of investors who purchased the common stock of FIII/ELMS in the PIPE Offering in connection with the Merger of ELM and FIII.[1] These claims are based on Defendants' concealment of over $800 million in stock-based payments to insiders and other individuals.  Before the Merger, FIII was a publicly traded SPAC, and ELM was privately held.  After the Merger, FIII was the surviving company and was renamed ELMS.

The Offering Memorandum for the PIPE Offering represented and warranted that FIII's SEC filings were accurate in all material respects.  As detailed in the Complaint, however, the Offering Memorandum and the SEC filings warranted by it were materially false and misleading because the Proxy concealed approximately $800 million in compensation granted to Defendants Luo and Taylor, the Executive Chairman and CEO, respectively, of both pre-Merger ELM and post-Merger ELMS.  The Proxy disclosed materially false financial statements that violated GAAP by failing to disclose any expenses related to that compensation.  The Proxy also included a materially false and misleading report from ELM's supposedly independent auditor, Defendant BDO, misrepresenting that BDO's audit complied with PCAOB standards and that ELM's financials complied with GAAP.

Judge Hatcher's Report and Recommendation ("R&R") correctly held that PIPE investors have standing and that Defendants Boris and Kiev "made" false statements under *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011) and *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668 (3d Cir. 2023).  But the R&R erred in holding that BDO's false statements were "inactionable statement[s] of opinion" (D.I. 75 at 18) under *Omnicare, Inc. v. Laborers Dist. Council Constr. Ind. Pension Fund*, 575 U.S. 175 (2015).  The R&R also erred in

---

[1]    The "Complaint" and "¶" refer to the Amended Class Action Complaint (D.I. 23).  All emphasis is added and internal quotation marks are omitted unless otherwise specified.  All capitalized terms not defined have the same meanings ascribed to them in the Complaint.

- 1 -

holding that Luo, Taylor, and Li did not "make" false statements under *Janus* and that Boris and Kiev did not act with scienter. Finally, the R&R erred in recommending dismissal of Plaintiffs' control-person claims under §20(a) against the Individual Defendants. Upon this Court's *de novo* review, the R&R should be overruled to the extent it recommends dismissal of Plaintiffs' claims against all Defendants.

## FACTUAL BACKGROUND

Before the Merger, Defendants Luo and Taylor, well aware of the $1.3 billion post-Merger value of ELMS, caused ELM to issue 99,000 shares of ELM stock for $10 per share to entities they controlled and other purchasers. ¶48. The vast majority of these shares went to entities owned by Luo and Taylor. ¶¶5, 49. The $10 per share they paid for these shares was significantly below the shares' fair market value. ¶¶4, 48. Because the 99,000 shares could each be exchanged for over 800 shares of ELMS common stock at the close of the Merger and were issued just weeks before execution of the Merger Agreement, the fair market value of those shares was over $8,000. *Id*. The difference between the $10 per share paid for these shares and the over $8,000 fair market value represented an approximately $800 million expenditure by ELM. ¶¶4, 60.

The PIPE Offering was a private placement of $130 million worth of shares of unregistered common stock of FIII. ¶¶2, 35. The Offering Memorandum stated that PIPE Investors were to rely exclusively on FIII's SEC's filings and represented and warranted that those filings were complete and accurate. ¶¶37-40, 52. But the Proxy misrepresented that ELM's senior executives received zero or *de minimis* compensation in 2020 when they actually received hundreds of millions of dollars in equity compensation. ¶¶6, 55-56. The Proxy also concealed hundreds of millions of dollars in expenses tied to this equity compensation. ¶¶55-62.

The Proxy also included ELM's materially false and misleading financial statements for 2020 and a false and misleading audit letter from BDO. ¶¶7, 54, 60-69. BDO's audit letter falsely stated

- 2 -

that ELM's financials complied with GAAP and that BDO conducted its audit "in accordance with the standards of the PCAOB." ¶¶64-66.  The Complaint pleads the specific GAAP provisions that ELM violated.  ASC 718 governs accounting for share-based transactions, and requires a company "to determine the fair value of stock at the time of issuance or sale" and recognize as compensation expense the difference between: (a) the fair market value of the stock issued; and (b) the price paid by the recipient of the stock.  ¶¶77-78.  Here, ELM did not determine the fair value of the shares issued or recognize the associated expense.  ¶¶61, 68, 89.  Indeed, the Company has admitted that ELM "does not appear to have obtained an independent valuation to determine the fair market value per share of its common stock," in violation of ASC 718.  ¶9.

Finally, the Proxy falsely represented that BDO audited ELM's financials in compliance with PCAOB standards.  PCAOB Rule 3520 requires firms to be independent of the client throughout the audit.  ¶118.  BDO, which advised Luo and structured the insider stock issuances, was not independent.  ¶¶119-120, 124.  PCAOB Rule 3526 requires an auditor to describe to the client's audit committee all relationships between the auditor and the client.  ¶118.  According to ELMS' audit committee, BDO did not do so.  ¶123.  Additionally, BDO failed to "obtain reasonable assurances" of the financial statements' accuracy (¶126 (citing AS 1101.03)), including by "obtaining sufficient appropriate audit evidence" (*id*. (citing AS 1101.04)) and "employing professional skepticism" (*id.* (citing AS 1015.07.09)).  As explained below, BDO ignored glaring red flags, evincing a failure to comply with PCAOB standards, as it represented it did.

## ARGUMENT

### A.  BDO Made False Factual Statements and Actionable Misrepresentations

The R&R erred in holding that BDO did not make actionable false statements.  D.I. 75 at 18-24.  The Complaint pleads that Defendant BDO issued a fraudulent audit report that falsely claimed

- 3 -

BDO had conducted its audit in accordance with PCAOB standards when it had not, and that misrepresented that ELM's financials were accurate and GAAP-compliant when they actually failed to reflect over $800 million in compensation expense.

The R&R erred in holding that BDO's misrepresentations were subjective opinions. D.I. 75 at 18-21. To the contrary, they concern objective factual matters. *See Omnicare*, 575 U.S. at 183 ("A fact is 'a thing done or existing[.]'"). BDO's audit opinion falsely assured investors that ELM's financial statements complied with GAAP. ¶¶63-64. In reality, ELM's financial statements understated expenses related to the insider stock issuances by over $800 million in violation of numerous GAAP rules. It is a fact, not an opinion, that ELM did not determine the fair market value of the shares issued to insiders, as it was required to do. Thus, rather than subjective accounting judgment, this case involves "straightforward" GAAP violations, as was held in the case on behalf of public-market purchasers of ELMS stock based on the same facts. *See Hacker v. Elec. Last Mile Sols. Inc.*, 687 F. Supp. 3d 582, 599 (D.N.J. 2023). The GAAP provisions identified in the Complaint are mandatory financial reporting rules, not suggestions subject to discretionary judgments. *See, e.g.*, ¶77 ("ASC 718 requires a company to determine the fair value of stock at the time of issuance or sale."). BDO's statement that ELM's financials complied with GAAP is a factual misstatement where, as here, the Complaint details specific GAAP provisions that were violated and how they were violated. ¶¶63-65, 77-88. *See Omanoff v. Patrizio & Zhao LLC*, 2015 WL 1472566, at *5 (D.N.J. Mar. 31, 2015) (representation that financials complied with GAAP was not opinion); *In re CitiGroup Inc. Bond Litig.*, 723 F. Supp. 2d 568, 594 (S.D.N.Y. 2010) (same).

BDO's statement that it conducted its audit "in accordance with the standards of the PCAOB," ¶66, is also a statement of fact. *See Miller Inv. Tr. v. Morgan Stanley & Co., LLC*, 308 F. Supp. 3d 411, 430 (D. Mass. 2018) ("Because the auditor itself is the one tasked with complying

- 4 -

with the standards, the statement that an auditor has so complied in conducting its audit is best understood as one of fact.").[2]  BDO could readily have verified that this factual representation was untrue based on information in its possession, including its lack of independence due to its work for Defendant Luo (¶¶117-118), its work on the insider stock issuances (¶¶119-123), its failure to provide written documentation of its independence (¶124), and its failure to develop and perform an audit to account for known risks, such as those created by the insider issuances (¶¶125-130).

Even if the R&R is correct that BDO's statements are opinions under *Omnicare*, it erred in holding that they are inactionable.  Under *Omnicare*, opinion statements are actionable if they: (1) are not sincerely believed by the speaker; (2) contain untrue embedded statements of fact; or (3) reasonably imply untrue facts and omit qualifying language.  *See* 575 U.S. at 184-86, 188-89.

Here, BDO could not have subjectively believed its own statement that it conducted a PCAOB-compliant audit in light of the facts it knew demonstrating that it did not do so.  *See, e.g.*, *New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 122 F.4th 28, 53 (2d Cir. 2024) ("BDO's statement that it 'believe[d] [its] audits provide a reasonable basis for [its] opinion,' . . . would lead a reasonable investor to conclude that BDO had conducted 'some meaningful . . . inquiry' . . . when[,]" based on the Complaint it had failed to do so).[3]  The R&R erroneously failed to credit the Complaint's particularized allegations that BDO failed to perform

---

[2]     *See also Omanoff*, 2015 WL 1472566, at \*5 (rejecting argument that auditor's representation regarding compliance with PCAOB standards was opinion); *Sun v. Han*, 2015 WL 9304542, at \*9-\*10 (D.N.J. Dec. 21, 2015) (rejecting auditor's assertion that statements regarding compliance with GAAP and PCAOB standards are opinions); *Yang v. Tibet Pharms., Inc.*, 2015 WL 730036, at \*3 n.7 (D.N.J. Feb. 20, 2015) (allegations of auditor's conduct relative to professional standards "concern misrepresentations of fact").

[3]     *See also In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 156 (S.D.N.Y. 2021) ("[P]laintiff only needs to allege that the [auditor] ignored a sufficient number of red flags, which would permit the inference that the [auditor] did not believe that they conducted a compliant audit."); *In re Lehman Brothers Sec. & Erisa Litig.*, 131 F. Supp. 3d 241, 259 (S.D.N.Y. 2015) (same).

mandatory PCAOB procedures, including verifying that ELM had obtained an independent valuation, as BDO's own manual required.  ¶¶61, 68, 77-79, 133.  Rather, the R&R drew an inference in BDO's favor that the relevant PCAOB requirements are "inherent[ly] subjectiv[e]," which they are not. D.I. 75 at 23.  As *New England Carpenters* recognized, GAAP standards do not all "entail an exercise of subjective judgment."  122 F.4th at 46.

BDO's false and misleading statement that ELM's 2020 financial statements complied with GAAP (¶66) is also actionable because it fits within all three *Omnicare* categories.

*First*, BDO's "opinion" that ELM's 2020 financials complied with GAAP is actionable because BDO failed to conduct the PCAOB-compliant audit necessary to form or hold such an opinion in the first place.  For example, conducting a PCAOB-compliant audit would have required BDO to determine that ELM had not performed the required fair market valuation of the shares issued in the 2020 Equity Transactions and had not properly expensed the difference between the purchase price and far greater fair value.  ¶¶117, 125-133.  Having failed to conduct such an audit, BDO lacked any reasonable basis for its "opinion" that ELM's financials for 2020 complied with GAAP.  Indeed, *Hacker* held that plaintiffs adequately alleged BDO's scienter, which is a stricter pleading standard than lack of reasonable belief in its stated opinion, based on the same facts alleged here.  *See Hacker*, 687 F. Supp. 3d at 599-600; *see also* D.I. 63-1 (*Hacker* opinion rejecting BDO's *Omnicare* argument).  Allegations that an auditor did not perform "the necessary checks . . . before issuing the audit opinion" suffice to allege falsity.  *New England Carpenters*, 122 F.4th at 52.

Here, the Complaint alleges BDO's lack of reasonable belief because it shows the existence of significant GAAP violations coupled with the fact that BDO was aware of and ignored major red flags.  *See Hacker*, 687 F. Supp. 3d at 599-602 (BDO's scienter established by GAAP violations and ignoring red flags).  Scienter may be plead by "showing that an auditor either lacked a genuine belief

- 6 -

that its representations were supported by adequate information or engaged in auditing practices so shoddy that they amounted at best to a 'pretended audit.'" *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 279 (3d Cir. 2006). Thus, "[a]t the pleading stage, courts have recognized that allegations of GAAS violations, coupled with allegations that significant 'red flags' were ignored, can suffice to withstand a motion to dismiss." *Id.* at 279-81.[4] Here, consistent with *Suprema*, the Complaint alleges specific GAAP violations, including ASC 718, which required a fair market valuation of the stock issued to insiders and expensing of the stock's excess value (neither of which occurred) (¶¶61, 68, 77-78); and ASC 850, which required disclosure of "[t]he dollar amounts of [the] transactions" (which did not occur) (¶¶80-84). And BDO ignored glaring red flags, including:

***Share Price:*** As the *Hacker* court held, "[i]n the context of the soon-to-be-signed merger agreement, the combined effect of the 820:1 ratio and the $10 acquiring company share price was to throw up a red flag—indicating the $10 operating company share valuation was much too low." *Hacker*, 687 F. Supp. 3d at 591. As the *Hacker* court further held, the "startling[ly] low $10 price for operating company shares . . . suggested the 2020 financial statements [BDO] offered its clean opinion on were materially inaccurate, because they greatly understated operating expenses." *Id.* at 592. Moreover, BDO was aware of this red flag because, as alleged in the Complaint, BDO itself structured the stock issuances to insiders. ¶119; *see also Hacker*, 687 F. Supp. 3d at 593 (BDO "was aware of the November 2020 stock sale when, in 2021, it audited the operating company's 2020 financial statements"). As the *Hacker* court summarized, this red flag "suggested the financial statements audited by [BDO] were potentially erroneous, and by a material amount. And this red flag was visible to [BDO] because it was aware of the November 202[0] stock sale (and before it issued its clean opinion on the financial statements)." *Id.* at 595.

---

[4]    *See also Hacker*, 687 F. Supp. 3d at 588-89 (applying same standard); *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2023 WL 3993740, at *4 (D.N.J. June 14, 2023) (same).

*Share Valuation:*  The fact that the issuances to insiders occurred without a fair market valuation as required by ASC 718 (¶¶61, 68, 77-78) "was another red flag." *Hacker*, 687 F. Supp. 3d at 595.  BDO "was aware of this red flag." *Id.* at 596.  It was impossible for BDO to conduct a proper audit without the valuation required by ASC 718.  ¶133.  Indeed, because BDO knew about the issuances from having structured them, "it is difficult to imagine a non-reckless auditor knowing of the stock sale but failing to ask management, as part of its audit of the financial statements, 'How did you come to this valuation?'" *Hacker*, 687 F. Supp. 3d at 596-97.

*Magnitude:*  The magnitude of the over $800 million in undisclosed expenses also supports the inference of BDO's lack of reasonable belief in its statement: "GAAP violations on even roughly this alleged scale, especially when based on relatively straightforward issues, support a strong inference that [BDO] acted with . . . scienter." *Id.* at 599.[5]

*Second*, BDO's "opinion" regarding the financial statements' compliance with GAAP contains the embedded factual representation that BDO conducted a PCAOB-compliant audit.  As explained above, this embedded fact was false.  *See Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*, 243 F. Supp. 3d 1109, 1119-20 (E.D. Cal. 2017) (finding falsity of embedded fact concerning auditor's compliance with PCAOB standards).  That the audited financial statements themselves were GAAP-compliant is also a fact statement embedded within an audit opinion.  *See In re Petrobras Sec. Litig.*, 2016 WL 1533553, at *3 (S.D.N.Y. Feb. 19, 2016) (financial statements embedded within auditor's audit opinion because it "rested on the underlying facts contained in the

---

[5]    *See also In re Interpool, Inc. Sec. Litig.*, 2005 WL 2000237, at *15 (D.N.J. Aug. 17, 2005) ("GAAP violations" with "other evidence . . . may support a strong inference of scienter"); *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 142 F. Supp. 2d 589, 608 (D.N.J. 2001) (same); *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 636-37 (E.D. Va. 2000) (same).

- 8 -

financial statements").[6]

*Third*, under *Omnicare*'s final prong, BDO's "opinion" regarding compliance with GAAP is actionable because it "omits material facts about the [speaker]'s inquiry into" the subject that "conflict with what a reasonable investor would take from the statement itself," 575 U.S. at 189, including that BDO failed to perform numerous required independence and audit risk assessments (*e.g.*, ¶¶118-124, 127-132, 135), which "call [the statement] into question." *Omnicare*, 575 U.S. at 189 n.6, 194 ("[I]n the absence of the expected inquiry or in the face of known contradictory evidence," liability can arise from defendants' conduct regardless of their subjective belief).[7]

The R&R would enable auditors to immunize knowingly false statements by labeling them "opinions." That is not the law.

### B.      Luo, Taylor, and Li Made False and Misleading Statements

The R&R erred in finding that Luo, Taylor, and Li did not "make" alleged misstatements. D.I. 75 at 14-17. A person makes a statement if they have "ultimate authority over the statement, including its content and whether and how to communicate it." *Janus*, 564 U.S. at 142. Luo, Taylor, and Li were ELM's senior managers and had ultimate authority over ELM's false financial statements set forth in the Proxy, which specifically attributed this information to them, stating that "[t]he information included in this proxy statement in relation to ELM has been provided by ELM and its management team." D.I. 35-2, at 28; *see also Prudential*, 70 F.4th at 688.

---

[6]      The R&R relies heavily on the non-controlling decision in *Johnson v. CBD Energy Ltd.*, 2016 WL 3654657, at *12 (S.D. Tex. July 6, 2016), which does not address allegations that an auditor failed to perform a straightforward mandatory procedure like the verification of fair market value BDO failed to perform here.

[7]      *See also Se. Penn. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 2022 WL 3572474, at *57 (M.D. Pa. Aug. 18, 2022) (material omissions under *Omnicare* where auditor failed to disclose impaired loans in violation of GAAP); *Lehman Brothers*, 131 F. Supp. 3d at 259 ("[A]n auditor . . . may omit matter from its opinions on a company's financial statements and its compliance with GAAS that would render those opinions materially misleading to an informed reader.").

{FG-W0519840.}

C.     **Boris and Kiev Acted with Scienter**

The R&R erred in holding that Plaintiffs failed to allege Defendants Boris and Kiev's scienter.  D.I. 75 at 24-27.  Boris and Kiev negotiated the letter of intent between ELM and FIII, establishing an enterprise value for the combined company of $1.3 billion.  ¶47.  Further, FIII management conducted due diligence concerning ELM, which continued after the insider stock issuances, indicating they had access to the relevant facts, demonstrating scienter.  ¶106.  *See, e.g.*, *McCullough v. Advest, Inc.*, 754 F. App'x 109, 113 (3d Cir. 2018).  Boris and Kiev were also financially motivated to consummate the Merger because they held founder shares that would be valued at approximately $64 million.  ¶108.  "[P]ersonal financial gain may weigh heavily in favor of a scienter inference."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 325 (2007).

D.     **Defendants' Control Person Liability**

The R&R erred in recommending dismissal of Plaintiffs' control-person claims under §20(a) on the sole basis that Plaintiffs did not allege §10(b) claims.  This is error because the Complaint adequately alleges predicate §10(b) violations by ELM, which issued the false financials at issue, and ELMS, which issued the Offering Memorandum and the Proxy.  The only reason they are not defendants is ELMS' bankruptcy, and §20(a) claims against bankrupt issuers' executives are proper; the entity need not be a defendant.  *See Suprema*, 438 F.3d at 285-86; *see also* ¶¶20, 161.

## CONCLUSION

The Court should reject the R&R to the extent it recommends dismissal of Plaintiffs' claims against all Defendants.[8]

---

[8]     Plaintiffs stand by the strength of the Complaint.  Nevertheless, if necessary Plaintiffs are prepared to promptly submit an amended complaint, in accordance with Fed. R. Civ. P. 15 and Local Rule 15.1, to clarify the allegations and address the concerns stated in the R&R.  Leave to amend should be "freely give[n]," Fed. R. Civ. P. 15(a)(2), and "must generally be granted unless equitable considerations render it otherwise unjust." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006).

- 10 -

DATED:  February 21, 2025

**FRIEDLANDER & GORRIS, P.A.**

*/s/ Jeffrey M. Gorris*
Jeffrey M. Gorris (Bar No. 5012)
David Hahn (Bar No. 6417)
1201 N. Market Street, Suite 2200
Wilmington, DE  19801
(302) 573-3508
jgorris@friedlandergorris.com
dhahn@friedlandergorris.com

*Liaison Counsel for the Class*

**ROBBINS GELLER RUDMAN**
  **& DOWD LLP**
Chad Johnson (admitted *pro hac vice*)
Noam Mandel (admitted *pro hac vice*)
Desiree Cummings (admitted *pro hac vice*)
Jonathan Zweig (admitted *pro hac vice*)
420 Lexington Avenue, Suite 1832
New York, NY 10170
(212) 432-5100
chadj@rgrdlaw.com
noam@rgrdlaw.com
dcumming@rgrdlaw.com
jzweig@rgrdlaw.com

*Lead Counsel for the Class*

- 11 -

## CERTIFICATION

Pursuant to Paragraph 5 of the Court's Standing Order for Objections filed under Fed. R. Civ.

P. 72, the undersigned certifies that the objections submitted herewith do not raise new factual or

legal arguments.

DATED:  February 21, 2025                    **FRIEDLANDER & GORRIS, P.A.**

                                             */s/ Jeffrey M. Gorris*
                                             Jeffrey M. Gorris (Bar No. 5012)
                                             David Hahn (Bar No. 6417)
                                             1201 N. Market Street, Suite 2200
                                             Wilmington, DE  19801
                                             (302) 573-3508
                                             jgorris@friedlandergorris.com
                                             dhahn@friedlandergorris.com

{FG-W0519840.}