## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SHMUEL LEVY, Individually and on Behalf of Others Similarly Situated,<br><br>          Plaintiff,<br><br>     v.<br><br>JASON LUO, JAMES TAYLOR, ALBERT LI, MARSHALL KIEV, DAVID BORIS, and BDO USA, LLP,<br><br>          Defendants. | C.A. No. 23-cv-00653-GBW-LDH |

**DEFENDANT JAMES TAYLOR'S RESPONSE TO LEAD PLAINTIFFS' OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION GRANTING TAYLOR'S MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

OF COUNSEL:

Lawrence Gerschwer
Joseph A. Matteo
Charlotte H. Underwood
390 Madison Avenue, 12th Floor
New York, NY 10017
Telephone: (646) 746-2000
Fax: (646) 746-2001
Lawrence.Gerschwer@btlaw.com
Joseph.Matteo@btlaw.com
Charlotte.Underwood@btlaw.com

**BARNES & THORNBURG LLP**
Michael J. Maimone (DE No. 3592)
Gabriella Mouriz (DE No. 6993)
220 Delaware Avenue, Suite 1200
Wilmington, DE 19801
Telephone: (302) 300-3471
Fax: (302) 300-3456
MMaimone@btlaw.com
GMouriz@btlaw.com

*Attorneys for Defendant James Taylor*

## TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND ................................................................................................ 1

PROCEDURAL HISTORY ............................................................................................... 3

STANDARD OF REVIEW ............................................................................................... 4

RESPONSE TO OBJECTIONS ....................................................................................... 4

I.    Magistrate Judge Hatcher Correctly Recommended that the Court Dismiss
      Plaintiffs' Section 10(b) Claim against Taylor .................................................... 4

II.   Magistrate Judge Hatcher Correctly Recommended that the Court Dismiss
      Plaintiffs' Section 20(a) Claim against Taylor .................................................... 7

III.  The Court Should Deny Plaintiffs' Request for Leave to Amend Their Complaint .......... 9

CONCLUSION ................................................................................................................ 10

CERTIFICATE OF SERVICE ....................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Advance Auto Parts, Inc., Sec. Litig.*,
No. CV 18-212-RGA, 2020 WL 599543 (D. Del. Feb. 7, 2020) ...........................................7, 9

*AJZN, Inc. v. Yu*,
No. CV 13-149 GMS, 2015 WL 331937 (D. Del. Jan. 26, 2015) .............................................8

*Brayboy v. S.C.I. Mahanoy*,
CV 23-2475-KSM, 2025 WL 567015 (E.D. Pa. Feb. 20, 2025) ................................................4

*City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*,
713 F. Supp. 2d 378 (D. Del. 2010).........................................................................................7

*City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*,
70 F.4th 668 (3d Cir. 2023) .....................................................................................................6

*In re Digital Island Sec. Litig.*,
223 F. Supp. 2d 546 (D. Del. 2002)..........................................................................................8

*In re DVI Inc. Sec. Litig.*,
No. CIV.A. 03-5336, 2013 WL 56073 (E.D. Pa. Jan. 4, 2013) ................................................4

*Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*,
482 F.3d 247 (3d Cir. 2007).....................................................................................................10

*Huckabee v. Meta Platforms, Inc.*,
CV 24-773-GBW, 2024 WL 4817657 (D. Del. Nov. 18, 2024)..............................................10

*Janus Capital Group, Inc. v. First Derivative Traders*,
564 U.S. 135 (2011)........................................................................................................3, 4, 6, 7

*LLDVF, L.P. v. Dinicola*,
No. CIV. A. 09-1280-JLL, 2010 WL 3210613 (D.N.J. Aug. 12, 2010)..................................8

*In re Merck & Co., Inc. Sec., Derivative, & ERISA Litig.*,
C.A. Nos. 05–1151 (SRC), 05–2367(SRC), 2011 WL 3444199 (D.N.J. Aug.
8, 2011) .....................................................................................................................................6

*Stichting Pensioenfonds ABP v. Merck & Co.*,
No. 05–5060 (SRC), 2012 WL 3235783 (D.N.J. Aug. 1, 2012) .............................................9

*Universal American Corp. v. Partners Healthcare Solutions Holdings, L.P.*,
176 F. Supp. 3d 387 (D. Del. 2016)......................................................................................5, 6

*Washtenaw County Employees' Retirement System v. Walgreen Co.*,
No. 15-CV-3187, 2019 WL 4597518 (N.D. Ill. Sept. 23, 2019) ...............................................5

*Winer Family Tr. v. Queen*,
503 F.3d 319 (3d Cir. 2007) .........................................................................................................6

**Statutes**

28 U.S.C. § 636(b)(1) .....................................................................................................................4

Securities Exchange Act of 1934 Section 10(b) ..................................................... *passim*

Securities Exchange Act of 1934 Section 20(a) ..................................................... *passim*

**Other Authorities**

17 C.F.R. § 240.10b-5(b) ...............................................................................................................4

L.R. 15.1 ........................................................................................................................................10

Rule 10b-5 .................................................................................................................................3, 4

Defendant James Taylor respectfully submits this response to Plaintiffs' objections to Magistrate Judge Laura D. Hatcher's February 7, 2025 report recommending that this Court grant Taylor's motion to dismiss Plaintiffs' Amended Class Action Complaint (the "Amended Complaint" or "AC") (D.I. 23.) For the reasons set forth below, Taylor respectfully submits that the Court should fully adopt Magistrate Judge Hatcher's recommendation as to Taylor and deny Plaintiffs' request for leave to file yet another amended complaint in this action.

## FACTUAL BACKGROUND

In August 2020, defendants James Taylor and Jason Luo co-founded Electric Last Mile, Inc. ("ELM") as a privately held company to manufacture electric vans and utility vehicles. (AC ¶¶ 20, 22-23, 32.) On September 18, 2020, ELM signed a non-binding letter of intent to merge with Forum Merger III Corporation ("FIII"), which was a SPAC, or blank-check company, that had conducted its initial public offering in August 2020. (*Id.* ¶¶ 30-33.) Taylor was not an officer, director or employee of, and held no ownership interest in, FIII. To fund ELM's operations pending a potential merger with FIII, Taylor and Luo agreed to purchase shares of ELM for $10 per share—the same price that outside investors paid—in November 2020. (*Id.* ¶¶ 44, 48-49.) One month later, Luo sold 1,000 of his ELM shares to ELM's chief operating officer and general counsel for $10 per share. (*Id.* ¶ 50.) Taylor did not participate in this transaction. (*See id.*)

On December 10, 2020, ELM and FIII entered into a definitive merger agreement under which ELM would merge with and into FIII (the "Merger"). (*Id.* ¶ 34.) On that same day, FIII entered into subscription agreements with various third-party investors (the "PIPE Investors") pursuant to which FIII agreed to sell these investors shares of FIII common stock. (*Id.* ¶ 35; D.I. 35-1.) All told, FIII agreed to issue and sell to the PIPE Investors 13 million shares of FIII common stock at $10 per share for an aggregate purchase price of $130 million in private

placements that would close immediately prior to the closing of the Merger (the "PIPE Offering"). (AC ¶ 35.)

On June 9, 2021, FIII issued a definitive proxy statement to solicit the votes of FIII's shareholders to approve the Merger. (AC ¶ 43; D.I. 35-2 (the "Proxy").) Taylor did not sign the Proxy, and Plaintiffs do not allege that he prepared that document. (Proxy at Annex A-1-56.) The Proxy, as well as two publicly filed preliminary proxy statements, included ELM's historical financial statements, which disclosed Taylor's and Luo's prior equity transactions, including the amounts of shares each purchased and the price at which they purchased those shares. (AC ¶ 58; Proxy at F-99.) FIII did not attribute these financial statements to Taylor, and Plaintiffs do not allege that Taylor, who was not an accountant, had ultimate authority over those statements. ELM's outside auditors at BDO USA, LLP ("BDO") audited the financial statements and gave ELM a "clean audit." (AC ¶ 64.)

On June 24, 2021, FIII's shareholders voted to approve the Merger. (AC ¶ 44.) On that same day, the PIPE Offering closed, subject to the closing of the Merger. (*Id.*) On June 25, 2021, the Merger closed, and FIII changed its name to Electric Last Mile Solutions, Inc. ("ELMS") and its ticker symbol from FIII to ELMS. (AC ¶ 45.) Taylor thereafter became the chief executive officer and a director of ELMS. (*Id.* ¶ 23.)

On February 1, 2022, Taylor resigned his positions with ELMS but agreed to remain a consultant to ELMS for two years at a salary of $300,000 per year. (D.I. 35-3 at 2.) The same day, ELMS filed a report on Form 8-K in which it disclosed, among other things, that it was "further evaluating" whether it properly disclosed the equity transactions, "whether it properly assessed the accounting treatment and compensation expense associated with such purchases,

2

and whether it properly paid and withheld taxes associated with such purchases." (AC ¶ 89; D.I. 35-3 at 3.)

On June 13, 2022, ELMS announced that it planned to liquidate through a Chapter 7 bankruptcy proceeding. (AC ¶ 103.) ELMS never reported any conclusions with respect to its ongoing assessment of the November or December 2020 equity transactions. It has never restated ELM's financial statements.

## PROCEDURAL HISTORY

On June 14, 2023, plaintiff Shmuel Levy commenced this action by a complaint against Taylor, Luo, BDO, Albert Li, Marshall Kiev, and David Boris on behalf of a putative class of PIPE Investors. (D.I. 1.) On August 31, 2023, this Court appointed the Plaintiffs as lead plaintiff. (D.I. 16.) On November 14, 2023, Plaintiffs filed the Amended Complaint, asserting claims against all defendants, including Taylor, under Section 10(b) of the Securities Exchange Act of 1934 (the "Act") and Rule 10b-5 as well under Section 20(a) of the Act. (AC ¶¶ 154-61.)

All defendants subsequently moved to dismiss the Amended Complaint. (D.I. 33, 36, 38, 41, and 44.) The Magistrate Judge heard oral argument on December 3, 2024. On February 7, 2025, the Magistrate Judge issued a report recommending that this Court grant each defendant's motion to dismiss (the "R&R"). (D.I. 75.) The Magistrate Judge recommended that this Court dismiss Plaintiffs' Section 10(b) claim against Taylor because he was not the "maker" of any of the allegedly false statements under *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011) and its progeny. (*See* R&R at 13-17.) The Magistrate Judge further recommended that this Court dismiss Plaintiffs' Section 20(a) claim against all defendants, including Taylor, because Plaintiffs had not adequately alleged a primary violation against any of the defendants. (*See id.* at 27.) Plaintiffs objected to the R&R on February 21, 2025 (the "Objection"). (D.I. 76.)

3

**STANDARD OF REVIEW**

A district court generally "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, "objections that merely rehash an argument presented to and considered by a magistrate judge are not entitled to *de novo* review, and rather are reviewed for clear error." *Brayboy v. S.C.I. Mahanoy*, CV 23-2475-KSM, 2025 WL 567015, at *3 (E.D. Pa. Feb. 20, 2025) (cleaned up).

**RESPONSE TO OBJECTIONS**

**I.      Magistrate Judge Hatcher Correctly Recommended that the Court Dismiss Plaintiffs' Section 10(b) Claim against Taylor**

Under Rule 10b-5, it is unlawful for "any person, directly or indirectly, . . . [t]o make any untrue statement of a material fact" in connection with the purchase or sale of securities. 17 C.F.R. § 240.10b-5(b). As such, liability under Section 10(b) and Rule 10b-5 rests only with the "maker" of the alleged misstatement. *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). The "maker" of a statement is "the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Id.*  Where an alleged misstatement is contained in an offering document filed with the SEC, the "maker" of the statement is the entity with the statutory obligation to file the document, absent attribution otherwise. *See, e.g.*, *id.* at 146-47 & n.11 ("attribution is necessary"); *see also In re DVI Inc. Sec. Litig.*, No. CIV.A. 03-5336, 2013 WL 56073, at *7 (E.D. Pa. Jan. 4, 2013) (recognizing that "[r]egardless of whether a statement is directly or indirectly communicated to a recipient, *Janus* ruled that 'attribution is necessary' for any liability under Rule 10b–5(b)") (citation omitted).

Here, FIII filed the Proxy, which FIII's co-chief executive officers signed. Plaintiffs argue that ELM's allegedly false financial statements nevertheless were attributable to Taylor

because the Proxy contained a note that "'information included in this proxy statement in relation to ELM has been provided by ELM and its management team.'" (Objection at 9.)  However, this general reference to "ELM and its management team" is not sufficient to attribute ELM's financial statements to Taylor. For example, in *Universal American Corp. v. Partners Healthcare Solutions Holdings, L.P.*, 176 F. Supp. 3d 387 (D. Del. 2016), the plaintiff alleged that three corporate officers, including defendant Jerome Vaccaro, "collectively prepared and delivered a presentation" that included allegedly false statements. *Id.* at 394-95. The court dismissed the plaintiff's Section 10(b) claim against Vaccaro, finding that the plaintiff had not alleged "specific facts" from which the court could infer Vaccaro had the "ultimate authority" over the presentation. *See id.* Likewise, in *Washtenaw County Employees' Retirement System v. Walgreen Co.*, No. 15-CV-3187, 2019 WL 4597518 (N.D. Ill. Sept. 23, 2019), the plaintiff asserted that Walgreen's former chief financial officer was liable for the allegedly false statement in an investment analyst's report that "'Walgreens' did not back away from the FY16 EBIT target." *Id.* at *5. The court dismissed this claim, holding that this statement was "too broad to create any inference that [the] statement should be attributed" to Walgreen's chief financial officer, who was not identified as the maker of that statement. *Id.*

The same is true here. Just as the general attribution of a presentation to three different officers in *Universal American Corp.* did not create a plausible inference that one of those officers was the maker of the statements in that presentation, the Proxy's reference to information provided by "ELM management" does not create a plausible inference that Taylor made the statements containing that information. And just as a general reference to a statement by Walgreen was not sufficient to create a plausible inference that its chief financial officer made the statement, so too the Proxy's reference to "ELM" is not, without more, sufficient to identify

5

Taylor as the maker of any statement in the Proxy. The Magistrate Judge therefore correctly held that statements by "ELM" or its "management team" do not suffice to state a claim against Taylor under *Janus*. (*See* R&R at 15-17.)

*City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668 (3d Cir. 2023), on which Plaintiffs rely, is not to the contrary. In *City of Warren*, the court held that Prudential was the maker of a statement that Prudential's vice chairman, Robert Falzon, made to investment analysts because Falzon was specifically identified "by name as the speaker" of the allegedly false statement in the analyst's report. *Id.* at 688. Here, by contrast, FIII did not identify Taylor by name as the maker of any statement in the Proxy.

Finally, the Magistrate Judge's conclusion is bolstered by the fact that the group pleading doctrine "did not survive the enactment of the PSLRA." *Universal Am. Corp.*, 176 F. Supp. 3d at 396. That doctrine "is a judicial presumption that statements in group-published documents . . . are attributable to officers and directors who have day-to-day control or involvement in regular company operations." *Winer Family Tr. v. Queen*, 503 F.3d 319, 335 (3d Cir. 2007). Because Plaintiffs cannot rely on that presumption here, Plaintiffs cannot create a plausible inference that Taylor made statements attributed only to ELM and its management generally. *See, e.g.*, *In re Merck & Co., Inc. Sec., Derivative, & ERISA Litig.*, C.A. Nos. 05–1151 (SRC), 05–2367 (SRC), 2011 WL 3444199, at *28 (D.N.J. Aug. 8, 2011) ("The group pleading doctrine is not available to Plaintiffs, and thus statements in public reports and filings made by Merck cannot be attributed to [the company's general counsel] simply because he is a corporate insider with involvement in regular company operations.").[1]

---

[1] In the Amended Complaint, Plaintiffs identified just one allegedly false statement attributed to Taylor—*i.e.*, that he and other members of ELM's management had decades of relevant experience. (*Id.* ¶ 72(c).) But as the Magistrate Judge correctly noted, Plaintiffs conceded at oral

6

**II.     Magistrate Judge Hatcher Correctly Recommended that the Court Dismiss Plaintiffs' Section 20(a) Claim against Taylor**

To state a claim under Section 20(a), a plaintiff must plead: "'(i) a primary violation of the federal securities laws by a controlled person'; (ii) 'control of the primary violator by the defendant'; and (iii) 'that the controlling person was in some meaningful way a culpable participant in the primary violation.'" *In re Advance Auto Parts, Inc., Sec. Litig.*, No. CV 18-212-RGA, 2020 WL 599543, at *9 (D. Del. Feb. 7, 2020) (citation omitted). The Magistrate Judge recommended that the Court dismiss Plaintiffs' control-person claim against Taylor under Section 20 because Plaintiffs have not adequately alleged that any individual defendant committed a primary violation under Section 10(b). (*See* R&R at 27.) Plaintiffs argue that the Magistrate Judge erred because they have adequately alleged primary violations by "ELM, which issued the false financials at issue, and ELMS, which issued the Offering Memorandum and the Proxy." (Objection at 10.) This argument does not withstand scrutiny for several independent reasons.

*First*, as corporate entities, ELM and ELMS can act only through their agents. Plaintiffs therefore can assert a primary violation against ELM or ELMS under Section 10(b) only by adequately alleging that an officer of one of those entities made a false statement with scienter. *See, e.g.*, *City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.,* 713 F. Supp. 2d 378 at 403 (D. Del. 2010) ("[A] corporate defendant will not be held liable absent a showing that at least one individual officer who made, or participated in the making of, a false or misleading statement did so with scienter."). Because Plaintiffs have not stated a cognizable claim under

---

argument that they do not allege that this statement was false. (R&R at 16 n.4.) Moreover, the Magistrate Judge also correctly held that this true statement did not trigger a duty to disclose information about Taylor's equity transaction with ELM because that topic was unrelated to the subject matter of his statement. (*See id.*) Plaintiffs do not address, and thus concede, this point.

Section 10(b) against any of the individual defendants (or any other relevant corporate officer or director), they also have not stated a Section 10(b) claim against either ELM or ELMS.

*Second*, Plaintiffs have not adequately alleged that Taylor controlled ELM. To plead control, a plaintiff must allege that the defendant not only had the "'power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise,'" *AJZN, Inc. v. Yu*, No. CV 13-149 GMS, 2015 WL 331937, at *4 (D. Del. Jan. 26, 2015) (citation omitted), but also exercised "actual control over the transactions in question," *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 561 (D. Del. 2002) (citation omitted). Here, Plaintiffs allege merely that "the Individual Defendants had the power and ability to control the actions of ELM and/or ELMS and their employees" because of "their stock holdings, their positions, and their power to control public statements about ELM and ELMS." (AC ¶ 161.) Even setting aside Plaintiffs' impermissible group pleading, these allegations are not sufficient to create a plausible inference that Taylor (or any other defendant) controlled ELM. *See, e.g.*, *LLDVF, L.P. v. Dinicola*, No. CIV. A. 09-1280-JLL, 2010 WL 3210613, at *13 (D.N.J. Aug. 12, 2010) ("allegations of control have been found to be insufficient where the plaintiff merely alleged that the defendant owned thirty percent of the voting stock and selected three of nine board members"); *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d at 561 (dismissing Section 20(a) claim against chief executive officer and director because plaintiffs did not plead particularized facts showing that he controlled the corporate defendant with respect to the disclosures in question).

*Third*, ELMS is irrelevant to Plaintiffs' Section 20(a) claim against Taylor. Plaintiffs assert that ELMS is liable under Section 10(b) because it "issued the Offering Memorandum and the Proxy." (Objection at 10.) This is untrue; *FIII* issued these documents. (*See supra* at 2.)

ELMS was formed when ELM merged with FIII, which happened *after* FIII issued those documents and *after* the Merger and the PIPE Offering closed. (*See* AC ¶ 45.)  Because Plaintiffs do not allege, and do not even attempt to argue, that Taylor controlled FIII when it issued the Proxy, the Court should adopt the Magistrate Judge's recommendation to dismiss Plaintiffs' Section 20(a) claim against Taylor.

*Finally*, Plaintiffs have not adequately alleged that Taylor culpably participated in any alleged primary violation by a controlled person. "Culpable participation for purposes of Section 20(a) 'refers to either knowing and substantial participation in the wrongdoing or inaction with the intent to further the fraud or prevent its discovery.'" *In re Advance Auto Parts, Inc., Sec. Litig.*, 2020 WL 599543, at *10 (citation omitted). Plaintiffs do not, and cannot, point to any particularized allegations in the Amended Complaint supporting a plausible inference that Taylor participated in any allegedly false statements by any other person, let alone that he did so with the requisite intent. In fact, Plaintiffs ignore this element of their Section 20(a) claim in their Objection. The Court accordingly should adopt the Magistrate Judge's recommendation for this reason as well. *See id.* at *10 (finding that plaintiff did not plead culpable participation because "[t]he complaint does not allege that the [defendants] controlled the drafting or publishing of the press releases at issue, or that the [defendants] reviewed or signed them before publication"); *Stichting Pensioenfonds ABP v. Merck & Co.*, No. 05–5060 (SRC), 2012 WL 3235783, at *11 (D.N.J. Aug. 1, 2012) (allegations that defendant was involved in the placement of risk information on drug label did not satisfy the "culpable participation" requirement because it did not suggest that he participated to conceal risks).

## III.    The Court Should Deny Plaintiffs' Request for Leave to Amend Their Complaint

This Court may deny a request for leave to amend and dismiss with prejudice where "the Court does not have any reason to believe that amendment would cure the identified defects and

9

when the requesting party never submitted a draft amended complaint." *Huckabee v. Meta Platforms, Inc.*, CV 24-773-GBW, 2024 WL 4817657, at *7 n.1 (D. Del. Nov. 18, 2024) (cleaned up); *see also Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) ("A failure to submit a draft amended complaint is fatal to a request for leave to amend.") (cleaned up); D. Del. L.R. 15.1 (a party requesting leave to amend a pleading must attach "the proposed pleading as amended, complete with a handwritten or electronic signature," together with "a form of the amended pleading which shall indicate in what respect it differs from the pleading which it amends") (cleaned up).

Here, Plaintiffs request leave to amend in a footnote, but do not attach a proposed amended complaint to their Objection and do not explain how they would amend their complaint to "address the concerns stated in the R&R." (Objection at 10 n.8.) Nor can Plaintiffs remedy the pleading deficiencies that the Magistrate Judge identified as to Taylor. Nothing can change the fact that Taylor did not make the alleged misstatements in the Proxy, and did not have ultimate control over them. As such, the Court should dismiss the Amended Complaint with prejudice as to Taylor.

**CONCLUSION**

The Magistrate Judge issued a thorough and well-reasoned report recommending that this Court dismiss Plaintiffs' claims against Taylor in full. Plaintiffs' perfunctory objections to the portions of the Report and Recommendation pertaining to Taylor confirm that the Magistrate Judge's recommendation was correct. Moreover, Plaintiffs do not, and cannot, explain how they would amend their complaint to state cognizable claims against Taylor. Taylor therefore respectfully submits that the Court should adopt the Magistrate Judge's recommendations as to Taylor in all respects and dismiss Plaintiffs' claims against Taylor with prejudice.

Dated: March 7, 2025

OF COUNSEL:

Lawrence Gerschwer
Joseph A. Matteo
Charlotte H. Underwood
390 Madison Avenue, 12th Floor
New York, NY 10017
Telephone: (646) 746-2000
Fax: (646) 746-2001
Lawrence.Gerschwer@btlaw.com
Joseph.Matteo@btlaw.com
Charlotte.Underwood@btlaw.com

**BARNES & THORNBURG LLP**

By: */s/* Gabriella Mouriz
Michael J. Maimone (DE No. 3592)
Gabriella Mouriz (DE No. 6993)
222 Delaware Avenue, Suite 1200
Wilmington, DE 19801
Telephone: (302) 300-3471
Fax: (302) 300-3456
MMaimone@btlaw.com
GMouriz@btlaw.com

*Attorneys for Defendant James Taylor*

11

## CERTIFICATE OF SERVICE

I, Gabriella Mouriz, hereby certify that on March 7, 2025, a true and correct copy of **Defendant James Taylor's Response to Lead Plaintiffs' Objections to the Magistrate Judge's Report and Recommendation Granting Taylor's Motion to Dismiss the Amended Class Action Complaint** was filed electronically with the Court and served on all counsel of record via the Court's Electronic Filing System.

Dated: March 7, 2025

/s/ Gabriella Mouriz
Gabriella Mouriz

12