**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| SHMUEL LEVY, Individually and on Behalf of All Others Similarly Situated,<br><br>                                        Plaintiff,<br><br>                         vs.<br><br>JASON LUO, JAMES TAYLOR, ALBERT LI, MARSHALL KIEV, DAVID BORIS, and BDO USA, LLP,<br><br>                                        Defendants. | Civil Action No. 1:23-cv-00653-GBW-LDH<br><br><u>CLASS ACTION</u> |

**DEFENDANT JASON LUO'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO THE**
**<u>REPORT AND RECOMMENDATION OF JUDGE LAURA D. HATCHER</u>**

OF COUNSEL:

Andrew J. Ehrlich
Gregory F. Laufer
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel.:  (212) 373-3000
aehrlich@paulweiss.com
glaufer@paulweiss.com

Dated:  March 7, 2025

PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  Matthew D. Stachel (No. 5419)
  1313 N. Market Street, Suite 806
  Post Office Box 32
  Wilmington, DE 19899-0032
  Tel.:  (302) 655-4410
  mstachel@paulweiss.com

*Attorneys for Defendant Jason Luo*

## TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDINGS ...............................................................................1

STATEMENT OF FACTS .......................................................................................................1

ARGUMENT .........................................................................................................................3

I.     The Report and Recommendation Correctly Concluded that Luo Was Not the
       "Maker" of Allegedly False and Misleading Statements, Warranting Dismissal of
       the Section 10(b) Claim against Him. ........................................................................3

II.    The Report and Recommendation Correctly Concluded that Plaintiffs Waived
       Their Section 10(a) & (c) Scheme Liability Claim Against Luo. .................................5

III.   The Report and Recommendation Correctly Concluded Plaintiffs' Control Person
       Claim Under Section 20(a) Should Be Dismissed. .....................................................6

IV.    Plaintiffs' Bare Request for Leave to Amend Is Improper and Should Be Denied. .............9

CONCLUSION......................................................................................................................10

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allegheny Cnty. Emps. Ret. Sys.* v. *Energy Transfer LP*, 744 F. Supp. 3d 350 (E.D. Penn. 2024) ..............................................................................................................7

*Amgen Inc.* v. *Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013)..................................................................................................................6

*Blakeman* v. *Freedom Rides, Inc.*, No. 12-416-LPS-CJB, 2013 WL 3503165 (D. Del. July 10, 2013)...........................................6

*City of Edinburgh Council* v. *Pfizer, Inc.*, 754 F.3d 159 (3d Cir. 2014)...............................................................................................6

*City of Roseville Emps. Ret. Sys.* v. *Horizon Lines, Inc.*, 686 F. Supp. 2d 404 (D. Del. 2009) ....................................................................................................................................7

*City of Warren Police & Fire Ret. Sys.* v. *Prudential Fin., Inc.*, 70 F.4th 668 (3d Cir. 2023) ......................................................................................................4

*In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546 (D. Del. 2002) .............................................8

*Fletcher-Harlee Corp.* v. *Pote Concrete Contr., Inc.*, 482 F.3d 247 (3d Cir. 2007).........................................................................................................10

*Huckabee* v. *Meta Platforms, Inc.*, No. CV 24-773-GBW, 2024 WL 4817657 (D. Del. Nov. 18, 2024).......................................9

*Janus Capital Grp., Inc.* v. *First Derivative Traders*, 564 U.S. 135 (2011)...................................................................................................................3

*LabMD Inc.* v. *Boback*, 47 F.4th 164 (3d Cir. 2022) ...............................................................................................10

*Matrixx Initiatives, Inc.* v. *Siracusano*, 563 U.S. 27 (2011)....................................................................................................................6

*In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*, Nos. 05-1151 (SRC), 05-2367 (SRC), 2011 WL 344419 (D.N.J. Aug. 8, 2011)......................5

*Nat'l Junior Baseball League* v. *PharmaNet Dev. Grp, Inc.*, 720 F. Supp. 2d 517 (D.N.J. 2010) ..........................................................................................8

*In re Phillips Petroleum Sec. Litig.*, 738 F. Supp. 825 (D. Del. 1990).........................................................................................8

*Shaw* v. *New Castle Cnty.*,
   No. 20-950-CFC, 2021 WL 4125648 (D. Del. Sept. 9, 2021) ..................................................5

*Skeway* v. *China Nat'l Gas, Inc.*,
   2012 WL 2877645 (D. Del. July 6, 2012) ...............................................................................8

*In re Suprema Specialties, Inc. Sec. Litig.*,
   438 F.3d 256 (3d Cir. 2006) .....................................................................................................8

*Takata* v. *Riot Blockchain, Inc.*,
   2020 WL 2079375 (D.N.J. Apr. 30, 2020) ...............................................................................5

*Universal Am. Corp.* v. *Partners Healthcare Sols. Holdings*, *L.P.*,
   61 F. Supp. 3d 391 (D. Del. 2014) ........................................................................................4, 5

*Washtenaw Cnty. Emps.' Ret. Sys.* v. *Walgreen Co.*,
   No. 15-3187, 2019 WL 4597518 (N.D. Ill. Sept. 23, 2019) ....................................................5

**Statutes**

15 U.S.C. § 78u-4(b)(1) ....................................................................................................................6

Securities Exchange Act of 1934 §10(b) ................................................................................ *passim*

**Other Authorities**

Rule 9(b) .......................................................................................................................................4, 6

Rule 10b-5 ...................................................................................................................................1, 5, 6

iii

## NATURE AND STAGE OF PROCEEDINGS

On February 7, 2025, Magistrate Judge Laura D. Hatcher issued a 28-page, thoroughly reasoned and fully supported Report and Recommendation ("R&R") recommending dismissal of Counts I (violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Act") and Rule 10b-5) and II (violation of  Section 20(a) of the Act) of Plaintiffs' Amended Complaint as against all Defendants.  D.I. 75 at 1, 28.  On February 21, 2025, Plaintiffs filed Objections to the R&R ("Objections").  D.I. 76.  Defendant Jason Luo now opposes Plaintiffs' Objections on several grounds.  First, the R&R correctly concluded that Luo did not make any false or misleading statements, which is fatal to Plaintiffs' Section 10(b) claim against him.  Second, the R&R correctly concluded that Plaintiffs waived their Section 10(a) and (c) scheme liability claim against Luo.  Third, the R&R correctly concluded that Plaintiffs' control person claim against Luo should be dismissed because liability under Section 20(a) is derivative.  Accordingly, Luo respectfully requests that the Court adopt in full Judge Hatcher's recommendation to dismiss Counts I and II against him, with prejudice.

## STATEMENT OF FACTS

*ELMS and Defendant Luo.*  In August 2020, Luo cofounded a company called Electric Last Mile ("ELM") with defendant James Taylor.  ¶¶ 22–23, 32. [1]  In June 2021, ELM went public through a de-SPAC transaction by merging with a SPAC called Forum III (the "Merger"), forming Electric Last Mile Solutions Inc. ("ELMS").  ¶ 1.  Luo thereafter served as ELMS's Executive Chairman and Chairman of the Board until his resignation on February 1, 2022.  ¶ 22; Ex. 6 at 2.  The day before the Merger closed, FIII completed a PIPE offering (the "PIPE

---

[1]    "¶" refer to the Amended Class Action Complaint (the "Amended Complaint").  *See* D.I. 23.

Offering") for a total of $130 million in gross offering proceeds.  ¶ 44.  ELMS filed for bankruptcy on June 14, 2022, and is not named as a defendant in this action.  ¶ 20.

*The 2020 Equity Transactions.*  Prior to the 2020 Equity Transactions, Luo owned 100% of ELM through an entity he controlled called AJ Capital, Inc.  ¶ 33.  On November 19, 2020, ELM issued 78,016 shares of ELM common stock to entities owned by Luo, 6,461 shares to an entity owned by Taylor, and 14,523 shares to four other purchasers, all for $10 per share (the "November 2020 Equity Transaction").  ¶¶ 48–49.  The November 2020 Equity Transaction was disclosed in five separate disclosures filed with the SEC.  *See* Exs. 1–5.  On December 8, 2020, Luo sold 1,000 shares of ELM common stock held through AJ Capital, Inc. to an entity jointly owned and controlled by ELM's Chief Operating Officer and General Counsel, also at $10 per share (the "December 2020 Equity Transaction" and, together with the November 2020 Equity Transaction, the "2020 Equity Transactions").  ¶ 50.  Details relating to the December 2020 Equity Transaction, including Luo's initial acquisition of those shares, were also disclosed in the five public disclosures noted above.  *E.g.*, Ex. 4 at F-99.

BDO and other professionals structured and advised on the 2020 Equity Transactions.  ¶ 12.  In a letter from ELMS to BDO dated February 9, 2022, and publicly filed with the SEC on February 14, 2022, ELMS's Audit Committee stated:  "BDO Tax was involved in structuring such transactions [*i.e.*, the 2020 Equity Transactions] and . . . as [BDO has] confirmed to us, BDO USA was aware of those transactions well in advance of and in connection with completion of the audit.  The transactions were contemporaneously discussed with multiple professional advisors, including representatives of BDO."  ¶ 120; Ex. 10.

*The PIPE Offering and Merger Agreement.*  On December 10, 2020, ELM and FIII entered into a definitive merger agreement (the "Merger Agreement").  ¶¶ 34.  The same day,

2

FIII and the PIPE Offering investors executed the PIPE offering memorandum for a private placement of $130 million in unregistered common stock.  ¶ 35.

*The Proxy Statement and Merger.*  On June 9, 2021, FIII issued its Proxy Statement disclosing information related to the proposed merger in advance of the June 24, 2021 special meeting to vote to approve the Merger.  ¶ 43.  The notes to the ELM financial statements that were part of the Proxy Statement disclosed the November 2020 Equity Transaction, ¶ 58, and the Proxy Statement contained BDO's independent audit opinion that ELM's historical financial results as included in the Proxy fairly presented ELM's financial position in conformity with U.S. generally accepted accounting principles.  ¶ 64.  FIII shareholders approved the Merger at a special meeting held on June 24, 2021.  ¶ 44.  Also on June 24, 2021, the PIPE Offering closed, subject to the Merger closing, which it did the following day. ¶ 45.

## ARGUMENT

I.   **The Report and Recommendation Correctly Concluded that Luo Was Not the "Maker" of Allegedly False and Misleading Statements, Warranting Dismissal of the Section 10(b) Claim against Him.**

In the R&R, Judge Hatcher recommended dismissal of Count I's section 10(b) claim against Luo because Plaintiffs failed to plead facts showing Luo was the "maker" of any allegedly false or misleading statements.  D.I. 75 at 13-14, 17.  Judge Hatcher correctly applied binding case law, providing that under Section 10(b), "[t]he maker of a statement is a 'person or entity with ultimate authority over the statement, including its content and whether and how to communicate it,'" *id.* at 13 (quoting *Janus Capital Grp., Inc.* v. *First Derivative Traders*, 564 U.S. 135, 142 (2011)), and that to maintain a claim, a complaint must state "with particularity, each fraudulent statement or representation, its materiality, which specific defendant made the representation, when it was made, why it was false or misleading, scienter, and explain how [the

3

plaintiff] relied on it," *id.* (quoting *Universal Am. Corp.* v. *Partners Healthcare Sols. Holdings*, *L.P.*, 61 F. Supp. 3d 391, 397 (D. Del. 2014)).

The R&R properly reasoned that Plaintiffs failed to meet this standard because the "Amended Complaint directs no individualized allegations at Luo" and instead makes general allegations that the Proxy and other SEC filings contain misstatements. *Id.* at 14. Thus, "the 'maker' of those statements are the documents, not the Individual Defendants." *Id.* Judge Hatcher further observed: "Nowhere does the Amended Complaint allege that Luo . . . drafted the Proxy, which was filed by FIII. Plaintiffs neither allege that Luo, Taylor, or Li were officers or directors of FIII nor that they had ultimate authority with respect to the Proxy." *Id.* at 14-15.

In three brief sentences, Plaintiffs offer a half-hearted objection to this portion of Judge Hatcher's R&R, arguing that she erred in finding Luo did not "make" alleged misstatements because Luo was an ELM senior manager and "had ultimate authority over ELM's false financial statements set forth in the Proxy." D.I. 76 at 9. That terse argument falls well short of the mark. Judge Hatcher squarely addressed the issue of whether Plaintiffs sufficiently pled that Luo had ultimate authority over ELM's financial statements set forth in the Proxy and found that they did not because "the Amended Complaint is devoid of any allegations that [Luo] actually made or controlled any particular statement." D.I. 75 at 16.

It is not nearly enough for Plaintiffs to plead that "'information included in th[e] proxy statement in relation to ELM [was] provided by ELM and its management team.'" D.I. 76 at 9 (quoting D.I. 35-2 at 28). Under Rule 9(b) or the PLSRA, *specific* statements must be *directly* attributed to an individual for that individual to be liable. *See* D.I. 75 at 15-16 (citing *City of Warren Police & Fire Ret. Sys.* v. *Prudential Fin., Inc.*, 70 F.4th 668, 686 (3d Cir. 2023); *In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*, Nos. 05-1151 (SRC), 05-2367 (SRC),

4

2011 WL 344419, at *25 (D.N.J. Aug. 8, 2011); *Washtenaw Cnty. Emps.' Ret. Sys.* v. *Walgreen Co.*, No. 15-3187, 2019 WL 4597518, at *5 (N.D. Ill. Sept. 23, 2019)).  Regardless of whether the "ELM management team" provided information for the Proxy, the Amended Complaint is devoid of the type of specific statements directly attributed to Luo that would be necessary for his liability under Section 10(b).  *See* D.I. 75 at 16-17.[2]

Accordingly, Plaintiffs' objection should be overruled, Judge Hatcher's R&R should be adopted, and the section 10(b) claim against Luo should be dismissed.

**II.      The Report and Recommendation Correctly Concluded that Plaintiffs Waived Their Section 10(a) & (c) Scheme Liability Claim Against Luo.**

In his Motion to Dismiss, Luo showed that Plaintiffs failed to plausibly plead scheme liability as to him under Rules 10b-5(a) & (c) because, among other things, "Plaintiffs allege no facts whatsoever showing that Luo engaged in any specific act of deception or manipulation." D.I. 45 at 13; *see also Takata* v. *Riot Blockchain, Inc.*, 2020 WL 2079375, at *14 (D.N.J. Apr. 30, 2020) (explaining that a plaintiff must set forth "what manipulative [or deceptive] acts were performed, which defendants performed them, when the manipulative [or deceptive] acts were performed and what effect the scheme had on the securities at issue") (citation and internal quotation marks omitted).

In the R&R, Judge Hatcher correctly found that "Plaintiffs did not respond to this argument in their Answering Brief.  Accordingly, any argument in opposition is waived and I recommend dismissal as to Luo on this basis as well."  D.I. 75 at 24 (citing *Shaw* v. *New Castle*

---

[2]    Judge Hatcher contrasted Plaintiffs' facially insufficient allegations with the allegations in *Universal Am.*, 176 F. Supp. 3d 387, certain of which were found to be sufficient because they "contained specific allegations regarding the individual corporate officers," including, for example, the allegation "that a specific individual defendant made numerous oral misrepresentations at three specific meetings with the board of directors."

*Cnty.*, No. 20-950-CFC, 2021 WL 4125648, at *2 (D. Del. Sept. 9, 2021), and *Blakeman* v.

*Freedom Rides, Inc.*, No. 12-416-LPS-CJB, 2013 WL 3503165, at *13 (D. Del. July 10, 2013)).

Plaintiffs do not object to Judge Hatcher's recommendation that the scheme liability

claim against Luo be dismissed. *See generally* D.I. 76. Accordingly, Plaintiffs have confirmed

their total abandonment of their scheme liability claim against Luo, and the Court should adopt

Judge Hatcher's recommendation to dismiss the scheme liability claim against Luo.

**III.    The Report and Recommendation Correctly Concluded Plaintiffs' Control Person Claim Under Section 20(a) Should Be Dismissed.**

Finding that Plaintiffs failed to state a Rule 10b-5 and Section 10(b) claim, the R&R

further recommended "that Count II be dismissed as to Luo . . . because liability under § 20(a) is

derivative." D.I. 75 at 27 (citing *City of Edinburgh Council* v. *Pfizer, Inc.*, 754 F.3d 159 (3d Cir.

2014)). Plaintiffs object to this recommendation, arguing that the Complaint adequately alleged

predicate Section 10(b) violations by ELM and ELMS and stating that those entities are not

defendants only because of ELMS' bankruptcy. D.I. 76 at 10. Plaintiffs' objection is meritless.

*First*, Plaintiffs' incorrectly assume that the Amended Complaint would adequately plead

predicate Section 10(b) claims against ELM or ELMS if those entities were defendants in this

case. To state a claim based on Section 10(b) against ELM and ELMS, the Amended Complaint

would need to allege a "(1) a material misrepresentation or omission by the defendant; (2)

scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of

a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss

causation" *against ELM or ELMS. See Amgen Inc.* v. *Conn. Ret. Plans & Tr. Funds*, 568 U.S.

455, 460-61 (2013) (quoting *Matrixx Initiatives, Inc.* v. *Siracusano*, 563 U.S. 27, 37-38 (2011)). [3]

---

3    Further, claims under Sections 10(b) and 20(a) of the Act are subject to the strict pleading requirements of Rule 9(b) and the PSLRA, which require that fraud be pleaded with particularity. Fed. R. Civ. P. 9(b); 15 U.S.C. § 78u-4(b)(1).

To prove a Section 10(b) claim against a corporate entity, a plaintiff must plead with particularity that an officer of that entity engaged in violative conduct, with scienter, which could then be imputed to the company. *See City of Roseville Emps. Ret. Sys.* v. *Horizon Lines, Inc.*, 686 F. Supp. 2d 404, 421 (D. Del. 2009) ("When a plaintiff brings § 10(b) and Rule 10b–5 claims against a corporate defendant, we must determine whether plaintiffs have adequately pleaded the requisite state of mind on the part of an individual officer alleged to have made . . . false or misleading statements on behalf of the corporation."); *Allegheny Cnty. Emps. Ret. Sys.* v. *Energy Transfer LP*, 744 F. Supp. 3d 350, 391 (E.D. Penn. 2024) (In a 10b-5 action, "[a]s to corporate liability, a plaintiff must prove that an agent of the corporation committed a culpable act with the requisite scienter, and that the act (and accompanying mental state) are attributable to the corporation."). In this case, Plaintiffs would need to show that Individual Defendants violated Section 10(b) as officers of ELM and ELMS—Plaintiffs failed to do so. *See* D.I. 75 at 12. Plaintiffs' argument that they have pled predicate Section 10(b) violations by ELM and ELMS because those entities issued the financials and the Offering Memorandum and Proxy at issue is not sufficient. *See* D.I. 76 at 10. The elements of a Section 10(b) claim are not met by the Amended Complaint as against any officers of ELM and ELMS, and thus, are not met against ELM or ELMS themselves.

*Second*, even assuming Plaintiffs could pursue claims under Section 20(a) against the Individual Defendants in the absence of a predicate violation, the Court should still adopt the recommendation to dismiss this claim as against Luo because Plaintiffs did not plausibly allege that Luo controlled FIII (which was merged with ELM to form ELMS) before the Merger. As set out in his Motion to Dismiss, "Luo became ELMS's Executive Chairman and Chairman of the Board after the Merger between FIII and ELM, but he had no pre-Merger role at FIII" and

7

"[b]ecause the Complaint only alleges ELMS is liable for FIII's alleged Section 10(b) violations in the Proxy and other SEC filings," Luo cannot have been a control person of those pre-Merger statements.  D.I. 45 at 20 (citing *Skeway* v. *China Nat'l Gas, Inc.*, 2012 WL 2877645, at \*1 (D. Del. July 6, 2012)).  Plaintiffs make no contrary argument in their Opposition to Motions to Dismiss or their Objections.  *See generally* D.I. 51 and D.I. 76.

*Third*, Plaintiffs' conclusory allegation that all "Individual Defendants acted as controlling persons of ELM and/or ELMS [...] [b]y virtue of their stock holdings, their positions, and their power to control public statements about ELM and ELMS" is insufficient to plead control person liability.  ¶ 161.  Plaintiffs were required to plead that the control person had "actual control"; that is, "the practical ability to direct the actions of the controlled person."  *In re Phillips Petroleum Sec. Litig.*, 738 F. Supp. 825, 841 (D. Del. 1990).[4]  "It is not automatically assumed that a corporate officer is familiar with certain facts just because these facts are important to the company's business; there must be other, individualized allegations that further suggest that the officer had knowledge of the fact in question."  *Nat'l Junior Baseball League* v. *PharmaNet Dev. Grp, Inc.*, 720 F. Supp. 2d 517, 556 (D.N.J. 2010); *see also In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 561-62 (D. Del. 2002) ("[U]nsupported allegations regarding management responsibilities fail to allege with the requisite specificity that the individual defendants played a role in the alleged nondisclosures.").  The Complaint "directs no individualized allegations at Luo" and "eschews describing each Individual Defendant's role in

---

[4]    Unlike *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256 (3d Cir. 2006), on which the Plaintiffs rely, Plaintiffs fail to "detail[] the manner in which [control person individual defendants] are alleged to have tightly controlled [controlled entity's] business and operations."  *Suprema*, 438 F.3d at 386.

making any of the alleged fraudulent statements," D.I. 75 at 14, and thus, Plaintiffs' allegations are plainly inadequate to maintain a control person liability claim against Luo under §20(a).

*Fourth*, the Amended Complaint fails to plead that Luo was a culpable participant in any alleged Section 10(b) violation. As Luo set out in his Reply Brief in Further Support of his Motion to Dismiss, Plaintiffs' only allegations against Luo are that he "(i) owned ELM and was a member of management; (ii) signed the merger agreement; (iii) participated generally in merger negotiations; and (iv) participated in the 2020 Equity Transactions." D.I. 57 at 10 (citing D.I. 51 at 49). This is insufficient, and there is no well-pleaded allegation allowing the inference that Luo actually participated in the allegedly false statements by ELM, as opposed to the merger negotiations. *See In re Advance Auto Parts, Inc. Sec. Litig.*, 2020 WL 599543, at *10 (D. Del. Feb. 7, 2020) (dismissing Section 20(a) claim where plaintiff failed to allege the defendants "controlled the drafting or publishing of the [statements] at issue, or that [they] reviewed or signed them before publication"). Plaintiffs failed to make a persuasive argument regarding Luo's culpable participation, and failed to raise the issue altogether in their Objections.

**IV.    Plaintiffs' Bare Request for Leave to Amend Is Improper and Should Be Denied.**

In a footnote to the conclusion of their Objections, Plaintiffs make an unsupported request for leave to submit a further amended complaint to address the deficiencies in the Amended Complaint detailed by the R&R, suggesting such leave should be "freely given." *See* D.I. 76 at 10 n.8 (citation and internal quotation marks omitted). Plaintiffs' request should be denied. It is bedrock law in the Third Circuit that this Court has discretion to dismiss a complaint with prejudice where, as is the case here, "the Court does 'not have any reason to believe that amendment would cure the identified defects' and when the requesting party 'never submitted a draft amended complaint.'" *Huckabee* v. *Meta Platforms, Inc.*, No. CV 24-773-GBW, 2024 WL 4817657, at *7 n.1 (D. Del. Nov. 18, 2024) (quoting *LabMD Inc.* v. *Boback*, 47

9

F.4th 164, 192-93 (3d Cir. 2022)).  Plaintiffs' unsupported request for leave to amend does not

provide any basis to show that amendment would not be futile and Plaintiffs fail to identify any

additional facts that would cure the defects in the operative complaint.  *See id*; *see also Fletcher-*

*Harlee Corp.* v. *Pote Concrete Contr., Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) ("[F]ailure to

submit a draft amended complaint is fatal to a request for leave to amend.").  Accordingly, the

Amended Complaint should be dismissed with prejudice.

## CONCLUSION

The Court should adopt the R&R, and Plaintiffs' claims against Luo should be dismissed

in their entirety and with prejudice.

<table>
<tr><td></td><td>PAUL, WEISS, RIFKIND,<br>  WHARTON & GARRISON LLP</td></tr>
<tr><td>OF COUNSEL:</td><td>By:  <em>/s/ Matthew D. Stachel</em></td></tr>
<tr><td></td><td>Matthew D. Stachel (No. 5419)</td></tr>
<tr><td>Andrew J. Ehrlich</td><td>1313 N. Market Street, Suite 806</td></tr>
<tr><td>Gregory F. Laufer</td><td>Post Office Box 32</td></tr>
<tr><td>PAUL, WEISS, RIFKIND,</td><td>Wilmington, DE 19899-0032</td></tr>
<tr><td>  WHARTON & GARRISON LLP</td><td>Tel.:  (302) 655-4410</td></tr>
<tr><td>1285 Avenue of the Americas</td><td>mstachel@paulweiss.com</td></tr>
<tr><td>New York, NY 10019-6064</td><td></td></tr>
<tr><td>Tel.:  (212) 373-3000</td><td><em>Attorneys for Defendant Jason Luo</em></td></tr>
<tr><td>aehrlich@paulweiss.com</td><td></td></tr>
<tr><td>glaufer@paulweiss.com</td><td></td></tr>
</table>

Dated:  March 7, 2025

10