IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| SHMUEL LEVY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>JASON LUO, JAMES TAYLOR, ALBERT LI, MARSHALL KIEV, DAVID BORIS, and BDO USA, LLP,<br><br>Defendants. | Civil Action No. 23-653-GBW |

---

Jeffrey M. Gorris, David Hahn, FRIEDLANDER & GORRIS, P.A., Wilmington, DE; Chad Johnson, Noam Mandel, Desiree Cummings, Jonathan Zweig, ROBBINS GELLER RUDMAN & DOWD LLP, New York, NY.

*Counsel for Plaintiff*

Matthew D. Stachel, PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, Wilmington, DE; Andrew J. Ehrlich, Gregory F. Laufer, PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, New York, NY.

*Counsel for Defendant Jason Luo*

Michael J. Maimone, Gabriella Mouriz, BARNES & THORNBURG LLP, Wilmington, DE; Lawrence Gerschwer, Joseph A. Matteo, Charlotte H. Underwood, BARNES & THORNBURG LLP, New York, NY.

*Counsel for Defendant James Taylor*

Michael W. McDermott, Peter C. McGivney, Zachary J. Schnapp, BERGER MCDERMOTT LLP, Wilmington, DE; Marlon A. Primes, BRENNAN, MANNA & DIAMOND LLC, Cleveland, OH.

*Counsel for Defendant Albert Li*

Ethan H. Townsend, Daniel T. Menken, MCDERMOTT WILL & EMERY LLP, Wilmington, DE; Gregory G. Ballard, Joel C. Haims, MCDERMOTT WILL & EMERY LLP, New York, NY.

*Counsel for Defendant BDO USA, LLP*

Tammy L. Mercer, Lakshmi A. Muthu, M. Paige Valeski, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE; Jonathan L. Hochman, Karen M. Steel, Jenny C. Gu, SCHINDLER COHEN & HOCHMAN LLP, New York, NY.

*Counsel for Defendants Marshall Kiev and David Boris*

## **MEMORANDUM OPINION**

December 5, 2025
Wilmington, Delaware

                                                                                                  GREGORY B. WILLIAMS
                                                                       UNITED STATES DISTRICT JUDGE

On November 14, 2023, Shmuel Levy ("Mr. Levy," "Levy" or "Plaintiff") filed an Amended Class Action Complaint ("Amended Complaint") (D.I. 23) alleging securities law violations, on behalf of all direct purchasers of common stock of Electric Last Mile Solutions, Inc. ("ELMS" or "Company") in a private investment in public entity ("PIPE") offering, against Jason Luo ("Mr. Luo" or "Luo"), James Taylor ("Mr. Taylor" or "Taylor"), Albert Li ("Mr. Li" or "Li"), Marshall Kiev ("Mr. Kiev" or "Kiev"), David Boris ("Mr. Boris" or "Boris") (together with Luo, Taylor, Li, and Kiev, the "Individual Defendants"), and BDO USA, LLP ("BDO") (together with the Individual Defendants, "Defendants").

On February 7, 2025, Magistrate Judge Laura D. Hatcher ("Judge Hatcher") entered a Report and Recommendation ("Report and Recommendation") (D.I. 75) recommending that the Court grant the following motions:

1. Defendant James Taylor's Motion to Dismiss the Amended Class Action Complaint ("Taylor's Motion") (D.I. 33), which is fully briefed (D.I. 34; D.I. 51; D.I. 54);

2. Defendant Albert Li's Motion to Dismiss the Amended Class Action Complaint ("Li's Motion") (D.I. 36), which is fully briefed (D.I. 37; D.I. 51; D.I. 55);

3. Defendant BDO USA, LLP's Motion to Dismiss Amended Class Action Complaint ("BDO's Motion") (D.I. 38), which is fully briefed (D.I. 39; D.I. 51; D.I. 56);

4. Defendants David Boris and Marshall Kiev's Motion to Dismiss the Amended Class Action Complaint ("Boris and Kiev's Motion") (D.I. 41), which is fully briefed (D.I. 42; D.I. 51; D.I. 59); and

3

5. Defendant Jason Luo's Motion to Dismiss the Amended Class Action Complaint ("Luo's Motion") (D.I. 44), which is fully briefed (D.I. 45; D.I. 51; D.I. 57).

On February 21, 2025, Levy filed his Objections to Report and Recommendation ("Objections") (D.I. 76), objecting to Judge Hatcher's Report and Recommendation on four distinct grounds.[1] On March 7, 2025, Taylor, BDO, Li, and Luo filed responses to Levy's Objections. D.I. 77; D.I. 78, D.I. 79; D.I. 80. For the following reasons, the Court sustains-in-part and overrules-in-part the Objections and adopts-in-part the Report and Recommendation.

## I. FACTUAL BACKGROUND

The Court sets forth the relevant factual background of this action as stated by Judge Hatcher: "This dispute arises out of [Plaintiff's and the putative class's] $130 million participation and investment in a PIPE offering conducted in connection with the June 25, 2021 merger of FIII, a special purpose acquisition company ('SPAC'), and Electric Last Mile, Inc. ('ELM')." D.I. 75 at 1. "The post-merger company, [ELMS], filed for bankruptcy and is not a defendant in this

---

[1] As reflected in Levy's Objections, counsel for Levy (Robbins Gellar Rudman & Dowd LLP) appears to presume representation of the putative members of the class. D.I. 76 at 1 ("*Plaintiffs* respectfully submit that Magistrate Judge Hatcher erred in recommending dismissal." (emphasis added)). However, "attorneys in [a] putative class action do not represent [putative members] as class counsel." *Alwert v. Cox Communs., Inc.*, 835 F.3d 1195, 1203 (10th Cir. 2016). In fact, putative "class members are not represented parties," or even "parties[,] at all." *Lloyd v. Covanta Plymouth Renewable Energy, LLC*, 532 F. Supp. 3d 259, 261 (E.D. Pa. 2021); *see also N. Sound Capital LLC v. Merck & Co.*, 938 F.3d 482, 492 (3d Cir. 2019) (confirming that it "is axiomatic that . . unnamed class member[s] [are] not '[parties] to the class-action litigation before the class is certified'" (quoting *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011))). Even were the class certified, appointment of Robbins Gellar Rudman & Dowd LLP as class counsel must also precede the firm's representation of the certified class. *Roberson v. Kan. City S. Ry. Co.*, No. 4:22-cv-00358-RK, 2022 U.S. Dist. LEXIS 255181, at *16 (W.D. Mo. Sep. 15, 2022) (recognizing that "class members [are] not represented by counsel until class is certified *and* class counsel [is] appointed" (emphasis added)).

action." *Id.* at 1-2. The Amended Complaint "asserts claims under § 10(b) of the Securities Exchange Act of 1934 (the 'Exchange Act') against all Defendants and SEC Rule 10b-5 (Count I) and § 20(a) of the Exchange Act against the Individual Defendants." *Id.* at 2.

"FIII was a SPAC created with the sole purpose of identifying and merging with a privately held business." *Id.* "Following an initial public offering in August of 2020, FIII identified ELM, a company created by Defendants Luo and Taylor to manufacture utility vehicles for 'last mile' deliveries, as their target." *Id.* (citation omitted). "On September 18, 2020, FIII and ELM executed a letter of intent to merge the two companies, estimating the value of the post-merger enterprise at $1.3 billion." *Id.* (citation omitted). "On December 11, 2020, FIII announced that the two companies had executed a definitive merger agreement, subject to shareholder approval and provided that '[ELM would] ensure that none of the information supplied by or on its behalf for inclusion or incorporation . . . in the Proxy Statement [would] . . . contain any untrue statements of a material fact or omit to state any material fact.'" *Id.* (citation omitted). "On June 9, 2021, FIII issued a Proxy to solicit votes for the merger; on June 24, 2021, FIII shareholders voted to approve the merger and close the PIPE offering." *Id.* (citation omitted).

"Prior to the announcement and the Proxy, on November 19, 2020, Luo and Taylor caused ELM to issue 99,000 shares of ELM common stock for $10 per share, of which approximately 79% went to entities owned and controlled by Luo and 6.5% went to entities owned and controlled by Taylor (the 'November 2020 Equity Transaction')." *Id.* (citation omitted). "Each of the shares could be exchanged for over 800 shares of ELMS common stock that was also valued at $10 per share; thus, each ELM share purchased for $10 effectively became worth $8,000 post-merger when exchanged for ELMS common stock." *Id.* at 2-3 (citation omitted). "On December 8, 2020, Luo sold 1,000 shares of ELM common stock to an entity owned and controlled by Hailiang (Jerry) Hu

and Benjamin Wu, ELM's Chief Operating Officer and General Counsel, respectively (the 'December 2020 Equity Transaction' and, in combination with the November 2020 Equity Transaction, the '2020 Equity Transactions')." *Id.* at 3 (citation omitted). "The Proxy disclosed the fact of the 2020 Equity Transactions, but Plaintiff[] allege[s] that Defendants failed to properly record the share-based compensation at fair market value or disclose that the sale of shares was below fair market value." *Id.* (citation omitted).

"On December 10, 2020, FIII and the PIPE investors executed the Offering Memorandum—a private placement of $130 million worth of shares of unregistered common stock of FIII." *Id.* (citation omitted). "The Offering Memorandum stated that PIPE investors were to rely exclusively on FIII's SEC filings, and that closing was contingent upon the accuracy and truthfulness of those filings." *Id.* (citation omitted). "The Offering Memorandum also represented and warranted that the SEC filings complied with all requirements of the Securities Act and Securities Exchange Act of 1934 and none of them 'contained any untrue statement [or omission] of a material fact.'" *Id.* (citation omitted). "The Offering Memorandum provided that the agreement with PIPE investors was subject to termination if, among other things, FIII's SEC filings were not true and correct in all material respects until the time of closing." *Id.* (citation omitted). "FIII was required to notify all PIPE investors if any representations contained therein were no longer accurate." *Id.* (citation omitted).

"Plaintiff[] alleges misrepresentations across several documents, most of which are related to the 2020 Equity Transactions." *Id.* "For example, Plaintiff[] allege[s] that the Proxy: (i) stated that ELM's senior executives received *de minimus* compensation in 2020, when in fact they received hundreds of millions in equity compensation by virtue of the 2020 Equity Transactions; (ii) failed to disclose that the $10 per share price paid for shares from the November 2020 Equity

6

Transaction was substantially below market value and further failed to disclose the existence of the December 2020 Equity Transaction; and (iii) contained materially false and misleading audited financial statements for ELM in 2020, provided by BDO." *Id.* at 3-4 (citations omitted). "BDO's audit opinion stated, in relevant part:

> We have audited the accompanying balance sheet of E[LM] . . . as of December 31, 2020, the related statements of operations and comprehensive loss . . . for the period from August 20, 2020 (inception) through December 31, 2020, and the related notes" and have determined that "the financial statements present fairly, in all material respects . . . the financial position of [ELM] at December 31, 2020 . . . in conformity with accounting principles generally accepted in the United States of America.

BDO further represented that it conducted its audit of ELM's financial statements in 'conformity with accounting principles generally accepted' and 'in accordance with the standards of the PCAOB.'" *Id.* at 4 (citations omitted). "Plaintiff[] contends that BDO's statements misrepresented that ELM's financials complied with Generally Accepted Accounting Principles ('GAAP') and, further, that BDO's audit was not actually conducted in compliance with GAAP and Public Company Accounting Oversight Board ('PCAOB') standards." *Id.* (citation omitted).

"On February 1, 2022, ELMS announced the results of a special committee investigation into 'certain sales of equity securities made by and to individuals associated with the Company.'" *Id.* (citation omitted). "The investigation concluded that certain ELM executives acquired ELM shares at a 'substantial discount to market value' without obtaining an 'independent valuation to determine the fair market value per share of its common stock.'" *Id.* at 4-5. "ELMS also disclosed that when the merger was consummated on June 25, 2021, each ELM share was exchanged for approximately 800 shares of ELMS." *Id.* at 5 (citation omitted). "ELMS further revealed that it had failed to 'disclose any compensation associated with those transactions; or withhold or pay taxes in connection with that compensation' and, because of this, the previously issued financial

statements for ELM in 2020 should not be relied upon and would require restatement." *Id.* (citation omitted).

"ELMS also disclosed that Defendants Luo and Taylor were resigning and had 'provided responses to the Special Committee that [were] believed to be inconsistent with documents [it had] reviewed.'" *Id.* (citation omitted). "In connection with their resignations, both Luo and Taylor executed settlement agreements with ELMS where they agreed to surrender material amounts of ELMS common stock and to pay tens of millions in cash and stock." *Id.* (citation omitted). "Luo agreed to surrender 6 million shares of ELMS common stock and pay an additional $10 million in cash and stock." *Id.* (citation omitted). "Taylor agreed to surrender 1.8 million shares of ELMS common stock and pay an additional $3.3 million in cash and stock. *Id.* (citation omitted). "ELMS later disclosed that Taylor had violated the terms of his settlement agreement." *Id.* (citation omitted). "Plaintiff[] claim[s] that, as a direct result of the disclosures, ELMS common stock dropped by 51%, closing at $2.71 per share on February 2, 2022." *Id.* (citation omitted). "On February 14, 2022, ELMS disclosed that BDO was resigning as the auditor due to a disagreement between the two entities regarding ELMS' legal compliance and reporting obligations in addition to BDO's independence and direct participation in the events at issue." *Id.* (citation omitted).

"That same day, ELMS filed two letters with the SEC." *Id.* "The first letter, authored by its Audit Committee, stated that 'BDO USA was aware of th[e] [2020 Equity] [T]ransactions well in advance and in connection with completion of the audit.'" *Id.* (citation omitted). "The other letter was from BDO stating that an 'illegal act . . . has or may have occurred' and that it was resigning due to ELMS's failure to take timely and appropriate remedial action." *Id.* at 5-6 (citation omitted). "On March 3, 2022, ELMS filed an amended current report on Form 8-K accusing BDO of continuing to refuse to provide them with an independence analysis as well as a

8

responsive letter from BDO denying some of ELMS's allegations against it." *Id.* at 6 (citation omitted). "In its letter, BDO did not address ELMS's assertions regarding the independence analysis—specifically, the allegation that BDO had provided advice to Luo and his affiliates but failed to disclose those relationships." *Id.* (citation omitted).

"On March 11, 2022, ELMS announced that the SEC was investigating the 2020 Equity Transactions and the alleged accounting violations." *Id.* "It also announced it was withdrawing its previous financial guidance and needed to raise additional capital to continue its launch plan." *Id.* (citation omitted). "ELMS's stock price fell to $1 per share." *Id.* (citation omitted). "On April 1, 2022, ELMS revealed it was unable to file its Form 10-K for 2021." *Id.* (citation omitted). "On May 24, 2022, ELMS disclosed that it had received a notice from NASDAQ that it was no longer in compliance with listing requirements." *Id.* (citation omitted). "On June 13, 2022, ELMS announced it would be delisting from NASDAQ and would file for Chapter 7 bankruptcy." *Id.* (citation omitted).

Plaintiff alleges "that without the Defendants' material misrepresentations and omissions," Plaintiff and the putative class "would not have purchased ELMS common stock through the PIPE offering and that they have suffered millions in damages because of Defendants' bad acts." *Id.* (citation omitted). "All Defendants . . . moved to dismiss." *Id.* (citations omitted).

## II.  LEGAL STANDARDS

In reviewing a Magistrate Judge's report and recommendation, the Court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The Court may "accept, reject, or modify, in whole or in part" the Magistrate Judge's findings or recommendations. *Id.* As to those portions to which no objections have been made, the Court must "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R.

9

Civ. P. 72(b) Advisory Committee Notes; *see Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987) (explaining the district court's responsibility "to afford some level of review" when no objections have been made).

### III. DISCUSSION

In her Report and Recommendation, Judge Hatcher recommends that the Court hold that: (1) Plaintiff has standing; (2) Plaintiff fails to sufficiently allege that Defendants Luo, Taylor and Li are "makers" of statements; (3) Plaintiff fails to sufficiently allege that Defendants Boris and Kiev are "makers" of statements; (4) BDO's ELM audit contained in the Proxy Statement ("Audit"), as pled, is not an actionable statement; (5) Plaintiff fails to sufficiently allege scheme liability; (6) Plaintiff fails to sufficiently allege scienter as to Boris and Kiev; and (7) dismissal of the derivative § 20(a) claims should follow dismissal of the predicate § 10(b) claims. D.I. 75.

In his Objections, Levy contends, contrary to the Report and Recommendation, that: (1) the Audit, as pled, is an actionable statement; (2) the Amended Complaint sufficiently alleges that Luo, Taylor and Li are the "makers" of statements, (3) the Amended Complaint sufficiently alleges that Boris and Kiev acted with scienter; and (4) dismissal of the derivative § 20(a) claims is unwarranted.

Having examined the portions of the Report and Recommendation that received no objection, the Court is satisfied that these portions contain no clear errors "on the face of the record" and, thus, the Court adopts these portions of the Report and Recommendation. *See* Fed. R. Civ. P. 72(b) Advisory Committee Notes. The Court divides the remainder of its Discussion into four Sections addressing each of Plaintiff's objections.

A.  **The Court Adopts the Recommendation that the Audit, as Pled, Constitutes an Opinion; the Court Declines to Adopt the Recommendation that Plaintiff Fails to Sufficiently Allege the First *Omnicare* Condition**

The parties dispute whether the Audit constitutes an actionable statement. The standard for evaluating whether a statement is actionable under § 10(b) turns on whether the statement is fact or opinion. *See Omnicare, Inc. v. Labs. Dist. Council Construction Indus. Pension Fund.*, 575 U.S. 175, 183 (2015) (holding under § 11 of the Securities Act of 1933); *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 685 (3d Cir. 2023) (holding that "*Omnicare*'s framework for evaluating opinion falsity applies to claims under § 10(b) for violations of Rule 10b-5"). Judge Hatcher recommends that the Audit constitutes an opinion. D.I. 75 at 20. Plaintiff disagrees and objects. D.I. 76 at 4. The Court adopts Judge Hatcher's recommendation.

As Judge Hatcher explained, "*Omnicare* establishes that a fact is 'a thing done or existing' and an opinion is 'a belief[,] a view or a sentiment which the mind forms of persons or things.'" D.I. 75 at 18 (citation omitted). Pertinent here, "[a]udit reports, labeled 'opinions' and involving considerable subjective judgment, are statements of opinion subject to the *Omnicare* standard." *Querub v. Moore Stephens Hong Kong*, 649 F. App'x 55, 58 (2d Cir. 2016). Here, the Audit was "labeled 'opinion' and involve[ed] considerable subjective judgment" and, thus, constitutes an "opinion." *See id.* As Judge Hatcher further explains, "a reasonable person 'recognizes the import of words like "I think" or "I believe," and grasps that they convey some lack of certainty as to the statement's content.'" D.I. 75 at 21 (quoting *Omnicare*, 575 U.S. at 187).

Having recommended that the Audit constitutes an opinion, Judge Hatcher proceeded to the standard for evaluating whether an opinion is actionable under the standard set forth in *Omnicare*. D.I. 75 at 21. Under that standard, "an opinion is actionable only if: (1) the speaker did not sincerely hold the stated belief at the time made; (2) the opinion contains embedded statements of fact that were untrue; or (3) the opinion reasonably implies untrue facts and omits

11

qualifying language." *Id.* at 18 (citing *Omnicare*, 575 U.S. at 184-86). Judge Hatcher recommends that the Amended Complaint fails to sufficiently allege that the Audit satisfies any of these conditions. D.I. 75 at 21. Plaintiff objects, contending that the Amended Complaint sufficiently alleges that the Audit satisfies all three conditions. D.I. 76 at 6-9. Plaintiff is correct as to the first condition.

The first condition is applicable here because the Amended Complaint sufficiently alleges particular and material facts supporting that BDO did not sincerely believe the statements in its Audit or the statement that its Audit complied with the appropriate accounting standards. In particular, the Amended Complaint alleges that the "auditing standards specifically require the auditor to assess the risk of material misstatement associated with transactions with executive officers of the company." D.I. 23 ¶ 128. The Amended Complaint further alleges that "BDO itself publishes a guide" that specifies that "[r]egistrants are required to measure and report all share-based compensation at fair market value." D.I. 23 ¶ 129. The Amended Complaint further alleges that "BDO signed its audit opinion concerning ELM's financial statements on May 6, 2021" and, thereby, "knew when it conducted its audit of ELM that ELM planned to go public through a de-SPAC transaction with FIII, and [] should have identified share-based compensation and potential issuance of the company stock to company insiders as a significant risk requiring an appropriate audit response." D.I. 23 ¶ 131. Furthermore, the Amended Complaint alleges that BDO failed to comply with the auditing standards. *See, e.g.*, D.I. 23 ¶ 125. In other words, the Amended Complaint alleges that BDO knew of the auditing standards that required examination of the transactions at issue and, notwithstanding, failed to comply.

That the Amended Complaint alleges, with particularity, the material facts that BDO knew of the auditing standards that required examination of the transactions at issue and,

12

notwithstanding, failed to comply, sufficiently supports that BDO did not sincerely believe the statements in its Audit or the statement that it complied with the auditing standards. *See Omnicare*, 575 U.S. at 194 ("The investor must identify particular (and material) facts going to the basis for the issuer's opinion."); *cf. Hacker v. Elec. Last Mile Sols. Inc.*, 687 F. Supp. 3d 582, 599 (D.N.J. 2023) (holding in a separate but similar context: "GAAP violations on even roughly this alleged scale, especially when based on relatively straightforward issues, support a strong inference that the Defendant acted with the sort of recklessness that can amount to scienter").

For the foregoing reasons, the Court sustains Plaintiff's objection and declines to adopt the Report and Recommendation on this issue. Having confirmed the adequacy of the Amended Complaint with respect to the first *Omnicare* condition, the Court need not and does not examine the second and third *Omnicare* conditions.

### B. The Court Adopts the Recommendation that Plaintiff Fails to Sufficiently Allege that Defendants Luo, Taylor and Li are "Makers" of Statements

The Supreme Court in *Janus Capital Group, Inc. v. First Derivative Traders* held that only the "maker" of a statement may be liable under § 10(b). *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). Here, Judge Hatcher recommends that the Amended Complaint does not sufficiently allege that Defendants Luo, Taylor and Li are "makers" of statements. D.I. 75 at 13-18. Plaintiff objects. D.I. 76 at 7. The Court adopts Judge Hatcher's recommendation.

As Judge Hatcher explains (D.I. 75 at 13), the "maker" of a statement is the "person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus*, 564 U.S. at 142. A "complaint should lay out, with particularity, . . . which specific defendant made the representation." *Universal Am. Corp. v. Partners Healthcare Solutions Holdings, L.P.*, 61 F. Supp. 3d 391, 397 (D. Del. 2014). Here, Plaintiff fails "to lay out,

13

with particularity" or otherwise which statements were made by Luo, Taylor and Li. Therefore, Plaintiff fails to satisfy *Janus* and progeny.

Plaintiff contends that the Proxy's statement that the information in the Proxy was "provided by ELM and its management team" sufficiently attributes the statements in the Proxy to Luo, Taylor, and Li. D.I. 76 at 9 (quoting D.I. 35-2, at 28). However, Plaintiff's "presumption that corporate insiders, *as a group*, are 'makers' of a statement because the statement is deemed to be attributed to those insiders [is] inconsistent with *Janus*'s description of attribution as a limiting mechanism." *See In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 640 (S.D.N.Y. 2017) (emphasis added).

For the foregoing reasons, the Court overrules Plaintiff's objection and adopts Judge Hatcher's Report and Recommendation on this issue.

### C. The Court Adopts the Recommendation that Plaintiff Fails to Sufficiently Allege Scienter as to Boris and Kiev

Judge Hatcher recommends that the Amended Complaint does not sufficiently allege that Boris and Kiev harbored the requisite level of scienter. D.I. 75 at 24-26. Plaintiff objects. D.I. 75 at 10. The Court adopts Judge Hatcher's recommendation.

As Judge Hatcher explains (D.I. 75 at 24), scienter "is a mental state embracing intent to deceive, manipulate, or defraud, and requires a knowing or reckless state of mind." *Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 267 (3d Cir. 2009) (quotations and citations omitted). "Under the PSLRA's second pleading requirement, a plaintiff must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id.* This standard is met "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

"Conscious misbehavior involves 'intentional fraud or other deliberate illegal behavior.'" *In re Radian Sec. Litig.*, 612 F. Supp. 2d 594, 613 (E.D. Pa. 2009) (quoting *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 535 (3d Cir. 1999)). "A reckless statement is one involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Avaya*, 564 F.3d at 267 n.42 (quoting *Advanta*, 180 F.3d at 535).

Here, as Judge Hatcher explains, the "Amended Complaint does not contain facts to show that Boris or Kiev made any reckless statements." D.I. 75 at 25. In his motion briefing, Plaintiff appeared "to argue that Boris and Kiev had access to or should have discovered information that should have indicated to them that ELM's financials were incorrect." D.I. 75 at 25 (citation omitted). Plaintiff reasserts similar arguments now. *See* D.I. 76 at 10. However, as Judge Hatcher correctly observes, "[m]ore is required." D.I. 75 at 25; *see McIntire v. China Mediaexpress Holdings, Inc.*, 927 F. Supp. 2d 105, 129 (S.D.N.Y. 2013) ("Allegations that [management] 'should have known' that [another company's] financial information was fraudulent is insufficient to plead recklessness under § 10(b) and Rule 10b-5.").

In addition, Plaintiff trumpeted in his motion briefing that he "adequately alleged scienter because Boris and Kiev were 'highly motivated to consummate the Merger because they stood to reap significant personal financial gain if the Merger closed.'" D.I. 75 at 26-27 (quoting D.I. 51 at 33). Plaintiff reasserts similar arguments now. D.I. 76 at 10. However, as Judge Hatcher correctly observes, "the Third Circuit has made clear that 'motive and opportunity' allegations are not sufficient as a means of independently establishing scienter." D.I. 75 at 27 (quoting *Avaya*, 564 F.3d at 276). Instead, motive and opportunity can "be considered along with all the other

allegations in the complaint," but even then, "[m]otives that are generally possessed by most corporate directors and officers do not suffice." *Avaya*, 564 F.3d at 277-78. As Judge Hatcher explains, all that Plaintiff has "done here is put forth generalized motives attributable to any interested person; that is insufficient under the law." D.I. 75 at 27.

For the foregoing reasons, the Court overrules Plaintiff's objection and adopts Judge Hatcher's Report and Recommendation on this issue.

### D. The Court Adopts the Recommendation that Plaintiff Fails to Sufficiently Allege § 20(a) Claims

Since Plaintiff fails to sufficiently allege § 10(b) claims against Luo, Taylor, Li, Boris and Kiev, the Court adopts Judge Hatcher's recommendation that Plaintiff also fails to sufficiently allege § 20(a) claims against the same parties. *See City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 177 (3d Cir. 2014) (holding that, because plaintiffs "failed to adequately plead a predicate section 10(b) violation, their section 20(a) claim must be dismissed").

Plaintiff contends that the § 20(a) claims are sufficiently alleged since, according to Plaintiff, the Amended "Complaint adequately alleges predicate § 10(b) violations by ELM" and "ELMS," and that the "only reason" that ELM and ELMS "are not defendants is ELMS' bankruptcy." D.I. 76 at 10. Plaintiff is correct that, given its bankruptcy, ELMS need not be a defendant in this action to sustain the derivative § 20(a) claims. *See In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 285 (3d Cir. 2006) ("Both plaintiffs also asserted that they would have named Suprema as a defendant to the suits were it not for its status as a bankrupt. Essentially, plaintiffs argue that Suprema's controlling persons should not escape liability under Section 15 and Section 20(a) merely because Suprema's underlying liability cannot be formally adjudicated due to its insolvency. We agree.").

16

However, when "a plaintiff brings § 10(b) and Rule 10b–5 claims against a corporate defendant [like ELMS here], [courts] must determine whether plaintiffs have adequately pleaded the requisite state of mind on the part of an individual officer alleged to have made . . . false or misleading statements on behalf of the corporation." *City of Roseville Emps. Ret. Sys. v. Horizon Lines, Inc.*, 686 F. Supp. 2d 404, 421 (D. Del. 2009). "This is because a corporate defendant will not be held liable absent a showing that at least one individual officer who made, or participated in the making of, a false or misleading statement did so with scienter." *Id.* Here, for the reasons set forth in this Memorandum Opinion *supra* § III(B)-(C), Plaintiff fails to sufficiently allege that at least one individual officer "made, or participated in the making of, a false or misleading statement . . . with scienter." *See id.* Without such allegations, the Amended Complaint fails to sufficiently allege a predicate claim for any § 20(a) violations.

For the foregoing reasons, the Court overrules Plaintiff's objection and adopts Judge Hatcher's Report and Recommendation on this issue.

## IV. CONCLUSION

For all of the foregoing reasons, the Court sustains-in-part and overrules-in-part Plaintiff's Objections to Report and Recommendation (D.I. 76) and adopts-in-part the Report and Recommendation (D.I. 75). The Court will permit Plaintiff to file a second amended complaint.